## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-22848 SBB |
| | ) | |
| **Atna Resources Inc.,** *et al*. | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-22848 SBB** |

## MOTION FOR AN ORDER APPROVING PROCEDURES TO SELL OR TRANSFER CERTAIN *DE MINIMIS* ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND TO PAY MARKET RATE BROKER COMMISSIONS IN <u>CONNECTION WITH SUCH SALES WITHOUT FURTHER COURT APPROVAL</u>

Atna Resources Inc. and the affiliated debtors and debtors in possession in these cases (collectively, the "<u>Debtors</u>") hereby move the Court pursuant to sections 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 6004-1 of the Local Bankruptcy Rules (the "<u>Local Rules</u>") for the entry of an order (the "<u>Order</u>"), a proposed form of which is attached hereto as <u>Exhibit A</u>, authorizing the Debtors, without the need for further approval of the Court but subject to the notice procedures set forth herein, to: (a) implement procedures by which the Debtors may, from time to time, sell miscellaneous assets that are no longer needed in their business by private sale or public auction; and (b) pay applicable broker commissions and/or auctioneer fees in the ordinary course of business in connection with such sales (the "<u>Motion</u>").  In support of the Motion, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession and their respective case numbers subject to this Motion are: Atna Resources Inc., (15-22848); Canyon Resources Corporation (15-22849); CR Briggs Corporation (15-22850); CR Montana Corporation (15-22851); CR Kendall Corporation (15-22852); Atna Resources Ltd. (15-22853); Horizon Wyoming Uranium, Inc. (15-22854).

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to Rule 83.3 of the Local Rules of Practice of the United States District Court for the District of Colorado - Civil.

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      The Debtors' corporate headquarters and their executive level and senior management are all located in Golden, Colorado and have been for the 180 days immediately prior to the Petition Date.  Accordingly, venue of these cases and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

<u>**BACKGROUND**</u>

4.      On November 18, 2015 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their property and are operating and managing their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      The Debtors hereby incorporate by reference the factual background set forth in the Declaration of Rodney D. Gloss in Support of First Day Pleadings [Docket No. 12], which includes, among other things, a detailed description of the Debtors' business and affairs, the Debtors' capital structure and prepetition indebtedness, and the events leading to the commencement of these cases.

6.      No trustee or examiner has been appointed in these cases.   An official committee of unsecured creditors was formed on December 14, 2015 (the "<u>Committee</u>").

7.      In connection with their ordinary prepetition practices and ongoing operations, the Debtors from time to time sell or transfer assets that are obsolete, burdensome, or of little or no

usable value to the Debtors' estates, including, among other assets, real property, machinery, equipment, supplies, tools, fixtures, office furniture, and other miscellaneous assets (collectively, the "*De Minimis* Assets").

### RELIEF REQUESTED

8. By this Motion, the Debtors seek the authority to sell the *De Minimis* Assets and pay any associated auction fees and broker commissions, defined below as the "Commissions," without further Court approval, and subject only to the notice procedures proposed herein (the "Sale Notice Procedures").  The Debtors believe that the relief sought herein is necessary to maximize the value of their estates and minimize associated costs.  Additionally, continuing to sell or transfer *De Minimis* Assets during the pendency of these cases will eliminate the cost of maintaining nonessential property, and the net proceeds therefrom will be used consistently with the terms of (a) the *Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 92] (the "Interim DIP Order"), which approved on an interim basis, among other things, the Debtors' borrowing under a debtor-in-possession credit facility pursuant to the Debtor-in-Possession Credit Agreement dated November 23, 2015 (the "DIP Agreement"), and (b) any final order subsequently entered by the Court approving the DIP Agreement (the "Final DIP Order").

9. The Debtors expect that the value of the *De Minimis* Assets sold in any given transaction will be *de minimis* in comparison to the size and scope of the Debtors' overall estates and will not exceed $1,000,000 in the aggregate. While notice or hearing will not be required for the Debtors to consummate an individual sale or transfer of less than $100,000, the Debtors will

use the Sale Notice Procedures for such a sale or transfer of an asset valued at more than $100,000 but less than $250,000.  The Debtors anticipate that such dispositions: (a) will likely take the form of private sale transactions, although auctions are possible; and (b) will involve numerous small transactions or a related series of transactions. Given the relatively immaterial value of these assets and the potential for a significant number of these sales, the Debtors believe that it is appropriate to establish streamlined procedures for notice and approval of each such transaction.  The process for the disposition of *De Minimis* Assets is intended to supplement but not replace a process to auction and sell more valuable assets, and permission from the Court will be sought for each individual transaction.

10.     Additionally, the Debtors believe that using brokers and auctioneers to sell some of the *De Minimis* Assets may enhance the consideration received by the Debtors and will reduce the expenses associated with disposing of such *De Minimis* Assets. Accordingly, the Debtors also seek approval to retain brokers and pay market rate broker commissions (the "Broker Commissions") and/or auction fees (the "Auction Fees" and, together with the Broker Commissions, the "Commissions") where the Debtors determine, in the exercise of their business judgment, that it is advisable in connection with dispositions of *De Minimis* Assets.

11.     Although the Debtors believe that, in most cases, the ordinary course of business doctrine under section 363(c) of the Bankruptcy Code permits them to sell or transfer the *De Minimis* Assets without notice or a hearing, they have filed this Motion out of an abundance of caution and because they believe that some potential purchasers may be uncomfortable consummating sales without the Court's authorization. Additionally, some purchasers of the *De Minimis* Assets may want confirmation that the sales will be free and clear of liens pursuant to section 363(f) of the Bankruptcy Code.

- 4 -

12.     The Debtors also believe that the streamlined Sale Notice Procedures proposed herein will benefit the Debtors by allowing them to move quickly to sell assets as opportunities arise, while providing appropriate notice as provided below.  Accordingly, the Debtors have concluded that it would be more efficient, and that the proceeds realized with respect to such transactions will be maximized, if the Debtors are authorized to implement procedures that allow them to sell *De Minimis* Assets with a purchase price of $1,000,000 or less in the aggregate, and pay any applicable Commissions in connection with such dispositions, on an expedited basis without incurring the delay and costs of preparing, filing, serving and having hearings on motions for approval of each such sale.

13.     The *De Minimis* Assets may be subject to the liens of Waterton Precious Metals Fund II Cayman, L.P. (the "DIP Lender") pursuant to the terms of the DIP Agreement approved by the Court by the Interim DIP Order.  Prior to the Petition Date, the DIP Lender also held liens on certain of the Debtors' assets pursuant to a certain Senior Secured Credit Agreement dated as of January 31, 2014.

14.     In addition, other creditors may have or assert liens against certain of the *De Minimis* Assets (collectively, to the extent such liens are valid and properly perfected, the "Other Liens").[2]  To the extent that valid, perfected liens exist against the *De Minimis* Assets, the liens of the DIP Lender and the Other Liens will attach to the net proceeds from the sales of the *De Minimis* Assets, and such net proceeds will be utilized in accordance with the provisions of the DIP Agreement, the Interim DIP Order, the Final DIP Order, or any other applicable Court orders or agreements with secured parties.

---

[2] Except with respect to the DIP Lender and as described in the Interim DIP Order and the Final DIP Order, nothing herein shall constitute a concession or admission by the Debtors that any of the *De Minimis* Assets are subject to valid, perfected liens of any party and the Debtors hereby reserve all rights to contest claims of liens or other interests in the applicable assets by any party whatsoever.

010-8172-1522/4/AMERICAS

## SALE NOTICE PROCEDURES

15.     The Debtors request that if the aggregate consideration received for an individual sale or transfer of *De Minimis* Assets is less than or equal to $100,000, and the Debtors have obtained any necessary consents required pursuant to the DIP Agreement in connection with such sale, no further notice or hearing be required for the Debtors to consummate such a sale or transfer (other than as may be required under the DIP Agreement).[3] The Debtors will maintain records for all such sales or transfers.

16.     The Debtors further request that if the aggregate consideration to be received for an individual sale or transfer of *De Minimis* Assets hereunder is greater than $100,000 but less than $250,000 (the "Sale Cap"), which otherwise may require Court approval pursuant to section 363(b) of the Bankruptcy Code, the following Sale Notice Procedures be approved and used, obviating the need for a separate motion and hearing, or entry of an order of the Court, to be conducted for each such sale or transfer (each, a "Proposed Sale"):

(a)     The Debtors will give notice of each proposed sale (the "Sale Notice"), to (i) counsel to the Committee; (ii) counsel to the DIP Lender; (iii) any other known holder of a lien, claim or encumbrance against the specific property to be sold; and (iv) the proposed purchaser or transferee (the "Proposed Purchaser") (collectively, the "Sale Notice Parties"). A proposed Sale Notice is attached hereto as Exhibit B.

The Sale Notice will be served on the Sale Notice Parties by facsimile or e-mail, if possible, and by overnight mail.  The Sale Notice will specify (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement that the Proposed Purchaser is not an "insider" as defined in Section 101(31) of the Bankruptcy Code); (iii) the proposed sale price; (iv) a copy of any documentation executed in contemplation of the transaction; (v) an affidavit of the broker, if any, pursuant to Bankruptcy Rule 2014, that identifies the broker, the amount of the Commission, and that contains the disclosures required by Bankruptcy

---

[3] While notice or hearing will not be required for the Debtors to consummate an individual sale or transfer of less than or equal to $100,000 (as described above), the Debtors may use the Sale Notice Procedures (as such term is defined below) for such a sale or transfer if the buyer or transferee requires the protections afforded by such procedures.

Rule 2014.  The Debtors may, but are not required to, file a copy of the Sale Notice with the Court.

(b)     The Sale Notice Parties will have until 4:00 p.m. (prevailing Mountain Time) on the fifth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.   Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale Notice Parties so as to be received by the Objection Deadline.   The Objection Deadline and required service addresses will be identified in the Sale Notice.

(c)     If (i) no Objection is properly filed and served by the Objection Deadline, and (ii) the Debtors have obtained any requisite consent required pursuant to the DIP Agreement in connection with the sale, the Debtors will be authorized, without further notice and without further Court approval, to: (i) consummate the sale of the *De Minimis* Assets in accordance with the terms and conditions of the underlying contract or contracts and (ii) take such other actions as are necessary to close the transaction and collect the proceeds of such sale, including, without limitation, payment of any Commissions.

(d)     If a Sale Notice Party files and serves an Objection to the Proposed Sale by the Objection Deadline, the Debtors and such objecting party will use good faith efforts to resolve the objection consensually.   If the Debtors and the objecting Sale Notice Party are unable to resolve the objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale, including the payment of any Commissions, upon notice and a hearing; *provided, however,* that, with the agreement of the Proposed Purchaser, the Debtors may consummate any portion of the Proposed Sale that is not a subject of the Objection.

(e)     In the event the terms of a proposed sale or transfer are materially amended after transmittal of the Sale Notice but prior to the Sale Objection Deadline, the Debtors will send a revised Sale Notice to the Sale Notice Parties. The Sale Objection Deadline will be extended such that the Sale Notice Parties will have an additional five (5) calendar days to object in accordance with the Sale Notice Procedures;

(f)     Any valid and enforceable liens on the property to be sold will attach to the net proceeds of the Proposed Sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Debtors may possess with respect thereto.   Net sale proceeds will be utilized by the Debtors in accordance with the terms of the DIP Agreement, the Interim

DIP Order, the Final DIP Order, such other financing arrangements as are in effect at the time or other applicable orders of the Court.

(g)     To the extent that a competing bid is received for the purchase of *De Minimis* Assets in a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sole discretion in the exercise of their business judgment, materially exceeds the value of the purchase price contained in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds the Sale Cap.

(g)     The relevant Debtor or Debtors may consummate a Proposed Sale prior to the expiration of the applicable Objection Deadline if the Debtor or Debtors obtain each Sale Notice Party's written consent to the Proposed Sale.  The applicable Proposed Sale will be deemed final and fully authorized by the Court upon either (i) the expiration of the Objection Deadline without the assertion of any Objections or (ii) the written consent of all Notice Parties.

17.     All purchasers or transferees will take *De Minimis* Assets sold or transferred by the Debtors, free and clear of liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, and "as is" and "where is" without any representations or warranties from the Debtors as to quality or fitness for either their intended purposes or any particular purposes.

18.     All good faith purchasers for value of assets shall be entitled to the protections of Bankruptcy Code Section 363(m).

19.     Nothing in the foregoing Sale Notice Procedures would prevent the Debtors, in their sole discretion, from seeking Court approval of any proposed sale transaction upon notice and a hearing or, if necessary to comply with a condition on a sale imposed by a purchaser, to submit a separate order to the Court along with a notice of presentment to be entered without need for a hearing on the matter.

## BASIS FOR RELIEF REQUESTED

**A.      Sales Approved on Shortened and Limited Notice**

20.      Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b)(1). An order authorizing the sale "is not required if the trustee gave proper notice and no party filed a timely objection." *In re Psychometric Sys.*, 367 B.R. 670, 675 (Bankr. D. Colo. 2007). The proposed use, sale or lease of property of the estate may be approved under section 363(b) if the sale is supported by sound business justification. In the Tenth Circuit, the "'business judgment' test applies to determine whether a sale under § 363(b) should be approved. Under this standard, the Trustee seeking approval of the sale must show sound business reasons for the sale. In making this determination, courts consider evidence of '[a]ny improper or bad motive,' whether '[t]he price is fair and the negotiations or bidding occurred at arm's length,' and whether the trustee followed '[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest.'" *Allen v. Absher (In re Allen)*, 607 Fed. Appx. 840, 844 (10th Cir. 2015) (quoting *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004)); *see also Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983). The trustee or debtor in possession "is given ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re Psychometric Sys.*, 367 B.R. 670, 675 (Bankr. D. Colo. 2007) (citing *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)). In reviewing proposed transactions outside the ordinary course under section 363(b) of the Bankruptcy Code, courts should give substantial deference to the business judgment of the debtor in possession. *See, e.g., Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.),* 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

21.     Here, the Debtors believe that in order to maximize proceeds from the *De Minimis* Assets, it is necessary to conduct these sales promptly and efficiently. Additionally, the Debtors believe that the proposed Sale Notice Procedures will minimize the costs associated with completing the sales of the *De Minimis* Assets. Thus, in the Debtors' business judgment, the proposed sales and Sale Notice Procedures are in the best interests of their estates and stakeholders.

22.     Section 363(b)(1) of the Bankruptcy Code requires notice in advance for out of the ordinary asset sales, which under the Bankruptcy Code is "such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Pursuant to the Bankruptcy Rules, upon a showing of "cause," the Court may shorten the 21-day notice period generally applicable to asset sales, or direct another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Furthermore, the Court is authorized to limit notice for selling assets and using property of the estate outside the ordinary course to the U.S. Trustee, an official committee and any creditor or equity holder requesting notice even without demonstrating "cause."  Bankruptcy Rule 2002(i) provides, in relevant part, that:

> the court may order that notices required by subdivision (a)(2) ... of this rule be transmitted to the United States trustee and be mailed only to the committees ... appointed under §1102 of the Code ... and to the creditors and equity security holders who ... request that all notices be mailed to them.

Fed. R. Bankr. P. 2002(i).

23.     The Sale Notice Procedures proposed herein are designed to satisfy the due process rights of parties affected by the *De Minimis* Asset sales. To bind parties to the outcome of a proceeding, "due process requires 'notice reasonably calculated, under the circumstances, to apprise [them] of the pendency of the action and afford them the opportunity to present their objections.'" *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) (citing

- 10 -

*Peralta v. Heights Medical Ctr, Inc.*, 485 U.S. 80, 84 (1988)). Furthermore, service of this Motion, together with the Sale Notice, pursuant to Local Rule 6004-1(a), ensures adequate notice. *See In re Southwest Wood, Inc.*, 318 B.R. 739 (Bankr. D. Ok. 2004) (concluding that a lienholder was entitled to service of the motion that included the "free and clear" language).

24.     Under section 102 of the Bankruptcy Code, the Court may authorize asset sales without conducting an actual hearing if no interested party timely requests such a hearing. *See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding any statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such hearing is not requested timely by a party in interest"). Due process is satisfied if parties in interest are given "an *opportunity* to present their objections…" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added).  The Sale Notice Procedures explicitly provide for an opportunity to be heard. Because the Debtors submit that the Sale Notice Procedures provide notice to interested parties that is reasonable under the circumstances, no hearing should be required before the Debtors consummate any sales of *De Minimis* Assets as proposed hereunder.

## B.     Sales Approved Free and Clear of Liens, Claims and Encumbrances

25.     Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims and encumbrances, if any, if:

(a)     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(b)     the entity holding the lien, claim or encumbrance consents to the proposed sale;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)   such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Old CarCo LLC*, 2010 U.S. Dist. LEXIS 143101, at *6 (S.D.N.Y. July 2, 2010). In *Trans World Airlines, Inc.*, the District Court said that a court may authorize a sale free and clear of any liens pursuant to section 105, even if section 363(f) doesn't apply. *In re Trans World Airlines, Inc.*, 2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001).

26.   The Debtors' primary known secured creditor is the DIP Lender, who will be provided notice for each sale that meets the criteria identified in the Sale Notice Procedures.  In addition, the Sale Notice Procedures require the Debtors to provide notice to any other known potential lienholders who may assert liens or security interests pursuant to statutes, prepetition agreements or adequate protection orders issued by this Court.

27.   With respect to all of the Notice Parties, the Debtors will provide them with a minimum of five (5) business days' notice prior to the consummation of any sale. If any of the Notice Parties objects to a proposed sale on any ground, except if such objection relates solely to the use of proceeds from the sale, then the matter will be resolved by the Court if such objection cannot be resolved amicably by the parties.

28.   The Debtors assert that any potential lienholders could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interests, if any, in the relevant *De Minimis* Assets, or one or more of the other requirements of section 363(f) could be satisfied.

29.   As a result of the above, the Debtors believe that the Sale Notice Procedures set forth above satisfy the requirements of section 363(f) of the Bankruptcy Code. The Debtors hereby request that any purported holder of a lien, claim or encumbrance who receives notice pursuant to the Sale Notice Procedures who does not object within the prescribed time period be

- 12 -

deemed to have consented to the proposed *De Minimis* Asset sale and that such property then be deemed sold free and clear of such holder's liens, claims or encumbrances.

### C.    Purchasers take in Good Faith

30.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The term "'[g]ood faith purchaser' is not defined in the Bankruptcy Code. When evaluating this term under the predecessor of § 363(m), Federal Rule of Bankruptcy Procedure 8005, the Tenth Circuit Court of Appeals turned to the traditional equitable definition of 'good faith purchaser.' The Tenth Circuit held that good faith was established with respect to a purchaser when both of the following criteria were met: (1) the purchaser bought without 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders'; and (2) the purchaser paid value, which is defined as at least 75% of the appraised value of the assets." *First State Operating Co. v. Holbrook (In re Lotspeich)*, 328 B.R. 209, 218 (B.A.P. 10th Cir. 2005) (citing *Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 305 (10th Cir. 1983)). The Debtors will conduct all sales of the *De Minimis* Assets at arm's-length, thereby entitling the purchasers to the protections afforded by section 363(m) of the Bankruptcy Code.

### D.    Approval of Payment of Broker Commissions and Auction Fees

31.    The payment of the Commissions to brokers and auctioneers engaged by the Debtors in connection with the sale of *De Minimis* Assets pursuant to the Sale Notice Procedures is in the best interest of the Debtors' estates and their creditors. The Debtors

- 13 -

believe that some, if not all, of the *De Minimis* Assets require special skills and knowledge and that utilizing brokers and auctions in certain circumstances will significantly aid in maximizing value received for the *De Minimis* Assets in a timely manner. Paying the Commissions out of sale proceeds pursuant to the Sale Notice Procedures will save the estates additional, unnecessary expenses associated with requiring the brokers and auctioneers to file retention applications and will avoid the incurrence of additional fees for preparing and filing associated interim fee applications. The Commissions will represent only a fraction of the value of any *De Minimis* Asset sold pursuant to the Sale Notice Procedures and are not significant relative to the aggregate size of the Debtors' estates. As such, paying the Commissions pursuant to the Sale Notice Procedures is in the best interest of the Debtors' estates and should be approved.

32.     Relief similar to that requested in this Motion has been granted in numerous other bankruptcy cases.  *See, e.g., In re Hostess Brands, Inc.,* Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 22, 2012); *In re Uno Rest. Holdings Corp.,* Case No. 10-10209 (MG) (Bankr. S.D.N.Y. May 11, 2010) (approving procedures governing sales under $100,000 for unused assets without notice and $400,000 for liquor licenses with notice); *In re The Great Atl. & Pac. Tea Co., Inc.,* Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. March 10, 2010) (approving procedures governing sales of up to $500,000 in assets without notice and $4 million in assets with notice); *In re Old Carco LLC (f/k/a Chrysler LLC),* No. 09- 50002 (AJG) (Bankr. S.D.N.Y. June 18, 2009) (approving procedures governing sales of up to $750,000 in assets without notice and $3 million in assets with notice); *In re Oldco M Corp. (f/k/a Metaldyne Corp.),* Case No. 09-13412 (MG) (Bankr. S.D.N.Y. June 7, 2009) (approving procedures governing sales of up to $1 million in assets without notice and $10 million in assets with notice); *In re Dana Corp.,* No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (approving procedures governing

- 14 -

asset sales of up to $10 million per transaction with notice and up to $1 million without notice and the payment of related broker commissions); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. June 3, 2014) (authorizing sales up to $15 million); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. July 16, 2009) (authorizing sales up to $5 million); *In re Flying J, Inc.*, No. 08-13384 (Bankr. D. Del. Feb. 19, 2009) (authorizing sales up to $5 million).[4]

## **REQUEST FOR WAIVER OF STAY**

33.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors submit that the imposition of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is inconsistent with the streamlined procedures for notice and approval of each individual sale contemplated by this Motion. One of the primary benefits of the proposed Sale Notice Procedures, in fact, is the ability to take advantage of market opportunities to consummate sales of *De Minimis* Assets without delay. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

34.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Colorado, (ii) counsel to Waterton Precious Metals Fund II Cayman, L.P., (iii) counsel to the Committee, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) the California, Nevada and Montana Bureaus of Land Management and any

---

[4] Because of the voluminous nature of these unreported orders, they are not attached to this Motion. Copies of these orders will be made available upon request to the Debtors' counsel.

local, state, provincial, or federal agencies that regulate the Debtors' businesses, and (vii) all parties requesting notices pursuant to Bankruptcy Rule 2002.  A copy of this Motion is also available at the Debtors' case website at www.upshotservices.com/atna.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## <u>NO PRIOR REQUEST</u>

35.     No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these cases.

[*Remainder of page intentionally left blank*]

- 16 -

**WHEREFORE**, the Debtors respectfully request that the Court approve this Motion and grant such other and further relief as the Court deems just and proper.

Date: December 22, 2015

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ *Stephen D. Lerner*
Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Stephen.lerner@squirepb.com
Admitted to District Court for District of Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of Colorado

Aaron A. Boschee (Colorado #38675)
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
(303) 830-1776 (phone)
(303) 894-9239 (fax)
Aaron.boschee@squirepb.com

**Proposed Attorneys for the Debtors and Debtors in Possession**

## EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | **Case No. 15-22848 SBB** |
| | ) | |
| **Atna Resources Inc.,** *et al*. | ) | **Chapter 11** |
| | ) | |
| Debtors.[1] | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-22848 SBB** |

**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER APPROVING**
**PROCEDURES TO SELL OR TRANSFER CERTAIN *DE MINIMIS* ASSETS, FREE**
**AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND TO PAY MARKET**
**RATE BROKER COMMISSIONS IN CONNECTION**
**WITH SUCH SALES WITHOUT FURTHER COURT APPROVAL**

This matter coming before the Court on the *Motion for an Order Approving Procedures to*

*Sell or Transfer Certain De Minimis Assets, Free and Clear of Liens, Claims and Encumbrances,*

*and to Pay Market Rate Broker Commissions in Connection With Such Sales Without Further*

*Court Approval* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession

(collectively, the "Debtors"); and the Court finding that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b), (ii) this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2) and (iii) notice of the Motion was sufficient under the circumstances, and no

additional notice of or a hearing on the Motion is required; and there being no objections to the

requested relief; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and the Court having found and

---

[1] The debtors and debtors in possession and their respective case numbers subject to this order are: Atna Resources Inc., (15-22848); Canyon Resources Corporation (15-22849); CR Briggs Corporation (15-22850); CR Montana Corporation (15-22851); CR Kendall Corporation (15-22852); Atna Resources Ltd. (15-22853); Horizon Wyoming Uranium, Inc. (15-22854).
[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

determined that the relief granted herein is in the best interests of the Debtors' estates and creditors, it is hereby ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors are authorized to consummate any sales of real and personal property outside of the ordinary course of business subject to an aggregate purchase price cap for such sales of $1,000,000 (the "*De Minimis* Assets"), and subject to (a) any requisite consents required, and limitations set forth, pursuant to the terms of the DIP Agreement, the Interim DIP Order and/or the Final DIP Order, and (b) the Sale Notice Procedures (as defined below), as applicable, and the other terms of this Order set forth below, but without further notice or further Court approval. Any sales of *De Minimis* Assets shall be free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f), with any such liens, claims, and encumbrances attaching to the net sale proceeds with the same force, validity, priority, amount perfection and effect, and subject to the same defenses, claims and offsets of the Debtors, as such liens, claims, and encumbrances had on the property immediately prior to the sale.

3.      The Debtors are authorized to pay, without further Court approval, market rate broker commissions (the "Broker Commissions") and auction fees, subject to the Local Bankruptcy Rules (the "Auction Fees" and, together with the Broker Commissions, the "Commissions") for brokers and auctioneers utilized in connection with any sales of *De Minimis* Assets upon satisfaction of the disclosure requirements provided herein.

4.      Individual sales of *De Minimis* Assets for consideration that is less than $100,000 may be consummated by the Debtors without further notice and hearing if any requisite consents required pursuant to the terms of the DIP Agreement, the Interim DIP Order and/or the Final DIP Order in connection with the sale have been obtained and the sale is on 5

business days' notice, as provided in paragraph 4(a) hereof, to any other person or entity known by the Debtors to assert an interest in any of the assets proposed to be sold, with such person or entity's right to object and a determination as set forth in paragraphs 4(b) - (d) hereof or upon such person or entity's written consent.

5.      Individual sales of *De Minimis* Assets for more than $100,000 but less than $250,000 are approved subject to the following notice procedures (the "Sale Notice Procedures"):

(a)      The Debtors will give notice of each proposed sale (the "Sale Notice"), to (i) counsel to the Committee; (ii) counsel to the DIP Lender; (iii) any other known holder of a lien, claim or encumbrance against the specific property to be sold; and (iv) the proposed purchaser or transferee (the "Proposed Purchaser") (collectively, the "Sale Notice Parties").

The Sale Notice will be served on the Sale Notice Parties by facsimile or e-mail, if possible, and by overnight mail.  The Sale Notice will specify (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement that the Proposed Purchaser is not an "insider" as defined in Section 101(31) of the Bankruptcy Code); (iii) the proposed sale price; (iv) a copy of any documentation executed in contemplation of the transaction; (v) an affidavit of the broker, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that identifies the broker, the amount of the Commission, and that contains the disclosures required by Bankruptcy Rule 2014.  The Debtors may, but are not required to, file a copy of the Sale Notice with the Court.

(b)      The Sale Notice Parties will have until 4:00 p.m. (prevailing Mountain Time) on the fifth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.  Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale Notice Parties so as to be received by the Objection Deadline. The Objection Deadline and required service addresses will be identified in the Sale Notice.

(c)      If (i) no Objection is properly filed and served by the Objection Deadline, and (ii) the Debtors have obtained any requisite consent required pursuant to the DIP Agreement in connection with the sale, the Debtors will be authorized, without further notice and without further Court approval, to:

(i) consummate the sale of the *De Minimis* Assets in accordance with the terms and conditions of the underlying contract or contracts and (ii) take such other actions as are necessary to close the transaction and collect the proceeds of such sale, including, without limitation, payment of any Commissions.

(d)     If a Sale Notice Party files and serves an Objection to the Proposed Sale by the Objection Deadline, the Debtors and such objecting party will use good faith efforts to resolve the objection consensually.  If the Debtors and the objecting Sale Notice Party are unable to resolve the objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale, including the payment of any Commissions, upon notice and a hearing; *provided, however,* that, with the agreement of the Proposed Purchaser, the Debtors may consummate any portion of the Proposed Sale that is not a subject of the Objection.

(e)     In the event the terms of a proposed sale or transfer are materially amended after transmittal of the Sale Notice but prior to the Sale Objection Deadline, the Debtors will send a revised Sale Notice to the Sale Notice Parties. The Sale Objection Deadline will be extended such that the Sale Notice Parties will have an additional five (5) calendar days to object in accordance with the Sale Notice Procedures.

(f)     Any valid and enforceable liens on the property to be sold will attach to the net proceeds of the Proposed Sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Debtors may possess with respect thereto.  Net sale proceeds will be utilized by the Debtors in accordance with the terms of the DIP Agreement, the Interim DIP Order, the Final DIP Order, such other financing arrangements as are in effect at the time or other applicable orders of the Court.

(g)     To the extent that a competing bid is received for the purchase of *De Minimis* Assets in a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sole discretion in the exercise of their business judgment, materially exceeds the value of the purchase price contained in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds the Sale Cap.

(h)     The relevant Debtor or Debtors may consummate a Proposed Sale prior to the expiration of the applicable Objection Deadline if the Debtor or Debtors obtain each Sale Notice Party's written consent to the Proposed Sale.  The applicable Proposed Sale will be deemed final and fully authorized by the Court upon either (i) the expiration of the Objection

Deadline without the assertion of any Objections or (ii) the written consent of all Notice Parties.

6.  Notwithstanding any other provision of this Order, this Order does not apply to sales to insiders, as such term is defined in section 101(31).

7.  The fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived with respect to each Proposed Sale conducted in accordance with this Order, and the Debtors may close Proposed Sales as set forth herein without reference to such stay.

8.  Nothing in the foregoing Sale Notice Procedures shall prevent the Debtors, in their sole discretion, from seeking Court approval of any Proposed Sale upon notice and a hearing or, if necessary to comply with a condition on a sale or transfer imposed by a purchaser, to submit a separate order to the Court along with a notice of presentment to be entered without need for a hearing on the matter.

9.  Sales of *De Minimis* Assets shall be deemed to be arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

10.  All purchasers or transferees shall take *De Minimis* Assets sold by the Debtors free and clear of liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, and "as is" and "where is" without any representations or warranties from the Debtors as to quality or fitness for either their intended purposes or any particular purposes, pursuant to the authority granted in this Order.

11.  The Debtors and their respective officers, employees and agents are authorized to perform all obligations, take whatever actions may be necessary or appropriate and issue, execute and deliver whatever documents may be necessary or appropriate to implement and effectuate any disposition of *De Minimis* Assets.

12.     Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the disposition of *De Minimis* Assets. The register or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of any *De Minimis* Assets in the appropriate public records.

13.     To the extent that valid, perfected liens, claims, or encumbrances against the *De Minimis* Assets exist, the DIP Lender's liens and the Other Liens will attach to the net proceeds from the sales of *De Minimis* Assets as provided herein, and such net proceeds will be utilized consistent with the provisions of the DIP Agreement, the Interim DIP Order, the Final DIP Order or other applicable Court orders or agreements with secured parties.

14.     Consistent with the terms of the Interim DIP Order, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral (as defined in the Interim DIP Order) shall be remitted to the DIP Lender for application to repayment of the DIP Obligations (as defined in the Interim DIP Order), and then for application to repayment of any remaining Pre-Petition Indebtedness (as defined in the Interim DIP Order), in each case, in accordance with the terms of the Interim Order, the DIP Loan Documents and/ or the Pre-Petition Credit Agreement Documents (each as defined in the Interim DIP Order), as the case may be.

15.     No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

16.     The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

17.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement of this Order.

DATED this _____ day of _____, 2016.

BY THE COURT:

_____
United States Bankruptcy Judge

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | **Case No. 15-22848 SBB** |
| | ) | |
| **Atna Resources Inc.,** *et al*. | ) | **Chapter 11** |
| | ) | |
| Debtors.[1] | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-22848 SBB** |

**NOTICE OF *DE MINIMIS* ASSET SALE, FREE AND CLEAR OF LIENS, CLAIMS**
**AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on November 18, 2015, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that on [_____], 201[__], the United States Bankruptcy Court for the District of Colorado entered an Order Establishing Procedures for the Sale or Transfer of Certain *De Minimis* Assets (the "Sale Order"), Docket No. [___], authorizing the Debtors to sell certain surplus, obsolete, non-core, unused, or burdensome assets (collectively, the "*De Minimis* Assets").

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Order, the Debtors propose to sell the *De Minimis* Assets as set forth on the attached Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Order, any recipient of this notice will have until 4:00 p.m. (prevailing Mountain Time) on the fifth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.   Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale Notice Parties so as to be received by the Objection Deadline. The Objection Deadline and required service addresses are identified in Exhibit A to this Sale Notice.

---

[1] The debtors and debtors in possession and their respective case numbers subject to this order are: Atna Resources Inc., (15-22848); Canyon Resources Corporation (15-22849); CR Briggs Corporation (15-22850); CR Montana Corporation (15-22851); CR Kendall Corporation (15-22852); Atna Resources Ltd. (15-22853); Horizon Wyoming Uranium, Inc. (15-22854).

Date: _____, 201_

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

*/s/ Stephen D. Lerner* _____
Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Stephen.lerner@squirepb.com
Admitted to District Court for District of
Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of
Colorado

Aaron A. Boschee (Colorado #38675)
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
(303) 830-1776 (phone)
(303) 894-9239 (fax)
Aaron.boschee@squirepb.com