## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 15-22848 JGR** |
| | ) | |
| **Atna Resources Inc.,** *et al*. | ) | **Chapter 11** |
| | ) | |
| **Debtors.**[1] | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-22848** |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER REJECTING EQUIPMENT LEASES PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE

Atna Resources Inc. and the affiliated debtors and debtors in possession in these cases (collectively, the "Debtors") hereby move this Court pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9014-1 of the Local Bankruptcy Rules (the "Local Rules") for the entry of an order (the "Order"), a proposed form of which is attached hereto as Exhibit B, rejecting certain equipment leases (the "Motion").  In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to Rule 84.1 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil.

2.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1] The debtors and debtors in possession and their respective cases numbers subject to this Motion are:  Atna Resources Inc. (15-22848), Canyon Resources Corporation (15-22849), CR Briggs Corporation (15-22850), CR Montana Corporation (15-22851), CR Kendall Corporation (15-22852), Atna Resources Ltd. (15-22853) and Horizon Wyoming Uranium, Inc. (15-22854).

3.      The Debtors' corporate headquarters and their executive level and senior management are all located in Golden, Colorado and have been for the 180 days immediately prior to the Petition Date.  Accordingly, venue of these cases and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.      On November 18, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their property and are operating and managing their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      The Debtors hereby incorporate by reference the factual background set forth in the Declaration of Rodney D. Gloss in Support of First Day Pleadings [Docket No. 12], which includes, among other things, a detailed description of the Debtors' business and affairs, the Debtors' capital structure and prepetition indebtedness, and the events leading to the commencement of these cases.

6.      No trustee or examiner has been appointed in these cases.   An official committee of unsecured creditors was formed on December 14, 2015 (the "Committee").

7.      Prior to the Petition Date, the Debtors entered into numerous leases and executory contracts, including three leases (the "Equipment Leases") for various items of equipment (the "Equipment").  As described below, two of the Equipment Leases were entered into by Debtor CR Briggs, Inc. and one of the Equipment Leases was entered into by Debtor Atna Resources, Inc.

8.      The Equipment Leases are listed on the respective Debtor's Schedule G as executory contracts [*See* Case No. 15-22850, Docket No. 20 and Case No. 15-22848, Docket No.

179], consist of: (a) an Open-End Commercial/Business Use Master Vehicle Lease Agreement between Crossroads Equipment Lease and Finance, LLC and CR Briggs Corporation (the "Crossroads Lease"), dated July 25, 2013 and amended on July 31, 2013, for two used freightliner trucks, a 2009 model and a 2013 model with agreed upon values as of July 25, 2013 of $37,687.05 and $188,040.40, respectively; (b) a Supplement to Master Lease, between Wells Fargo Equipment Finance, Inc. and CR Briggs Corporation (the "Wells Fargo Lease"), dated January 16, 2013, for a "Caterpillar Model 988H Wheel Loader, S/N"; and (c) a Master Lease Agreement No. 6743, between CCA Financial, LLC and Atna Resources, Inc. (the "CCA Lease"), dated October 30, 2014, for lab equipment, including a "CS-230 Carbon and Sulfur Analyzer with auto feeder," a "Mettler xp6 Micro Balance, excluding cabinets and fixtures," and a "Thermo AA w/ auto sampler," among other items. Copies of the leases are attached hereto as Exhibit A.

## RELIEF REQUESTED

9. By this Motion, the Debtors seek the Court's approval to reject the Equipment Leases effective as of December 31, 2015. The Debtors no longer need the Equipment to conduct their business and the Equipment is not necessary for the Debtors' successful reorganization. In addition, rejection of the Equipment Leases will eliminate unnecessary costs to the Debtors' estates, thereby making additional funds available for the distribution to creditors.

## BASIS FOR RELIEF

10. Section 365(a) of the Bankruptcy Code provides that:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Sections 765, 766, and 365(b), (c), and (d) are not applicable to this Motion.

11.     The Bankruptcy Code does not define the term "unexpired lease," but bankruptcy courts have found an unexpired lease where the "contractual relationship (i.e. a term tenancy, which devolved into a month-to-month tenancy) between Debtor and [lessor] . . . arose from a provision . . . which specifically provided for the existence of an ongoing landlord-tenant relationship." *In re Van Vleet*, 383 B.R. 782, 790 (Bankr. D. Colo. 2008), *rev'd in part on other grounds*, *Bisetti's Holdings, Inc. v. Connolly*, 2009 U.S. Dist. LEXIS 40485, *9 (D. Colo. Mar. 31, 2009). *See also Brattleboro Hous. Auth. v. Stoltz (In re Stoltz)*, 197 F.3d 625, 631 (2d Cir. 1999) ("[A] debtor who retains a possessory interest in a residential tenancy has an 'unexpired' lease at least until the writ of possession is issued.") (applying Vermont state law). Although these cases concern residential leases, the general rule that a lease remains executory until it is terminated by the parties or by the end of the agreed term of the lease, applies to equipment leases as well. *See, e.g.*, *In re HP Distrib.*, LLP, 2011 Bankr. LEXIS 251 (Bankr. D. Kan. Jan. 25, 2011) (concluding that certain equipment leases were unexpired where the end of the thirty-six month term provided for in each lease had not yet passed).

12.     The Equipment Leases are unexpired because both parties to each remain obligated under their terms until September 7, 2016, at the earliest,[2] and no attempt has been made to terminate them. *See Van Vleet*, 383 B.R. at 790 ("[T]here had been absolutely no attempts, whether through formal legal process or otherwise, to terminate the tenancy . . . .").

13.     Court approval is required before an unexpired lease can be rejected. *In re National Oil Co.*, 80 B.R. 525, 526 (Bankr. D. Colo. 1987). In approving rejection of an

---

[2]   According to their respective terms, the Crossroads Lease terminates on February 23, 2017, the CCA Lease terminates in October 30, 2016, and the Wells Fargo Lease terminates on September 7, 2016.

unexpired lease, the bankruptcy court "examine[s] the efficacy of a debtor's decision to reject a lease under the guidelines of the business judgment test." *Id.* Under the business judgment test:

> Courts should defer to—should not interfere with—decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their business discretion. . . . The issue thereby presented . . . is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.

*Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1985); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1948) (applying business judgment test for ordinary executory contracts). Bankruptcy courts within the Tenth Circuit have applied the *Lubrizol* analysis. *See, e.g.*, *W. Wood Prods. v. W. Pellet Prods., LLC (In re Western Wood Prods., Inc.)*, 2013 Bankr. LEXIS 1521, *68-70 (Bankr. D.N.M. Apr. 4, 2013) ("Generally, the Court should not interfere with the debtor in possession's exercise of business judgment to reject a lease or executory contract unless the decision is 'so manifestly unreasonable that it could not be based on sound business judgment.'" (quoting *Lubrizol*, 756 F.2d at 1047)); *In re MV Pipeline Co.*, 2007 Bankr. LEXIS 1795, *7 (Bankr. E.D. Okla. May 15, 2007) (quoting *Lubrizol*, 756 F.2d at 1047). *See also In re Grayhall Resources, Inc.*, 63 B.R. 382, 384 (Bankr. D. Colo. 1986) ("[T]he question before the Court is whether the assumption represents a sound business judgment on the part of the Debtor and will not be prejudicial to the interest of the creditors."); *In re National Oil Co.*, 80 B.R. at 526 (noting that court approval is necessary because "[i]t may be, on certain occasions, that a debtor's decision to reject an unexpired lease would not be in the best interests of the estate or the creditors . . . .").

14.     Rejection of the Equipment Leases would be advantageous to the Debtors' reorganization and beneficial, rather than prejudicial, to the interests of creditors. In their efforts

to reorganize, the Debtors have reduced their operations and no longer have the need for use of the Equipment. The Debtors' continued performance under the Equipment Leases would only waste estate resources. Rejection of the Equipment Leases would make additional funds available to the Debtors, ultimately increasing the recovery to creditors.

15.     For the foregoing reasons, Debtors assert that rejection of the Equipment Leases would be a sound exercise of the Debtors' business judgment and would not prejudice the interests of creditors.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, approving the rejection of the Equipment Leases and granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: January 8, 2016

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ *Andrew M. Simon*
Andrew M. Simon (Ohio #0084258)
Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Andrew.simon@squirepb.com
Stephen.lerner@squirepb.com
Admitted to District Court for District of
Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of
Colorado

Aaron A. Boschee (Colorado #38675)
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
(303) 830-1776 (phone)
(303) 894-9239 (fax)
Aaron.boschee@squirepb.com

**Attorneys for the Debtors and Debtors in
Possession**

## **EXHIBIT A**
**Leases (attached)**



**CROSSROADS**
EQUIPMENT LEASE & FINANCE, LLC

9121 Haven Avenue, Suite 270 Rancho Cucamonga, CA 91730
(909) 786-3040   www.crlease.com

## Thank you for choosing Crossroads....

Welcome aboard. We sincerely hope that your new equipment will bring you quality service for years to come. As a dedicated company to the Transportation Industry, our employees here at Crossroads understand that you are always on the go. It is with that in mind that we have provided you with answers to FAQs (Frequently Asked Questions), a copy of your Lease Agreement/Retail Agreement and other information below, should you need to access it while on the road.

*When is my payment due?*

Each Agreement is different, so please refer to your contract for your specific due date. As a courtesy, invoices are mailed to you 17 days prior to your due date.

*Is there a "Grace Period"?*

There is **NO** "Grace Period". Payments are due on their due date.

*If I pay late, will I be penalized?*

Yes! A late fee will be assessed of $25.00, or 5% of the past due amount, whichever amount is greater. Make sure to get in your payment **on time!**

*How do I remit my payment?*

You may call our Main Office at (909) 786-3040 to speak with an Account Specialist and pay over the phone via ACH, or log on to http://www.crlease.com/makepayment.htm to pay online. When paying via Check (Cashier's or Personal) or Money Order, please include your Lease ID on the check to help us identify your account.
If you elect to mail your payment(s), please mail them to:

Crossroads Equipment Lease&Finance, LLC
P.O Box 101285
Pasadena, CA 91189

*Am I required to have insurance?*
YES. Lessees are required to maintain both Physical Damage and Liability. Physical Damage or Full Coverage is acceptable for all other customers.

*When is Crossroads open for business?*
Crossroads is open Monday-Friday 8:30am-5:00pm, and is closed on most National Holidays.

Our goal and passion is to provide you with world class service, and humble, yet thorough understanding of our industry. We would like to thank you again for the opportunity to service your commercial equipment finance and leasing needs.

Sincerely,

David Velasquez
Manager of Customer Service



AMENDMENT TO MASTER VEHICLE LEASE AGREEMENT
DATED. July 23, 2013 NO.15626 AND 15401 BETWEEN CROSSROADS EQUIPMENT LEASE & FINANCE,
LLC. ("Lessor") AND CR BRIGGS CORPORATION ("Lessee")

Notwithstanding the terms and conditions contained in the Master Vehicle Lease Agreement referenced above and to the limited extent hereof, this superseding anything to the contrary contained therein, the following has been amended:

It is hereby acknowledged that the following address information for the corporate location of CR Briggs Corporation was incorrectly stated; therefore Lessor has made the following changes:

As Stated:
Lakewood, CO 80401

As Revised:
Golden, CO 80401

This letter may be executed in one or more counterparts, all of which taken together shall constitute one and the same letter.  The Master Vehicle Lease Agreement, as amended by this letter, remains in full force and effect.  This letter shall be governed by the internal laws of the State of California without regard for principles of conflicts of laws. A signed copy received via facsimile or any other electronic format shall be treated as an original.

IN WITNESS WHEREOF, the undersigned have executed and delivered this letter as of this July 31, 2013.

Accepted and Agreed:

Lessor:
Crossroads Equipment Lease & Finance, LLC

Name: _NARDA ATLANTS - SAIGIW_
Title: _DOC SPECIALIST_

This Lease has been assigned to one or more
secured parties and the purchase or assignment
of this Lease would violate the rights of the secured parties.

# Crossroads Equipment Lease and Finance, LLC
## Open-End Commercial/Business Use Master Vehicle Lease Agreement

| | Lease Date: | July 22, 2013 |
|---|---|---|
| 1. Parties: | Master Lease Number: | 15626 |

| Lessor Name and Address: | Lessee (and Co-Lessee) Name(s) and Lessee's Address: |
|---|---|
| Crossroads Equipment Lease and Finance, LLC | CR Briggs Corporation |
| 9121 Haven Ave Ste 270 | 14142 Denver West Parkway Ste 250 |
| Rancho Cucamonga, CA 91730-5475 | Golden, CO 80401-3119 |
| Phone: 909-945-0275 | Phone: 303-278-8464  FEIN (if applicable): 841150850 |

In this agreement, the words "you", "your" and "yours" refer to Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, Crossroads Equipment Lease and Finance, and any subsequent assignee.

**2. Master Lease Agreement:**

This open-end, commercial/business use master vehicle lease agreement ("Lease Agreement") is a "master lease" under which you agree to lease certain equipment described in Schedules to Lease (each a "Schedule"), subject to all of the terms and conditions of this Lease Agreement and that Schedule. Any such Schedule (including such incorporated terms of this Lease Agreement), together with the Exhibits and other attachments thereto, will constitute a separate lease of equipment as described in the Schedule, and will constitute the entire agreement between you and us with respect to the lease of the vehicle(s) described in such Schedule ("vehicle"). In the event of any inconsistency or conflict between the terms of a Schedule and the terms of this Lease Agreement, the terms of the Schedule shall control with respect to the vehicle(s) which are the subject of such Schedule.

By signing below and signing the applicable Schedule, you agree to lease the vehicle(s) described in that Schedule under the terms and conditions set forth herein. By signing below, you also certify that in accordance with Section 7701(h) of the Internal Revenue Code of 1986, you intend that more than 50% of the use of the vehicles leased under this Lease Agreement is to be in your trade or business. The lease is not binding on Lessor until signed by an authorized representative of Lessor.

**3. Official Fees, Taxes and Fines:**

Ownership of and legal title to each vehicle identified in any Schedule will remain with us, notwithstanding your use and possession of the vehicle. You agree that your interests in the vehicle being leased are that of a lessee, not an owner. You agree to promptly pay when due all sales, use, property, excise, and other taxes and all license, registration or official fees imposed by a governmental body or agency incurred during the term of the lease, except those levied on our net income. You must also promptly pay any fines or other fees incurred on the vehicle or in connection with its use, such as traffic or parking tickets. We may send certain bills for official fees and taxes to you for you to pay directly to the authority charging such fees. We may pay other bills on your behalf without sending them to you for direct payment. If we pay any bills or charges on your behalf, we will charge you the amount paid and you agree to repay those amounts. You must pay all fees incurred during each applicable Lease Term, even if they are assessed and billed after the lease of the vehicle for which they are incurred has ended. We may charge you an estimated amount for the remaining fees and taxes at the end of the Lease Term for the related vehicle. You are responsible for any shortage in this estimate, and we will refund to you any excess if we collect from you more than the actual amount due.

We are not responsible to apply for any refund or abatement of official fees or taxes, including personal property taxes. If we receive a refund of official fees or taxes, we will pay any remaining amount of the refund to you after applying the refund received to amounts due under a Schedule (which includes the incorporated terms of this Lease Agreement). We may pay any title, registration, license fee, tax or fine which you fail to pay, and charge you the amount we paid. You are responsible for any fines or penalties imposed upon us, the Vehicle, or you, if you fail to pay the bill when due.

**4. Permitted Users:**

You agree that you will allow only your employees and duly authorized representatives to use or operate the vehicle. You may not sell, lease, transfer or assign a vehicle or our interest in this Lease Agreement or any Schedule without our prior written consent. You are responsible for ensuring that all authorized users of the vehicle: (i) have a current and valid driver's license issued in one of the States of the United States or the District of Columbia, (ii) are at least 21 years of age, (iii) have not had more than two moving violations in the 3 years preceding the date of use of the vehicle, and (iv) have not had any serious violations in the 5 years preceding the date of use of the vehicle (e.g., driving while under the influence, reckless driving, etc.). You agree that you are responsible for all acts or omissions of any operator of the vehicle, and indemnify us from and against any and all liabilities, claims, losses, damages, costs and expenses, including attorneys' fees and court costs, related thereto.

**5. Prohibited Uses of Vehicle:**

You agree you will not, nor will you permit others to: (i) use the vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Section 9; (ii) alter the vehicle in a way that detracts from the vehicle's economic value or utility or function, except as may be required by the vehicle's manufacturer warranty, without our written consent. (iii) subject the vehicle to any lien, seizure, or other involuntary transfer; (iv) remove the vehicle outside the Continental United States (except to Canada for less than 30 days if you have our consent and have provided us with proof of insurance); or (v) allow anyone other than a person authorized to use the vehicle as detailed in Section 4 to use the vehicle without our written consent.

**6. Vehicle Maintenance and Damage:**

You agree to maintain the vehicle in good repair, condition and working order and furnish all parts and services in order to do so, at your expense. You agree to maintain the vehicle in accordance with the guidelines in the vehicle's owner's manual and any maintenance schedule issued by the manufacturer, and to provide us with written proof of such maintenance when we ask for it. All parts, modifications and improvements to the vehicle will, when installed or made, become our property and part of the vehicle for all purposes. You are responsible for all damage to each vehicle, and for its loss, seizure or theft. You must tell us immediately if any of these events has occurred, and cooperate with us and your insurance company in filing and settling any claim.

**7. Charge for Late Payment; Charge for Returned or Dishonored Payment Item:**

With respect to the lease of any vehicle leased in accordance with this Lease Agreement and any applicable Schedule, if you fail to pay the full lease payment due within 10 days after it is payment is due, you will be charged a late charge of 5% of the unpaid amount of the payment, or $25, whichever is greater. If any payment item or order you give us is returned for nonpayment or dishonored, you will be charged a returned payment item charge in the amount of $30.

Initial(s) _____

Crossroads Equipment Lease and Finance, LLC
Open-End Commercial/Business Use Master Vehicle Lease Agreement

**8. Payment Obligations; Holding Over; Application of Payments:**

You must make all payments when due. You obligation to make payments is not affected and does not change for any reason, including if the vehicle is stolen, destroyed, seized by a governmental agency, or does not operate or perform as intended or to your satisfaction. If you do not return a vehicle by its scheduled Maturity Date, you must continue to pay monthly payments in the amount regularly billed to you prior to the Maturity Date. However, continued payment does not mean you have our permission to keep the vehicle.

**9. Required Insurance:**

With respect to each vehicle leased under each Schedule, you must maintain and provide us with written proof of public liability and physical damage insurance on the vehicle that covers both you and us during the Lease Term for the vehicle, with the Lessee, Co-Lessee, and the designated employee or authorized representative driver named as an insured. The coverage must be not less than $100,000/$500,000 bodily injury, $50,000 property damage and physical damage coverage or a combined single limit of $1,000,000 for bodily injury and property damage for any one accident, and physical damage coverage with deductibles not to exceed $1,000 ~~5000~~ for collision and $1,000 or comprehensive. We can change the amounts we require for insurance for any vehicle you lease. We must be named as "additional insured" and "loss payee" on your insurance policy or policies. Each policy must provide that we will be notified in writing at least 10 days before the insurance is cancelled or coverage altered, and that we or our representative may have full access to your insurer's claim file in the event of an insurable loss. You have the option of furnishing the required amount of insurance either (i) through any existing policies owned or controlled by you and issued by an insurer reasonably acceptable to us, or (ii) by purchasing the required coverage separately through any insurer reasonably acceptable to us. You authorize us to endorse your name(s) on any check or draft from your insurer for any claim. We will credit you with the proceeds of any insurance that we receive for any loss.

Named driver exclusions or other named driver or other non-standard limiting endorsements are not acceptable and are not permitted. No other types of insurance are required by us. YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS.

**10. Obligations and Liability at Scheduled Maturity Date:**

At the scheduled Maturity Date of the Lease Term of each vehicle, if you do not purchase the vehicle pursuant to your right to do so, you must return it to us at the time and place we specify. Each lease of a vehicle is an open-end "TRAC" lease subject to the following terminable rental adjustment clause at the scheduled end of the applicable Lease Term. Upon return of the vehicle, we will sell the vehicle at wholesale, or otherwise dispose of the vehicle. If you decide not to exercise the purchase option, you agree to pay us, upon demand, the following amounts with respect to each vehicle: (i) any unpaid amounts due under the Lease Agreement and applicable Schedule (including any late charges) as of the time the vehicle is returned, including unpaid monthly payments; plus (ii) any disposition fee for the returned vehicle as shown in the applicable Schedule; plus (iii) any official fees or taxes charged in connection with the termination of the lease of the returned vehicle, plus (iv) the amount by which the residual value as set forth for such vehicle in the applicable Schedule exceeds the net proceeds from the sale or disposition of the vehicle. "Net proceeds" means the proceeds received by us, after deducting all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the vehicle, including any collection costs and reasonable attorneys' fees and legal costs we incurred, to the extent not prohibited by applicable law. If the vehicle is a total loss due to damage or unrecovered theft, the net proceeds are the amount of any insurance proceeds we receive from the insurance you maintain on the vehicle pursuant to Section 9. If there are no insurance proceeds, or if the insurance is not in force or does not pay any claim, the net proceeds will be zero.  ~~12%/RT~~  ~~12%/RT~~

After we apply the net proceeds, you will pay us interest on the amount of the end of loan obligation at the rate of ~~20%~~ per annum, or if the maximum rate permitted by law is less than ~~20%~~, the maximum permitted rate, until the amount you owe has been paid in full. If the amount of the net proceeds exceeds the residual value set forth in the applicable Schedule, we will pay you the amount by which such proceeds exceed the residual value. We will apply any security deposit for the vehicle to what you owe, and will refund to you any of the deposit that remains after applying it to the amount you owe.

**11. Option to Purchase a Vehicle:**

You may purchase the vehicle at any time during its Lease Term or at the scheduled Maturity Date (unless a government agency has seized the vehicle and instructed us not to release the vehicle to you). You may purchase the vehicle by paying us: (i) any remaining lease payments including any amounts due under the applicable Schedule with respect to the vehicle; plus (ii) any official fees and taxes, or other fees charged, including any fees we impose, in connection with the purchase of the vehicle, plus (iii) if the purchase is at the scheduled Maturity Date, the residual value for the vehicle shown on the related Schedule, or if the purchase is during the Lease Term, the Adjusted Lease Balance (Section 14). We will apply any security deposit for the vehicle to what you owe. You are responsible to re-titling and re-registering the any vehicle you purchase pursuant to a purchase option, and to pay to the appropriate state, county or local authority (a) sales taxes due on the sale and (b) title, registration, license, inspection or other similar fees. Upon our receipt of the total purchase price for a vehicle, we shall transfer and assign to you, without recourse or warranty, all of our right, title and interest in and to the vehicle on an AS-IS basis.

We shall not be required to make, and SPECIFICALLY DISCLAIM, ANY REPRESENTATION OR WARRANTYWITH RESPECT TO THE TITLE TO, OR THE CONDITION OF, THE VEHICLE, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**12. Default and Remedies:**

You will be in default if:

a. You fail to make any monthly payment or any other payment by the date it is due,

b. You fail to keep any other agreement in this Lease Agreement,

c. The vehicle is lost, stolen, seized or damaged beyond reasonable repair,

d. You provided false or misleading information when applying for this Lease Agreement or the lease of any vehicle subject to a Schedule,

e. You name appears on the list of Specially Designated Nationals and Blocked Persons published by the U.S Treasury Department's Office of Foreign Assets Control (FinCEN) or any other similar or successor list containing names of persons with whom we cannot do business, or we at any time are prohibited by any federal or state law, rule, regulation or order from doing business with you,

f. You become the subject of a bankruptcy or insolvency proceeding,

g. There is an appointment of a trustee or receiver for your assets or you make an assignment for the benefit of creditors,

h. You are in default of any Schedule or other agreement you have with us,

i. There are negative material changes which, ~~in our discretion~~ substantially impact your business affairs, _O M_

j. If you are an individual, you become incompetent or die, and there is no surviving co-lessee,

k. If you are other than an individual or sole proprietor, you merge, consolidate, transfer a substantial portion of your property or are dissolved, or

l. If you are other than an individual or sole proprietor, you or those who own or control transfer, pledge or assign more than 50% of your ownership, or equity or voting control over you, _without notice. /RT_

Initial(s): _RT_

Crossroads Equipment Lease and Finance, LLC
Open-End Commercial/Business Use Master Vehicle Lease Agreement

**12. Defaulted Remedies** (Continued):

If you are in default, we may do any of the following after giving any legally required notices, and after expiration of any legally required cure period:

i.  Terminate this Lease Agreement, and your right to use any or all of the vehicle(s);
ii.  Declare a default under and terminate any Schedule or other agreement that you may have with us;
iii.  Take possession of any or all of the vehicle(s) from your property or elsewhere, if we do so without a breach of the peace;
iv.  For each vehicle subject to a terminated Schedule, require you to pay the amounts set forth in Section 13 (Early Termination);
v.  Pursue any other remedy allowed by law;
vi.  Require you to pay all of our expenses for taking these actions, including, but not limited to, expenses of repossession, transportation, storage, sale, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law;
vii.  Proceed to court action to enforce performance by you and/or to recover costs or expenses we incur; and viii. If the vehicle is equipped with a starter interrupt device, disable the starter.

**13. Early Termination:**

This Lease Agreement and any accompanying Schedule cannot be cancelled or terminated by you prior to the Maturity Date, except if you purchase the vehicle prior to the Maturity Date as set forth in Section 11.

**14. Adjusted Lease Balance:**

For purposes of your exercise of an early purchase option of a vehicle (Section 11), or in the case of your default and our early termination of the applicable Schedule (Section 12) with respect to the lease of a vehicle, the Adjusted Lease Balance is calculated as follows: (i) the Base Monthly Payment as shown for the vehicle on the related Schedule times the number of monthly payments from the date of early termination to the scheduled end of the Lease Term, plus (ii) the residual value as shown for the vehicle on the related Schedule, plus (iii) a disposition fee or other fees as shown for the vehicle on the related Schedule

**15. Security Deposit:**

We may use your security deposit to pay amounts that you owed under a Schedule (which includes the incorporated terms of this Lease Agreement). If you are not in default of any agreement you have with us, any unused Security Deposit will be returned to you at the end of the applicable Lease Term for the related vehicle. No interest, increase or profits will be paid to you on the security deposit. We have no fiduciary duty to you with regard to the security deposit.

**16. Joint and Several Liability:**

Lessee and Co-Lessee are jointly and severally liable. If there are a Lessee and Co-Lessee signing this Lease Agreement or any Schedule, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

**17. Indemnity:**

You agree to indemnify and hold us harmless from and against any claims, losses, liabilities (including negligence, tort, and strict liability), damages, judgments, suits and all legal proceedings, and any and all costs and expenses in connection therewith (including attorney's fees and costs) arising out of or in any manner connected to the manufacture, purchase, ownership, delivery, rejection, non-delivery, transportation, possession, use, storages, operation, condition, maintenance, repair, return or other disposition of the vehicle. You agree that these claims may include claims for injury to or death of persons and for damage to property. You will give us prompt notice of any such claim.

**18. Credit Information:**

You authorize us, at any time, to investigate any information provided on your credit application, including obtaining a credit report, in order to establish, maintain, service and collect on a Schedule (which includes the incorporated terms of this Lease Agreement). You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information.

**19. Odometer Disclosure:**

Federal law (and State law, if applicable) requires that you disclose the mileage of each vehicle to us in connection with the transfer of ownership of the vehicle. Failure to complete an odometer disclosure statement, or making a false statement, may result in fines and/or imprisonment.

**20. Disclaimer of Warranties:**

You agree that you have selected each vehicle to be leased based on your own judgment and not on reliance of any claims or representations made by us. WE ARE NOT THE MANUFACTURER OF THE VEHICLE OR THE MANUFACTURER'S AGENT. YOU LEASE EACH VEHICLE FROM US "AS-IS" AND UNLESS REQUIRED TO DO SO BY LAW, WE MAKE NO EXPRESS AGREEMENT, REPRESENTATION OR WARRANTY WITH RESPECT TO THE VEHICLE. WE DISCLAIM ANY AGREEMENT, REPRESENTATION OR WARRANTY IMPLIED BY LAW, INCLUDING THE WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE.

**21. Security Instrument:**

The parties intend each lease of a vehicle to be a true lease under the laws of the state in which the related Schedule for the vehicle is signed by you or on your behalf. To protect us in the event this Lease Agreement or any part thereof is not construed to be a true lease, we and/or our assigns may, at our sole option, file a Uniform Commercial Code Financing Statement (or its equivalent) without your signature, at your expense, and the security interest then retained by us shall include everything contained in the applicable Schedule (including the incorporated terms of this Lease Agreement). As security for the payment of sums due and owing under the applicable Schedule and the performance of your obligations under the applicable Schedule, and all other obligations of yours to us whether arising under this Lease Agreement, or a Schedule, or otherwise, you hereby grant to us a security interest in: (i) all vehicles, accessions to all vehicles and all interests in vehicles that you have leased from us, whether now existing or hereafter acquired or entered into; (ii) all security deposits that we are holding with regard to all vehicles leased under any Schedule; (iii) any other money of yours that we hold with full right of set-off, and you give us the continuing right to apply such money, without prior notice to you, to amounts due under any Schedule; and (iv) the proceeds of any insurance policy required by any Schedule or any other lease or obligation entered into by the parties hereto or to any Schedule and paid to you, and any claims against third parties (including but not limited to insurance companies) for loss of or damage to a vehicle

**22. Agreement Term and Termination:**

The applicable Schedule becomes effective as of the Lease Date shown at the top of that Schedule and shall continue until the date identified in the Schedule as the date for termination of the lease of the vehicle identified in that Schedule. The foregoing notwithstanding, this Agreement shall remain in effect with respect to each vehicle then leased and each Schedule processed by Lessor until all terms and conditions of this Lease Agreement and such Schedules have been satisfied

**23. Notices; Change of Address:**

All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Address shown at the top of this Lease Agreement unless you give us a different address in writing. You must notify us in writing within 30 days of any change in your Address

Initial(s):

**Crossroads Equipment Lease and Finance, LLC**
**Open-End Commercial/Business Use Master Vehicle Lease Agreement**

**24. Complete Agreement:**
This Lease Agreement and the Schedules represent the entire understanding of the parties and all prior written and oral agreements are superseded

**25. Choice of Law and Severability:**
You agree that the law of the state in which the applicable Schedule is signed applies to that Schedule. If certain provisions of this Lease Agreement or any Schedule violate the law, those provisions will be void, and the remainder of this Lease Agreement and/or Schedule will be enforceable

**26. No Waiver by Us:**
If we delay or refrain from exercising our rights under this Lease Agreement or any Schedule, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

**27. TRAC Lease Disclosure and Acknowledgement:**
By signing this Master Vehicle Lease Agreement, you certify that in accordance with Section 7701(h) of the Internal Revenue Code of 1986, you intend that more than 50% of the use of the vehicles leased under the Open-End Commercial/Business Use Master Vehicle Lease Agreement and accompanying Schedule(s) is to be in your trade or business. In addition, by signing, you acknowledge that you have been advised that for Federal income tax purposes, you will not be treated as the owner of the vehicle(s) you lease under the Open-End Commercial/Business Use Master Vehicle Lease Agreement and accompanying Schedule(s)

**28. TRAC Lease, End-of-Lease Liability:**
Notwithstanding anything in the Open-End Commercial/Business Use Master Vehicle Lease Agreement or accompanying Schedule(s) to the contrary, if at the scheduled Maturity Date of the Lease Term of each vehicle, you do not purchase the vehicle pursuant to your right to do so, in addition to any other liability you have under the terms of the Lease Agreement, Lessor will hold you liable for 100% of the amount by which the residual value for the vehicle as set forth in the applicable Schedule exceeds the net proceeds from the sale or disposition of the vehicle
You acknowledge that Lessor has not provided any advice with respect to the tax implications of the terms of this Master Lease Vehicle Agreement, and that Lessor has recommended that Lessee(s) consult a tax expert for information about the tax consequences of this Open-End Commercial/Business Use Master Vehicle Lease Agreement and any accompanying Schedule(s).

**29. ARBITRATION CLAUSE:**
**This Arbitration Clause significantly affects your rights in any dispute with us. Please read this Arbitration Clause carefully before you sign this Lease Agreement**

1.  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT.
2.  IF A DISPUTE IS ARBITRATED, YOU AND WE WILL EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT OR A JURY TRIAL.
3.  IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US.
4.  THE INFORMATION YOU AND WE MAY OBTAIN IN DISCOVERY FROM EACH OTHER IN ARBITRATION IS GENERALLY MORE LIMITED THAN IN A LAWSUIT.
5.  OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
6.  EVEN IF A DISPUTE IS ARBITRATED, WE CAN STILL REPOSSESS THE VEHICLE IF YOU DO NOT HONOR YOUR CONTRACT AND YOU OR WE MAY SEEK PROVISIONAL REMEDIES FROM A COURT.

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the lease of the vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease Agreement, and any exercise of the purchase option available under this Lease Agreement) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action, and you expressly waive any right you may have to arbitrate a class action (this is called the "class action waiver").

You may choose the applicable rules of either the American Arbitration Association (1-800-778-7879) or the National Arbitration Forum (1-800-474-2371). We waive the right to require you to arbitrate an individual (as opposed to a class) claim if the amount you seek to recover, including attorneys' fees and expenses, is less than $2,500. You may obtain a copy of the rules of these organizations by calling the numbers indicated or by visiting their web sites.

The arbitrators shall be attorneys or retired judges and shall be selected in accordance with the applicable rules. The arbitration award shall be in writing, but without a supporting opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay one half of any arbitration filing fee. We will pay the rest of the filing fee, and the whole filing fee if we demand Clause to be enforceable. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. We will advance costs and fees on your behalf if directed to do so by the arbitrator, subject to later allocation by the arbitrator in accordance with applicable law. We will also pay any fees and charges that the arbitrator determines that we must pay in order to assure that this Arbitration Clause is enforceable. The arbitrator shall decide who shall pay any additional costs and fees

The arbitrator's award shall be final and binding on all parties, except that in the event of an award of zero or in excess of $100,000, or in the event of an grant of injunctive relief, the losing party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel

This Arbitration Clause relates to a contract that evidences a transaction involving interstate commerce. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.)

Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction

If any part of this Arbitration Clause other than the Class Action Waiver is found by a court or arbitrator to be unenforceable, the remainder shall be enforceable. If the Class Action Waiver is found by a court or arbitrator to be unenforceable, the remainder of this Arbitration Clause shall be unenforceable. This Arbitration Clause shall survive the termination of any contractual agreement between you and us, whether by default or repayment in full. By signing this Lease Agreement or any Schedule, you and we agree to this Arbitration Clause

Initial(s): _____

## Crossroads Equipment Lease and Finance, LLC
### Open-End Commercial/Business Use Master Vehicle Lease Agreement

---

**OTHER OBLIGATIONS:**

A default by Borrower or any affiliate of Borrower under any other loan or lease with Lender or an affiliate of Lender shall be a default under this Agreement

*Upon request, Ip—*

**FINANCIAL STATEMENTS:**

✓ Borrower and any guarantor of Borrower agree to provide to Lender, within 45 days after each calendar quarter, an unaudited financial statement of Borrower and any guarantor of Borrower. In addition, within 120 days after each year end, Borrower agrees to provide to Lender an audited financial statement of Borrower and any guarantor of Borrower. Provided, however, in the event Borrower and/or guarantor of Borrower do not have an audited financial statement, Borrower and/or guarantor of Borrower shall provide its unaudited financial statement together with a copy of its filed Federal income tax return within 15 days of the filing of such tax return. Such financial statement shall be in a form and substance reasonably acceptable to Lender and shall fairly represent the financial condition of Borrower and/or guarantor of Borrower.

**LESSEE SIGNATURES AND NOTICES:**

THE PRIMARY USE OF EACH VEHICLE LEASED UNDER A SCHEDULE IS BUSINESS OR COMMERCIAL USE. LESSEE ACKNOWLEDGES, UNDERSTANDS AND AGREES THAT IMPORTANT CONSUMER PROTECTIONS WILL NOT APPLY BECAUSE THE VEHICLE(S) SUBJECT TO A SCHEDULE ARE NOT BEING USED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

NO VEHICLE MAY BE SUBLEASED BY LESSEE/CO-LESSEE WITHOUT OUR PRIOR WRITTEN PERMISSION. YOU MAY NOT ASSIGN THIS LEASE AGREEMENT, ANY SCHEDULE, OR THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

NOTICE TO LESSEE AND CO-LESSEE: (1) DO NOT SIGN THIS LEASE AGREEMENT OR ANY SCHEDULE BEFORE YOU READ ALL PAGES, OR IF THIS LEASE AGREEMENT OR ANY SCHEDULE CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE AGREEMENT AND ANY SCHEDULE WHEN YOU SIGN IT.

By signing below, you acknowledge that: (1) You have read the entire Lease Agreement , including the applicable Schedule; (2) You agree to all of the provisions of this Agreement and the applicable Schedule; (3) You have received a completely filled-in copy of this Lease Agreement; (4) This is a lease – you have no ownership interest in any vehicle subject to a Schedule unless and until you exercise your option to purchase the vehicle as set forth in that Schedule; and (5) You are leasing from us, and have received in good condition, the vehicle(s) set forth in the applicable Schedule (which includes the incorporated terms of this Lease Agreement). This Lease Agreement and the applicable Schedule contain an Arbitration Clause (see above).

**ACKNOWLEDGMENT:**

| Lessee: | CR Briggs Corporation | | |
|---|---|---|---|
| By | *Rodney D Gloss* | Title: | Vice President |
| Typed or Printed Name | Rodney Dean Gloss | Date | 7/25/13 |

| Co-Lessee: | | Co-Lessee: | |
|---|---|---|---|
| By | | By | |
| Typed or Printed Name | | Typed or Printed Name | |
| Title | | Title | |
| Date | | Date | |

| Guarantor: | | Guarantor: | |
|---|---|---|---|
| By | | By | |
| Typed or Printed Name | | Typed or Printed Name | |
| Title | | Title | |
| Date | | Date | |

| Lessor | Crossroads Equipment Lease and Finance, LLC | | |
|---|---|---|---|
| By | | Title | Doc SPECIALIST |
| Typed or Printed Name | | Date | 8/1/13 |

CROSSROADS

Lessee Acknowledgement of Heavy
Vehicle Use Tax Obligations under
Lease Agreement

Lessee Acknowledgement of Heavy Vehicle Use Tax      Date   07/23/2013  Account Number  15401

| Lessee (and Co-Lessee) Name(s) and Lessee's Address: | Lessor Name and Address |
|---|---|
| CR Briggs Corporation | Crossroads Equipment Lease and Finance, LLC |
| 14142 Denver West Parkway Ste 250 | 9121 Haven Ave Ste 270 |
| Lakewood, CO 80401-3119 | Rancho Cucamonga, CA 91730-5475 |

The undersigned Lessee under the Master Lease Agreement dated as of 07/23/2013, (the "Lease") together with Schedule Number 15401 (the "Schedule") dated as of 07/23/2013, hereby acknowledges the following

(i)   Lessee is required to file with the Internal Revenue Service a Heavy Vehicle Use Tax (HVUT) Return (Form 2290) and Schedule of Highway Motor Vehicles (Schedule 1) for all highway motor vehicles with a Taxable Gross Weight (TGW) of 55,000 pounds or more  The annual return must be filed by August 31 for all reportable vehicles, including vehicles leased from Crossroads Equipment Lease Finance, LLC ("Lessor"), that Lessee had in use during the month of July

(ii)  The HVUT tax period begins on July 1 and ends the following June 30  Interim HVUT returns and payments are required for all taxable vehicles placed in service after July  An interim return must be filed by the last day of the month following the vehicles first taxable use  A HVUT return must also be filed when the TGW of a vehicle increases during the tax period

(iii) Lessee must file Form 2290 with the IRS under YOUR COMPANYS LEGAL NAME AND FEDERAL TAX IDENTIFICATION NUMBER for all vehicles subject to this tax  If Lessor is listed as the registered owner of the vehicle, include "c/o Crossroads Equipment Lease  Finance, LLC " after your company's legal name
Note  If you have any reportable vehicles to be registered in Rhode Island, Rhode Island's Registry Office requires you to include Lessor's Federal Tax Identification Number on Form 2290 before they will permit you to register in Rhode Island

(iv)  Lessee is required to pay the full tax amount specified under these filings directly to the Internal Revenue Service in a timely manner in accordance with this law

(v)   Lessee is required, under the Lease and any Schedule to provide proof to Lessor of filing all annual and interim Heavy Vehicle Use Tax Returns and all required tax payments  This Lessee reporting requirement will be fulfilled upon receipt of the following documentation

> Copy of your **annual and interim Heavy Vehicle Use Tax Returns (Form 2290).**
> Copy of your **Schedule of Highway Motor Vehicles (Schedule 1), stamped by the IRS, for all reportable vehicles under this lease.**
> **If you pay in quarterly installments, copy of your canceled checks supporting the payment of each installment.**
> **If NONE of the vehicles in this lease are taxable, certify this fact in writing.**
> *All are exclusively off-road and tax does not apply.* 

(vi)  Lessee is required to reimburse Lessor for any HVUT tax or penalty assessed to Lessor due to lack of Lessee documentation or incorrect Lessee reporting or payment

**All other terms and conditions as specified in the Lease Agreement and Schedule remain unchanged and in full force.**

| ACKNOWLEDGMENT: | | |
|---|---|---|
| Lessee:  CR Briggs Corporation | | |
| By  *Rodney D. Gloss* | Title  Vice President | |
| Typed or Printed Name  Rodney Dean Gloss | Date  *7-25-13* | |

| Co-Lessee: | Co-Lessee: |
|---|---|
| By | By |
| Typed or Printed Name | Typed or Printed Name |
| Title | Title |
| Date | Date |

V3 12102013 CR

## Schedule to Commercial/Business Use Master Vehicle Lease Agreement Number 15401

**Lessor:**
Crossroads Equipment Lease and Finance LLC
9151 Haven Ave Ste 200
Rancho Cucamonga CA 91730-5875
Lessee: Corporation

**Lessee:**
CR Briggs Corporation
13112 Denver West Pkwy Ste 150
Golden CO 80401-3119
Phone 303.278.8464

**Garaging Location:**
9 Miles South of Ballarat on Wingate Rd
Trona CA 93562
County Inyo

Instructions: If the Leased vehicle(s) are to be garaged in different counties or states or covered by different insurance policies, please complete and sign a separate Schedule to Lease Agreement for each group of vehicles with common garages and policies.

| | Grand Total – All Vehicles | Vehicle #1 | Vehicle #2 | Vehicle #3 | Vehicle #4 | Vehicle #5 |
|---|---|---|---|---|---|---|
| Lease Date | 07/23/2013 | | | | | |
| Lease Number 15401 | Total Number of Assets 2 | | | | | |
| **1 a** New/Used | | Used | Used | NA | NA | NA |
| **b** Year | | 2013 | 2009 | NA | NA | NA |
| **c** Make | | Freightliner | Freightliner | NA | NA | NA |
| **d** Model | | M2105 | M2105 | NA | NA | NA |
| **e** Body Style | | Truck | Truck | NA | NA | NA |
| **f** Vehicle ID (VIN) | | 3ALHC6SXCDFH9263 | 1FVHC6BS49DZ81303 | NA | NA | NA |
| **g** Odo-meter Mileage | | 1 | 1 | NA | NA | NA |
| **2 a** Lease Term (Months) | 42 | 42 | 42 | NA | NA | NA |
| **b** Payments commence on (Date) | 08/23/2013 | 08/23/2013 | 08/23/2013 | NA | NA | NA |
| **c** Day of the month that Payment is due | 23 | 23 | 23 | NA | NA | NA |
| **d** Scheduled Maturity Date | 02/23/2017 | 02/23/2017 | 02/23/2017 | NA | NA | NA |
| **3 a** Agreed Upon Value of the Vehicle | $222,727.43 | $185,040.40 | $37,687.05 | $0.00 | $0.00 | $0.00 |
| **b** Trade Allowance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **c** Admin/Contract Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **d** Taxes | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **e** License and Registration | $2,758.00 | $2,281.33 | $466.67 | $0.00 | $0.00 | $0.00 |
| **e** Documentary Fee (fee for preparation of legal documents) | $65.00 | $54.00 | $11.00 | $0.00 | $0.00 | $0.00 |
| **f** Delivery Fees | $990.00 | $822.49 | $167.51 | $0.00 | $0.00 | $0.00 |
| **g** Warranty | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **h** Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **i** GPS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **k** Gross Capitalized Cost | $226,540.43 | $188,208.20 | $38,332.23 | $0.00 | $0.00 | $0.00 |
| **4 a** Base Monthly Payment | $5,509.75 | $4,577.46 | $932.29 | $0.00 | $0.00 | $0.00 |
| **b** Monthly Sales Tax | $440.78 | $366.20 | $74.58 | $0.00 | $0.00 | $0.00 |
| **d** Total Monthly Payment: | $5,950.53 | $4,943.66 | $1,006.87 | $0.00 | $0.00 | $0.00 |
| **5 a** Advance Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **b** Sales Tax on Advance Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **c** Interim Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **d** Sales Tax on Interim Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **e** First Regular Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **f** Security Deposit | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **g** Acquisition Fee | $495.00 | $411.24 | $83.76 | $0.00 | $0.00 | $0.00 |
| **h** Due At Delivery: | $495.00 | $411.24 | $83.76 | $0.00 | $0.00 | $0.00 |
| **6** Management Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **7** Disposition Fee | $500.00 | $166.16 | $33.84 | $0.00 | $0.00 | $0.00 |
| **8** End of Lease (TRAC) Purchase Option: | $22,654.04 | $18,818.71 | $3,835.33 | $0.00 | $0.00 | $0.00 |

**\*Acknowledgement of Delivery of Vehicle(s)**

By signing below, Lessee and any Co-Lessee hereby certify that they have received, inspected and do hereby accept in good working condition the vehicle(s) described in this or each following Schedule to Lease Agreement(s) described in this Schedule (which are incorporated by reference into this Schedule) including the terms and conditions set forth in this Schedule.

Lessee and Lessee and any Co-Lessee have entered into an Open-End Commercial/Business Use Master Vehicle Lease Agreement ("Lease Agreement") dated 07/23/2013. This Schedule to Lease Agreement (this "Schedule") includes certain terms and conditions relating to the lease of vehicles and identifies the vehicle(s) being leased under this Schedule. Lessee and any Co-Lessee will lease from Lessor the terms of the Lease Agreement are hereby incorporated by reference into this Schedule. This Schedule (including such incorporated terms of the Lease Agreement), together with the Exhibits and other attachments hereto, constitute the entire agreement of the parties with respect to the lease of the vehicle(s). By signing this Schedule, Lessee agrees to lease the vehicle(s) described on each Exhibit A attached hereto on the terms and conditions of this Schedule including their terms of the Lease Agreement, which are incorporated by reference into this Schedule.

| Lessee | CR Briggs Corporation | | Title Vice President | Date 07/23/2013 |
|---|---|---|---|---|
| Co-Lessee | By | | Title | Date |
| Guarantor | By | | Title | Date |
| Guarantor | By | | Title | Date |
| Lessor | Crossroads Equipment Lease and Finance, LLC | By | Title DOC SPECIALIST | Date 8/1/13 |

**ASSIGNMENT AND ACKNOWLEDGMENT OF LEASE**
(Master Funding Agreement and Blanket Collateral Assignment, Pledge Line Program)
Crossroads Equipment Lease and Finance, LLC

Lease Date:      July 23, 2013
Lessee:          CR Briggs Corporation
Vehicle:         2013 Freightliner M2106
Vehicle I.D. #:  3ALHCYBSXDDFH9263

☐ For multiple units, see attachment "A," incorporated herein by this reference.

THIS ASSIGNMENT AND ACKNOWLEDGMENT OF ASSIGNMENT OF LEASE ("Assignment and Acknowledgment") is entered into as of the 23 day of July, 2013 by and between CR Briggs Corporation ("Lessee") and Crossroads Equipment Lease and Finance, LLC, a California limited liability company ("Lessor") and MERCEDES-BENZ FINANCIAL SERVICES USA LLC, dba DAIMLER TRUCK FINANCIAL ("Lender"). Lessee, Lessor and Lender are sometimes collectively referred to herein as the "Parties."

1.  **Assignment.** Lessor hereby collaterally assigns to Lender in accordance with the terms of that certain Master Funding Agreement and Blanket Collateral Assignment, Pledgeline Program. Lessor's rights under the Lease, including without limitation Lessor's ownership interest, lien and other rights in the Vehicle identified above, together with all rights which may have arisen before the date of this Assignment and Acknowledgment. Lender and Lessor acknowledge and agree that Lender, in its sole discretion, may direct Lessee to make payment directly to Lender.

2.  **Acknowledgment of Encumbrance.** The Parties acknowledge that the Vehicle is encumbered by the lien of Lender, pursuant to that certain Master Funding Agreement and Blanket Collateral Assignment, Pledgeline Program between Lessor and Lender, which lien is, and shall be, superior to the rights of Lessor and Lessee under the Lease. The parties acknowledge: (i) such lien shall continue to attach to the Vehicle until the Advance made by Lender in connection with the Vehicle is paid in full, together with all interest thereon, (ii) upon notice from Lender, Lessee will make rental payments directly to Lender, (iii) Lessee will not make more than one rental payment in advance to Lessor; and (iv) Lessee will not hold Lender liable for the performance or non-performance of any of Lessor's obligations under the Lease, or otherwise, nor will it withhold rental payments from Lender on account of Lessor's performance or non-performance. Lessee hereby agrees not to sell, lease, sublease or assign any interest in the Vehicle without the prior written consent of Lessor and Lender. The Parties acknowledge and agree that they shall provide notice of Lender's lien to any subsequent purchaser or lessee of the Vehicle, and shall further indemnify Lender from any liabilities or damages which may arise as a result of the failure to provide: (i) notice of Lender's lien, or (ii) notice to Lender of any transaction relating to the Vehicle. It is acknowledged by the Parties that Lender is intended to be a third-party beneficiary of this Assignment and Acknowledgment.

3.  **Binding Effect and Waiver.** This Assignment and Acknowledgment shall be binding upon the successors and assigns of each of the Parties hereto.

IN WITNESS WHEREOF, the undersigned have executed this Assignment and Acknowledgment as of the date first hereinabove written.

LESSEE:   **CR Briggs Corporation**

By _____
Its   Vice President

LESSOR:   **Crossroads Equipment Lease and Finance, LLC, a California limited liability company**

By _____
Its _____

CO-LESSEE: _____

By _____
Its _____

LENDER:   **MERCEDES-BENZ FINANCIAL SERVICES USA LLC, dba DAIMLER TRUCK FINANCIAL**

By _____
Its _____

CO-LESSEE: _____

By _____
Its _____

# Supplement to Master Lease
## Option to Purchase

*Wells Fargo Equipment Finance, Inc.* | *733 Marquette Avenue, Suite 700* | *MAC N9306-070* | *Minneapolis, MN 55402*

**WELLS FARGO**

Supplement Number 363393-402 dated as of March 7, 2013 to
Master Lease Number 363393 dated as of January 16, 2013

Name and Address of Lessee:
**CR Briggs Corporation**
**14142 Denver West Parkway**
**Ste 250**
**Golden, CO 80401**

> **Notice:  Lessor reserves the right to withdraw the terms of this Supplement and issue a modified Supplement without notice to Lessee if Lessor is not in receipt of a fully executed original or facsimile of this document within five (5) business days of the date of this Supplement.  However, in that event, no such modifications will be binding on Lessee unless and until Lessee executes the modified document containing all such modifications.**

This is a Supplement to the Master Lease identified above between Lessor and Lessee (the "Master Lease").  Upon the execution and delivery by Lessor and Lessee of this Supplement, Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the equipment described below upon the terms and conditions of this Supplement and the Master Lease. All terms and conditions of the Master Lease shall remain in full force and effect except to the extent modified by this Supplement.  This Supplement and the Master Lease as it relates to this Supplement are hereinafter referred to as the "Lease".

**Equipment Description:  One (1) Caterpillar Model 988H Wheel Loader, S/N: BXY02235 with fire suppression system and Yokohama Y524 L5 Tires**

After Lessee signs this Lease, Lessee authorizes Lessor to insert any missing information or change any inaccurate information (such as the model year of the Equipment or its serial number or VIN) into this Equipment Description.

**Equipment Location:  8 Miles South of Ballarat on, Wingate Road, Trona, CA 93562**

| SUMMARY OF PAYMENT TERMS | |
|---|---|
| Initial Term (Months):  **42** | Total Cost:  **$557,489.27** |
| Payment Frequency:  **Monthly** | Total Basic Rent:  **$593,975.34** |
| Basic Rental Payment:  **$14,142.27** plus applicable sales and use tax | Interim Rent Daily Rate:  **0.014%** |
| Number of Installments:  **42** | Cutoff Date:  **5/27/2013** |
| Payments in Arrears, See Additional Provisions | Security Deposit:  **N/A** |

**Additional Provisions:** Notwithstanding anything in this Lease to the contrary, Lessee shall pay installments in arrears beginning one month from the Rent Commencement Date.

**End of Term Options:**

**1.**   Provided that the Lease has not been terminated early and no Event of Default under the Lease has occurred and is continuing, then Lessee may upon at least 60 but not more than 120 days prior written notice and upon delivery on or before the expiration of the initial term of the Lease of a certified or cashiers check for the purchase price, purchase all but not less than all of the Equipment at the expiration of the initial term of the Lease for a purchase price of **$101.00**.  If there is a default in the Lease existing when the purchase price is received, Lessor may apply the funds received to cure the default.

**2.**   If Lessee should give timely notice of intention to purchase the Equipment as provided in paragraph 1 and fail to make timely payment of the purchase price, then Lessor may in its sole discretion, by written notice to Lessee, (a) treat the Equipment as purchased and enforce payment of the purchase price, or (b) declare a failure to meet the conditions of purchase, whereupon the interest of Lessee in the Lease and the Equipment shall terminate automatically.

**3.**   Following Lessor's receipt of the purchase price for the Equipment, the Equipment will be deemed transferred to Lessee at its then location.  Lessor hereby warrants that at the time of transfer the Equipment will be free of all security interests and other liens created by Lessor or in favor of persons claiming through Lessor.  LESSOR MAKES NO OTHER WARRANTY WITH RESPECT TO THE EQUIPMENT,

**THIS AGREEMENT INCLUDES THE TERMS ON THE ATTACHED PAGE(S).**

Lessor: Wells Fargo Equipment Finance, Inc.     Lessee: CR Briggs Corporation

By                                              By

Title     **David Ahr**                         Title
          **Contract Administrator**

Rent Commencement Date  3/31/2013

EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT.

4.   Lessee agrees to pay all sales and use taxes arising on account of any sale of the Equipment upon exercise of the purchase option.

Lessor makes no representation with respect to income tax consequences of the purchase option contained herein, and Lessor may in its sole discretion treat the Lease as a sale regardless of how the Lease is treated by the Lessee.

**Amendment Regarding this Lease:**  For the purposes of the Lease evidenced by this Supplement only, the Master Lease is amended, as it relates to this Supplement, as follows:

**1.**   The second paragraph of paragraph 2 (relating to automatic extension) is hereby deleted.

**2.**   The sixth sentence of paragraph 12 is amended to read "Any insurance or condemnation proceeds received shall be credited to Lessee's obligation under this paragraph and Lessee shall be entitled to any surplus."

**3.**   Paragraph 14 and 23 are deleted in their entirety.

**4.**   Paragraph 18 (relating to Lessor's Loss) is amended by changing "10%" where it appears therein to "$101.00".

**5.**   The third sentence of paragraph 18(c) is amended to read "Lessee shall be entitled to any surplus and shall remain liable for any deficiency."

A-SUPLPOPT101.0213

# Delivery and Acceptance Certificate



*Wells Fargo Equipment Finance, Inc. | 733 Marquette Avenue, Suite 700 | MAC N9306-070 | Minneapolis, MN 55402*

Contract Number 363393-402 dated as of March 7, 2013

**Name and Address of Customer:**
**CR Briggs Corporation**
**14142 Denver West Parkway**
**Ste 250**
**Golden, CO 80401**

**Equipment Description:  One (1) Caterpillar Model 988H Wheel Loader, S/N: BXY02235 with fire suppression system and Yokohama Y524 L5 Tires**

**Equipment Location: 8 Miles South of Ballarat on, Wingate Road, Trona, CA 93562**

**Delivery and Acceptance Certification:**

Customer, by its signature below, acknowledges and confirms to Wells Fargo Equipment Finance, Inc. that (i) Customer has received and irrevocably accepted all of the personal property described above (the "Equipment") as of the Acceptance Date set forth below and agrees that the Equipment is now subject to the agreement referred to above, (the "Contract"); (ii) Customer shall bear all risk of loss or damage to the Equipment and shall insure the Equipment in accordance with the terms of the Contract; and (iii) Customer's obligations under the Contract are absolute and unconditional.  Customer further acknowledges and agrees that Wells Fargo Equipment Finance, Inc. may advance funds on account of the Equipment in reliance upon this certificate, and that Customer is fully obligated under the Contract

Delivery and Acceptance Date: _3 / 8 / 13_

Customer: CR Briggs Corporation

By _____

Title _____

# Pay Proceeds

*Wells Fargo Equipment Finance, Inc. | 733 Marquette Avenue, Suite 700 | MAC N9306-070 | Minneapolis, MN 55402*

In reference to Contract Number  363393-402 dated as of March 7, 2013, Wells Fargo Equipment Finance, Inc. is irrevocably instructed to disburse payment as follows:

| Payee | Invoice Number | Amount |
|-------|----------------|--------|
| Quinn Company | | $500,854.00 |
| GCR Tire Centers | | $43,800.00 |
| NVB Equipment, Inc. | | $9,500.00 |
| Cutting Edge Supply | | $3,335.27 |
| **TOTAL FINANCED** | | **$557,489.27** |

Dated:   March 7, 2013

CR Briggs Corporation

*Rodny D. Ablom*
By

*V P*
Title

**WELLS FARGO**

# Invoice

*Wells Fargo Equipment Finance, Inc. | 733 Marquette Avenue, Suite 700 | MAC N9306-070 | Minneapolis, MN 55402*

**To:** CR Briggs Corporation
14142 Denver West Parkway
Ste 250
Golden, CO 80401

**DATE OF INVOICE:  March 7, 2013**

**App/Setup # 376644/160990 - DUE IN ADVANCE**

| CONTRACT NO. | DESCRIPTION | CONTRACT PAYMENT | SALES/USE TAX | OTHER CHARGES | AMOUNT DUE |
|---|---|---|---|---|---|
| 363393-402 | Wells Fargo Equipment Finance, Inc. (Non-Refundable Processing Fee) | | | $500.00 | $500.00 |
| | | | **TOTAL DUE** | | $500.00 |

**WIRE TO:**
ABA#:           121000248
Swift Code:      WFBIUS6S
Bank Name:     Wells Fargo Bank, N.A.
Account#:       0000010313
Account Name:  Wells Fargo Equipment Finance, Inc.
Phone Advise:  WFEFI Customer Service (866) 726-4714

**REMIT TO:**    **Wells Fargo Equipment Finance, Inc.**
733 Marquette Avenue, Suite 700
MAC N9306-070
Minneapolis, MN 55402

# Required Information
## Tax Status, Billing Address and Equipment Location

*Wells Fargo Equipment Finance, Inc.* | *733 Marquette Avenue, Suite 700* | *MAC N9306-070* | *Minneapolis, MN 55402*

Contract Number 363393-402 dated as of March 7, 2013

Name and Address of Customer:
**CR Briggs Corporation**
**14142 Denver West Parkway**
**Ste 250**
**Golden, CO 80401**

---

**Equipment Description: One (1) Caterpillar Model 988H Wheel Loader, S/N: BXY02235 with fire suppression system and Yokohama Y524 L5 Tires**

**E-mail Address:** rgloss@atna.com        **Documentation Contact Name:** Rod Gloss

**Social Security No./Federal Tax I.D. No.** *84-1150850*

**Sales/Use Tax:** (check one)

☒ Subject to sales and use tax. **(Tax will be charged based on the type of equipment financed and on the state in which the equipment is located.); or**

☐ Exempt from sales and use tax, for the following reason: _____
**(YOU MUST REMIT A VALID EXEMPTION CERTIFICATE PRIOR TO FUNDING).**

**Personal Property Tax:** If the equipment is located in a state or locality that requires reporting of the equipment on a personal property tax return, please include the equipment with other property you own.

**Billing Address:** CR Briggs Corporation , 14142 Denver West Parkway, Ste 250, Golden, CO 80401

☒ The billing address stated above is correct      OR      ☐ Change the billing address as stated below:

Street _____ City _____

State _____ Zip Code _____

**Equipment Location: 8 Miles South of Ballarat on, Wingate Road, Trona, CA 93562**

☒ The equipment will be located at the Equipment Location stated above or at the address shown on the attached Schedule A.

Indicate **County** the equipment is located in *Inyo* ; or

☐ The equipment will be located at:

Street _____ City _____

State _____ Zip Code _____ County _____
(If multiple locations, attach a list of equipment by City, State, and County indicating where each piece of equipment is located.)

**Notice: To help the government fight the funding of terrorism and the money laundering activities, U.S. Federal law requires financial institutions to obtain, verify and record information that identifies each person (individuals or businesses) who opens an account. What this means for you: When you open an account or add any additional service, we will ask you for your name, address and taxpayer identification number that will allow us to identify you. We may also ask to see other identifying documents.**

Customer: CR Briggs Corporation

By *Rodney D. Gloss*

Title *V P*



# MASTER LEASE AGREEMENT NO. 6743

**THIS MASTER LEASE AGREEMENT NO. 6743** (the "Master Lease") is made as of October 30, 2014 between **CCA Financial, LLC**, a Virginia company with its principal office at 10993 Richardson Road, Suite 14, Ashland, VA 23005 ("Lessor"), and **ATNA Resources, Inc.**, a Nevada corporation with its principal office at 14142 Denver West Parkway, Suite 250, Golden, CO 80401 ("Lessee").

1.  DEFINITIONS: (a) The "Equipment" means the equipment, machines, devices, features, manufacturer's application software, and other items listed in each Schedule hereto attached and hereby made a part hereof.

(b)  The "Manufacturer" means the manufacturer or vendor of the Equipment as shown in a Schedule.

(c)  The "Commencement Date" means with respect to each Schedule, where the beginning date for Basic Rental (as defined in paragraph 4 hereof) is the first day of a month, that date, and in any other case, the first day of the month following the beginning date for Basic Rental.

(d)  The "Installation Date" means, for the Equipment being installed, the date that (i) the Equipment is installed as specified by Manufacturer, or (ii) the Equipment is delivered to Lessee if Lessee fails to provide a suitable installation environment or elects to delay installation. At Lessor's request, Lessee shall execute a Certificate of Installation and Acceptance verifying Lessee's acceptance of the Equipment as of the Installation Date. Lessee hereby authorizes Lessor to complete the Equipment serial numbers and the Installation and Acceptance Date on Lessee's behalf on any Schedule or Acceptance Certificate which is returned without such information.

2.  LEASE: Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor in accordance with the terms and conditions of this Master Lease, the Equipment identified in the Schedules which are or may from time to time be executed pursuant to this Master Lease. Each Schedule shall incorporate by reference all terms and conditions of this Master Lease together with such other terms or amendments which may be specified in the Schedule. Together with this Master Lease, each Schedule shall individually constitute a lease agreement between Lessor and Lessee ("Lease") with respect to the Equipment specified in the Schedule. A Lease shall not become effective until the Schedule is executed by Lessee and Lessor.

3.  TERM OF LEASE: (a) The term of this Master Lease shall commence on the date set forth above and shall continue in effect thereafter so long as any Lease entered into pursuant to this Master Lease remains in effect. The initial term for each Lease shall commence on the Commencement Date and shall continue for the number of full months set forth in the Schedule ("Initial Term"). Notice of Lessee's termination of each Lease shall be provided to Lessor in writing at least three (3) months prior to the expiration of the Initial Term of the Lease. Lessee or Lessor may terminate a Lease only at the expiration of the Initial Term by giving the other party not more than six (6) months and not less than three (3) months written notice prior to such expiration. In the event that Lessee's or Lessor's written notice is not received or given (as applicable) as prescribed herein, the term of the Lease shall be extended for continuous and consecutive three (3) month periods at the then existing Basic Rental, with receipt of notice of termination required at least three (3) months prior to expiration.

(b)  Any notice of termination given by Lessee may not be revoked without the written consent of Lessor.

4.  RENTAL: (a) The minimum monthly rental (herein called the "Basic Rental") payable by Lessee to Lessor or its assigns for each Lease is set forth in each Schedule. Basic Rental shall begin on the Installation Date and shall be due and payable by Lessee to Lessor in advance on or before the first day of each month. If the beginning date for Basic Rental does not fall on the first day of a month, the first payment for the partial month will be prorated on the basis of a 30-day month and will be due and payable on the beginning date for rent. In the event Lessee does not timely make any payment of Basic Rental or other monies due hereunder, Lessee shall be liable to Lessor for a stipulated damage amount equal to 12% per annum of the amount of said payment and shall pay said amount immediately to Lessor.

(b)  In addition to the Basic Rental, Lessee shall pay to Lessor an amount equal to all taxes, if any, paid, payable or required to be collected by Lessor, however designated, which are levied or based on this transaction, the Basic Rental, a Lease, and/or the Equipment or its use, lease, sale, operation, control or value, including, without limitation, state and local sales, privilege, business license or excise taxes based on gross revenue, or amounts in lieu thereof paid or payable by Lessor in respect of the foregoing, but excluding only federal and state income taxes. Personal property taxes, if any, on the Equipment shall be filed with the appropriate authorities by Lessee and paid by Lessee. Lessee shall give Lessor written evidence of payment of personal property taxes within ten days of the due date. Except for personal property taxes, all taxes shall be invoiced by Lessor to Lessee unless such taxes are invoiced directly to Lessee by the appropriate taxing authorities. If Lessee makes timely payment to Lessor or directly to any taxing authority within the time provided by the authority for the payment of such taxes, then Lessee shall not be liable for any penalties or interest in

Page 1 of 7



respect of the taxes. If Lessee does not make timely payments to Lessor or directly to the taxing authority within the time provided by the authority for the payment of such taxes, then Lessee shall be liable for any penalties, interest or other charges in respect of the taxes. Notwithstanding anything hereinabove to the contrary, so long as Lessee is not in default hereunder, Lessee shall not be obligated by a Lease to pay any tax, levy or assessment in respect of a Lease or the Equipment so long as Lessee, in good faith, shall contest actively the validity thereof by appropriate legal proceedings. Lessee agrees that if such a proceeding is instituted, upon the final decision therein, or upon the discontinuance thereof, Lessee will forthwith pay such taxes, levies or assessments as are determined to be owing, together with all costs, interest and penalties and all damages and costs, including all attorneys' fees reasonably incurred, which Lessor may sustain in consequence of the non-payment of the taxes, levies or assessments when due. Subject to the foregoing, Lessee may contest any such taxes in Lessor's name, and Lessor agrees, upon written request and at the sole expense of Lessee, to cooperate with Lessee in the prosecution of any such contest.

5.      USE OF EQUIPMENT: (a) Lessee warrants and represents that all use of the Equipment and all components and any other equipment used in any manner in connection with the operation and use of the Equipment shall meet the specifications of Manufacturer. Specifications shall include but not be limited to Manufacturer's warranty and required or recommended maintenance program.

      (b)      Lessee shall be entitled to full time use of the Equipment without extra charge by Lessor.

      (c)      Lessee shall keep the Equipment at all times in its sole possession and control. The Equipment shall not be moved from the location stated in each Schedule attached hereto without the prior written consent of Lessor.

      (d)      Without the prior written consent of Lessor, Lessee shall not make or permit to be made any alteration, attachment or addition to the Equipment, except for the installation of such standard engineering changes as are customarily made without charge by Manufacturer under its basic maintenance program, and Lessee shall cooperate so that such standard engineering changes, as part of Manufacturer's maintenance program, may be promptly installed.

      (e)      Lessee agrees that other than replacements and repairs any alteration, attachment or addition to the Equipment shall be capable of being removed without material damage to or reduction in the value or impairment of the capability or efficiency of, the Equipment, and that no alteration, attachment or addition shall reduce the value or impair the capabilities or efficiency of the Equipment. Other than replacements or repairs, any alteration, attachment or addition shall be made at Lessee's expense and absent a default by Lessee hereunder, shall be the property of Lessee. Any item of the Equipment replaced or substituted in connection with the alteration, attachment or addition shall remain the property of Lessor and shall be restored to the Equipment in proper working order upon the termination of a Lease at Lessee's expense.

6.      MAINTENANCE AND REPAIRS: (a) At all times during the continuance of a Lease, Lessee, at its expense, shall maintain and keep the Equipment in good working order, repair and condition and make all necessary adjustments, repairs, and replacements and shall use and require the Equipment to be used in a manner consistent with the Manufacturer's warranty and maintenance program.

      (b)      Without limiting the generality of the foregoing, effective upon expiration of the Manufacturer's warranty on the Equipment, Lessee, at its own expense, will maintain Equipment in accordance with manufacturer recommended schedule and specifications. Lessor shall have no responsibilities or obligations whatsoever with respect to the condition, operation, maintenance or repair of the Equipment.

7.      REDELIVERY OF EQUIPMENT TO LESSOR: At the termination of a Lease, Lessee shall deliver possession of the Equipment to Lessor in accordance with the following procedures:

      (a)      At the termination of a Lease, Lessee, at its sole expense, shall return the Equipment to Lessor in the same operating order, repair, condition and appearance as on the date of the commencement of such Lease, reasonable wear and tear excepted, and Lessee shall arrange and pay for such repairs and replacements required to return Equipment to normal working condition if such repairs are necessary. In addition, Lessee, at its sole expense, shall return all Equipment with the latest version of the operating system then available, either installed or on separate media, if the operating system is considered transferable as a part of the hardware by the Manufacturer. Lessor may have the Equipment tested and certified by the Manufacturer, splitting the cost of such testing 50/50.

      (b)      At the end of the last business day of a Lease, and at its sole expense, Lessee shall tender the Equipment packed and crated by Manufacturer or by a carrier acceptable to Manufacturer in a manner suitable for truck transportation and at a loading dock for trucks of the manner normally used for transportation of the Equipment at the then present location of the Equipment. If the Equipment is not ready for such removal by the end of the first business day following the termination of a Lease, then Lessee shall be liable to Lessor for two (2) days' rent for each day during which the Equipment is not so tendered for removal.

      (c)      Lessee shall be solely responsible and shall pay directly all transportation, insurance, rigging, drayage, packing, deinstallation, disconnection charges and other items of a like nature incurred in connection with a Lease, including without limitation any costs and expenses incurred in respect of delivering the Equipment to Lessor's designated destination within 1500 miles, and insurance on the Equipment in route, upon termination of any Lease or this Master Lease.



8.    OWNERSHIP AND INSPECTION: (a) The Equipment shall at all times remain the property of Lessor and be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Lessee acknowledges and agrees that it has not, and by the execution of this Master Lease and any Lease, it does not have or obtain, and by payments and performance hereunder, it does not and will not have or obtain any title to the Equipment. Lessee will affix tags, decals or plates to the Equipment showing Lessor's ownership, which type of tag, decal or plate and location may be specified by Lessor, and Lessee shall not permit their removal or concealment.

(b)    Lessor or its agent shall have free access to the Equipment at all reasonable times for the purpose of inspection and for any other purpose contemplated in this Lease.

(c)    Lessee shall immediately notify Lessor of all details concerning any claim of damage or loss arising out of the use, manufacturer, functioning or operation of the Equipment.

(d)    Lessee shall keep the Equipment free and clear of all liens, encumbrances and claims of any kind and nature.

9.    INSURANCE: The risk of loss for or any damage to or destruction of the Equipment shall be on Lessee. Lessee shall obtain and maintain for the entire term of any Lease, at its own expense, property damage and liability insurance and insurance against loss or damage to the Equipment without deductible or co-insurance borne by Lessee including, without limitation, loss by fire and hazard (including so-called all risks and extended coverage), theft, and such other risks of loss as are customarily insured against on the type of Equipment leased hereunder and/or by businesses in which Lessee is engaged, in such amounts, in such form and with such insurers as shall be satisfactory to Lessor; provided, however, that the amount of insurance against loss or damage to the Equipment shall not be less than the greater of the full replacement value of the Equipment or the total of the installments of rent then remaining unpaid hereunder. In the event that the Equipment shall be or become lost, stolen, destroyed, worn out, irreparably damaged, or shall be requisitioned or taken over by any governmental authority under the power of eminent domain or otherwise during the term of a Lease (any such occurrence being herein called a "Casualty Occurrence"), Lessee shall terminate such Lease by paying Lessor, on the payment date for Basic Rental next succeeding the Casualty Occurrence, an amount equal to the full replacement value of the Equipment plus the total of the installments of rent then remaining unpaid hereunder (the "Casualty Value"). In any settlement under this paragraph 9 Lessee shall be entitled to credit for the amount of any proceeds of any insurance or award actually received by Lessor or the Secured Party on account of the Casualty Value with all excess amounts being the sole property of Lessor; and if at the time of any settlement under this paragraph 9 any rents or other sums are due or accrued and unpaid hereunder, all such rents and other sums shall also be paid at the time of such settlement. Each insurance policy will name Lessee as an insured and Lessor and any Secured Party as additional insureds and loss payees thereof as Lessor's and any Secured Party's interest may appear, and shall contain a clause requiring the insurer to give Lessor and any Secured Party at least ten (10) days prior written notice of any alteration in the terms of such policy or of the cancellation thereof. Lessee shall furnish to Lessor and any Secured Party a certificate of insurance or other evidence satisfactory to Lessor and Secured Party that such insurance coverage is in effect. Lessor and any Secured Party shall be under no duty either to ascertain the existence of or to examine any such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof.

10.    WARRANTIES: (a) Lessor hereby assigns to Lessee, at Lessee's expense, any warranty rights which Lessor shall be entitled to enforce against Manufacturer in respect of the Equipment. Lessee shall take all reasonable action to enforce such warranties. Lessor, at the sole expense of Lessee, shall provide reasonable assistance to Lessee in enforcing such warranty rights.

(b)    **LESSOR MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE WITH RESPECT TO THE CONDITION OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR WITH RESPECT TO PATENT INFRINGEMENT OR THE LIKE. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS, SERVICE OR DEFECTS IN THE EQUIPMENT OR THE OPERATION THEREOF.** Lessor shall have no liability to Lessee for any claim, loss or damage of any kind or nature whatsoever and there shall not be any abatement of rent for any reason, including without limitation any claim, loss or damage arising out of or in connection with (i) the deficiency or inadequacy of the Equipment for any purpose, (ii) any deficiency or defect in the Equipment, (iii) the use or performance of the Equipment, (iv) any interruption or loss of service or use of the Equipment or (v) any loss of business or other loss or damage, direct, consequential or otherwise, whether or not resulting from any of the foregoing. Lessee will defend, protect, indemnify and hold Lessor and any Secured Party harmless against any and all losses, damages, injuries, claims, demands, liabilities, costs, and expenses including reasonable attorney's fees, arising out of or in connection with the design, manufacture, installation, use, condition, possession or operation of the Equipment. The foregoing indemnification shall not apply in the event such claims, demands, liabilities or costs are the direct cause of the willful fault or gross negligence of Lessor. The indemnities and assumptions of liabilities contained in this paragraph 10 (b) shall continue in full force and effect after the termination of any Lease, whether by time or otherwise. At its own expense, Lessee will maintain adequate and complete public liability insurance to cover its liability with respect to the design, manufacture, possession or operation of the



Equipment and the premises at which the Equipment is located, and shall name Lessor and any Secured Party as additional insureds under such public liability policy or policies.

11.   UPGRADES:  Provided Lessee is not in default under this Master Lease or any Lease, Lessee shall notify Lessor in writing that Lessee desires to add upgrades to the Equipment  not less than forty-five (45) days before the desired date of installation stating when and what upgrades Lessee intends to obtain.  Within ten (10) business days after Lessor receives Lessee's notice Lessor may offer to lease and supply such upgrades (the "Offer") to Lessee.  Lessee may accept this offer or seek other bona fide offers from third parties, the credit of which shall have been approved by Lessor in its sole discretion ("Third Party Offer").  Lessee shall notify Lessor of any more favorable Third Party Offer.  Lessee shall obtain the upgrade from Lessor if Lessor at least matches the Third Party Offer within five (5) business days after Lessor's receipt of Lessee's notice.  If Lessee leases upgrades from Lessor, the lease shall be subject to a Schedule the terms of which, other than the Initial Term, Acceptance Date and Basic Rent, shall be the same as those applicable to the Equipment to which the upgrades relate.

12.   SECURITY INTEREST AND/OR ASSIGNABILITY:  At any time and from time to time, Lessor may assign the rents and other sums at any time due or to become due or at any time owing or payable by Lessee to Lessor under any Lease or this Master Lease.  Any assignment shall be in respect of any Lease or this Master Lease and/or the rents and other sums due and to become due in respect of the Equipment, and may be either absolute or as collateral security for any obligation of Lessor.  Any assignment shall not be binding on Lessee until written notice has been given to Lessee by Lessor and the assignee ("Secured Party").  From and after the receipt by Lessee of written notice  Secured Party shall not be obligated to perform any duty, covenant or condition required to be performed by Lessor under any Lease or this Master Lease, but on the contrary, Lessee, by its execution hereof, acknowledges and agrees that notwithstanding any such assignment, all such duties, covenants or conditions required to be performed by Lessor shall survive any such assignment and shall be and remain the sole liability of Lessor and of every person, firm or corporation succeeding (by merger, consolidation, purchase of assets or otherwise) to all or substantially all of the business assets or goodwill of Lessor. Without limiting the foregoing, Lessee further acknowledges and agrees that the rights of Secured Party in and to the sums payable by Lessee under any Lease or this Master Lease (including, without limitation, Basic Rental and Casualty Value) shall not be subject to any abatement whatsoever, and shall not be subject to any defense, set-offs, counterclaim or recoupment whatsoever whether by reason of failure of or defect in Lessor's title or any failure of Lessor to perform any of its obligations hereunder or any interruption from whatsoever cause in the use, operation or possession of the Equipment or any part thereof or any damage to or loss or destruction of the Equipment or any part thereof or by reason of any other indebtedness or liability, howsoever and whenever arising, of Lessor to Lessee or to any other person, firm or corporation or to any governmental authority or for any cause whatsoever.  It is the intent hereof that Lessee shall be unconditionally and absolutely obligated to pay Secured Party all of the rents, Casualty Value and other sums which are the subject matter of the assignment and that Secured Party shall have the sole right to exercise all rights, privileges and remedies (either in its own name or in the name of Lessor for the use and benefit of Secured Party) which by the terms of any Lease or this Master Lease or by applicable law are permitted or provided to be exercised by Lessor.

13.   RIGHT TO QUIET ENJOYMENT:  So long as the Lessee shall not be in default hereunder, Lessee shall have the right to quiet enjoyment and use of the Equipment.

14.   REMEDIES: The Lessee shall be in default hereunder ("Default") if: (i) it fails to make a timely payment of any rent or other monies herein reserved; (ii) it fails to timely perform any of the terms or provisions of any Lease, this Master Lease, or any other agreement by and between Lessor and Lessee, including any other master lease, and fails to cure such default within five (5) days after receipt from Lessor and/or Secured Party of written notice to Lessee of the default; (iii) any representation or warranty made by Lessee herein or in any document or certificate furnished Lessor or Secured Party in connection herewith or pursuant hereto shall prove to be incorrect at any time in any material respect, so long as Lessee has been given five (5) days notice of said incorrect representation or warranty; (iv) a temporary receiver is appointed for Lessee or Lessee's property and the receiver is not removed within thirty (30) days after appointment, or if a permanent receiver is appointed for Lessee or Lessee's property; if, whether voluntarily or involuntarily, Lessee takes advantage of or seeks to take advantage of any debtor relief or bankruptcy proceedings under any present or future law; if Lessee makes an assignment for benefit of creditors; or if Lessee shall be declared bankrupt, whether voluntarily or involuntarily; (v) an order, judgment or decree of a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets or liabilities or similar proceedings of or relating to Lessee or of or relating to all or any substantial part of its property, or the winding up or liquidation of its affairs, shall have been entered against Lessee, and such decree or order shall have remained in force undischarged or unstayed for a period of thirty (30) days from the date of entry thereof; (vi) the rights, privileges or franchises of Lessee to do business shall be declared forfeited by any governmental authority or any court of competent jurisdiction and not restored or the order, decree or judgment related thereto effectively stayed by appropriate proceedings within 30 days thereafter.  Upon occurrence of any such Default, Lessor may at its option



declare any Lease and/or this Master Lease to be in default and may do one or more of the following with respect to any or all Equipment as Lessor in its sole discretion shall elect: (a) cause Lessee to (and Lessee agrees that it will), upon written demand of Lessor and at Lessee's expense, promptly return the Equipment to Lessor in accordance with all of the terms of paragraph 7 hereof, or Lessor, at its option, may enter upon the premises where Equipment is located and take immediate possession of and remove the same, all without liability to Lessor for damage to property or otherwise. If for any reason the Equipment is not returned or the Lessor is unable to take possession of the equipment within thirty (30) days of Lessor's written demand, Lessee agrees to pay the then Fair Market Value, determined by an independent appraiser selected by Lessor with the appraisal to be binding upon both Lessor and Lessee; (b) sell or lease any or all of the Equipment at public or private sale, with or without notice to Lessee or advertisement, or otherwise dispose of, hold, use, operate or keep idle the Equipment, all as Lessor in its sole discretion may determine and all free and clear of any rights of Lessee and without any duty to account to Lessee for such action or inaction or for any proceeds with respect thereto; (c) by written notice to Lessee, cause Lessee to (and Lessee agrees that it will) pay to Lessor (as liquidated damages for loss of a bargain and not as a penalty) on the date specified in such notice an amount equal to the present worth of all unpaid Basic Rentals, such present worth to be computed on the basis of a four percent (4%) per annum discount from the respective dates of such rental payment, which absent a default, would have been payable hereunder for the full term hereof (plus interest accrued thereon at the rate of 18% per annum from said date to the date of actual payment), plus any other monies due or accrued hereunder up to date of actual payment; and/or (d) Lessor may exercise any other rights or remedies which may be available to it under the Uniform Commercial Code or any other applicable law or proceed by appropriate court action to enforce the terms hereof or to recover damages for the breach hereof or to rescind any Lease and/or this Master Lease as to any or all Equipment. In addition, Lessee shall continue to be liable for all indemnities under this Master Lease, and for all legal fees and other costs and expenses resulting from the foregoing defaults or the exercise of Lessor's remedies, including without limitation placing any Equipment in the condition required by paragraph 7 hereof. No right or remedy referred to in this paragraph is intended to be exclusive, but each shall be cumulative and in addition to any other right or remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver by Lessor of any default shall constitute a waiver of any other default by Lessee or a waiver of any Lessor's rights or remedies. To the extent permitted by applicable law, Lessee hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use or deal with any Equipment in mitigation of Lessor's damages as set forth in this paragraph or which may otherwise limit or modify any of the Lessor's rights or remedies under this paragraph.

15.     SUBLEASE AND ASSIGNMENT:  Lessee may sublease the Equipment or assign its rights under any Lease or this Master Lease, in whole or in part, only with the prior written consent of Lessor and any Secured Party.  In any such case, Lessee shall nevertheless remain fully liable hereunder and, in requesting the prior written consent, shall provide copies of any sublease or assignment, together with all related documents, to Lessor and Secured Party.

16.     RENEWAL OPTION: Provided Lessee is not in default under this Master Lease or any Lease, Lessee may elect to renew the Initial Term of a Lease for a period not less than twelve (12) months (a "Renewal Term"). Lessee's renewal option is subject to the following terms and conditions:
    (a)     Lessee must notify Lessor of its exercise of the option at least three (3) months before the expiration of the Initial Term of a Lease.
    (b)     All of the terms of the Lease other than the length of the Renewal Term and the Basic Rental shall remain the same. The Basic Rental shall be the Fair Rental Value, as hereinafter defined, of the Equipment as of commencement of the Renewal Term.
    "Fair Rental Value" is defined as the value upon which a willing Lessor and a willing Lessee would agree, for the term involved, each respectively under no compulsion to lease. Fair Rental Value as of the end of the Initial Term shall be determined by agreement of Lessor and Lessee or, if they cannot agree, then by an independent appraiser selected by Lessor and satisfactory to Lessee. The cost of such appraisal shall be paid equally by Lessor and Lessee. If, for any reason, the Lessee and Lessor can not agree on the Fair Rental Value within the notice period specified in Section 16.a, the term of the Lease shall be extended for continuous and consecutive three (3) month periods at the then existing Basic Rental with receipt of notice of termination required at least three (3) months prior to expiration.
    (c)     Upon notice, Lessor may substitute equipment of the same model and type for the Equipment, at Lessor's expense and in its sole discretion.

17.     PURCHASE OPTION:  Provided Lessee is not in default under this Master Lease and any Lease, Lessee may notify Lessor that it desires to purchase all or part of the Equipment on a Lease.  The notice shall be given at least three (3) months before the expiration of a Lease Term.  Lessor agrees to sell to Lessee, at the end of the Lease Term and upon terms and conditions as are acceptable to Lessor and Lessee, the Equipment or, at Lessor's sole option, equipment of the same model, type and condition which shall be installed at Lessor's expense at the same location as the Equipment.  The purchase price for such Equipment shall be its Fair Market Value, as hereinafter defined. "Fair Market Value" is defined as that purchase price that would be obtained in an arm's length



transaction as of the end of the Lease Term between informed and willing parties under no compulsion to buy or sell. If Lessor and Lessee cannot agree upon the purchase price, such amount shall be determined by an independent appraiser selected by Lessor and satisfactory to Lessee. The cost of such appraisal shall be paid equally by Lessor and Lessee. If, for any reason, the Lessee and Lessor can not agree on the Fair Market Value within the notice period specified in Section 16.a, the term of the Lease shall be extended for continuous and consecutive three (3) month periods at the then existing Basic Rental with receipt of notice of termination required at least three (3) months prior to expiration.

18.     GENERAL: (a) In any case where the consent or approval of Lessor, Lessee, and/or Secured Party is required to be obtained under this Master Lease, such consent or approval will not be unreasonably withheld. No such consent or approval shall be valid unless it shall be in writing.

        (b)     This Master Lease shall become binding when executed by Lessee and delivered to Lessor in Hanover County, Virginia. This Master Lease shall be governed in all respects by the laws of Commonwealth of Virginia. Lessee and Lessor agree that this Master Lease and the rights and remedies of Lessee, Lessor and any Secured Party shall be governed and enforced in accordance with the laws of the Commonwealth of Virginia and, for such purpose, Lessee and Lessor consent to the exclusive jurisdiction of the Circuit Court of Henrico County, Virginia for all purposes.

        (c)     All notices, instructions or consents which should or may be given hereunder shall be in writing and shall be deemed given and received upon the sooner of (i) the day on which delivered to such party, (ii) within two days after deposit in the United States Mail, postage prepaid, if sent by registered or certified mail, return receipt requested, or (iii) if sent by Federal Express or comparable overnight delivery service on the day after the day on which deposited with such carrier, addressed to the respective party at its respective address as set forth herein or to such other addresses as such party shall have designated by notice given pursuant to this subparagraph. To be effective, all such notices to Lessor shall be given at the same time and in the same manner to CCA Financial Services, LLC, 7275 Glen Forest Drive, Suite 100, Richmond, Virginia 23226, and to any Secured Party.

        (d)     This Master Lease sets forth in full the agreement between Lessor and Lessee. Any titles or captions contained herein are for convenience only, and shall not be deemed to be part of the context. This Master Lease may not be changed, or in any manner modified, except by further written agreement executed by Lessor and Lessee, and Secured Party where necessary; provided, however, that the Lessor and the Lessee agree that the Lessor may insert missing or correct information in this Master Lease and/or any Schedules including, without limitation, the correct legal name of the Lessee and information describing the Equipment. This Master Lease supersedes any and all prior understandings and agreements relating to the subject matter herein.

        (e)     Any provision of this Master Lease which is prohibited or unenforceable in any jurisdiction shall be as to such jurisdiction ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or enforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

        (f)     No omission or delay by Lessor or Secured Party at any time to enforce any right or remedy reserved on it or to require performance of any of the terms, covenants or provisions hereof by Lessee at any time designated, shall be a waiver of any such right or remedy to which Lessor or Secured Party is entitled, nor shall it in any way affect the right of Lessor or Secured Party to enforce such provisions thereafter.

        (g)     Lessee, upon execution of this Master Lease and thereafter upon execution of each Schedule, shall provide Lessor with a certificate of good standing or similar certificate issued by the state in which Lessee is incorporated or organized, and shall also provide such other documents as Lessor may reasonably request. Lessee further authorizes Lessor to file such financing statements describing the Equipment as the Lessor deems appropriate and, in alternative, Lessee agrees to provide such executed financing statements as Lessor may require. In the event that Lessee becomes party to a merger or consolidation or another party becomes the successor in interest in and to the obligations of this Master Lease or any Schedule thereto, Lessee shall provide Lessor with 30 days prior written notice thereof and shall provide Lessor with a certificate of good standing or similar certificate issued by the state of incorporation or organization of such successor in interest. Lessee further agrees to provide Lessor with 30 days advance written notice of any change of the state of its incorporation or organization or any change of its legal name. Lessee represents and warrants that it is duly incorporated or organized under the laws of the state of <u>Nevada</u> and that its exact legal name is ATNA Resources, Inc. as stated in the preamble of this Master Lease.

        (h)     During the term of this Master Lease, Lessee agrees to deliver to Lessor a copy of Lessee's annual audited financial statements and quarterly interim financial statements within a reasonable time after said statements are available.

        (i)     Lessee acknowledges that Lessor has appointed CCA Financial Services, LLC, with its principal office at 7275 Glen Forest Drive, Suite 100, Richmond, Virginia 23226, as its exclusive collection and servicing agent with respect to the collection of amounts due under this Agreement and to the performance of the obligations of Lessor hereunder. Amounts payable by Lessee to Lessor shall be made payable to "CCA Financial, LLC" and delivered to CCA Financial Services, LLC at P.O. Box 758760, Baltimore, MD 21275-8760 unless otherwise directed by Secured Party.



**IN WITNESS WHEREOF**, Lessor and Lessee have caused this Master Lease to be executed in their respective names and behalves and attested by their respective proper officers thereunto duly authorized.

Lessor:   **CCA FINANCIAL, LLC**

By:

Name:     Michael S. Stewart

Title:      E.V.P. of Marketing


Lessee:   **ATNA Resources, Inc.**

By:       *Rodney O. Gloss*

Name:     *Rodney O. Gloss*

Title:     *VP*



Equipment Schedule No. 01
Between
**ATNA Resources, Inc.**
(Lessee)
and
**CCA Financial, LLC**
(Lessor)

This Equipment Schedule, dated as of October 30, 2014, is issued pursuant to Master Lease Agreement No. 6743, between **CCA Financial, LLC** and **ATNA Resources, Inc.** (the "Master Lease"), dated as of October 30, 2014. Any term not otherwise defined herein shall have the meaning ascribed to it in the Master Lease.

1.   **EQUIPMENT SUBJECT TO THIS EQUIPMENT SCHEDULE**

Manufacturer

Location
Pinson Mine
6750 Getchell Mine Rd
Golconda, NV 89414

Description of Equipment
Lab Equipment

Serial Number

2.   **MONTHLY RENTAL PAYMENTS**

Initial Term

24 Months

Basic Rental

$7,503.46 per month in advance

Accepted and Agreed to by:

Sign: _____

**CCA Financial, LLC**

Name: _____
       Michael S. Stewart
       E.V.P. of Marketing

Title: _____

Sign: _____

**ATNA Resources, Inc.**

Name: _____
       (Printed Name Here)

Title: _____



**Master Lease Agreement No. 6743**          **Equipment Schedule No. 01**

### CERTIFICATE OF INSTALLATION AND ACCEPTANCE

Reference is made to Equipment Schedule No. 01, dated as of October 30, 2014, between **CCA Financial, LLC** as Lessor and **ATNA Resources, Inc.** as Lessee.  The terms used herein shall have the same meaning as such terms have in such Equipment Schedule.

The undersigned certifies that (a) the following Equipment has been (i) inspected by authorized representatives of Lessee, (ii) installed and placed in good working order, and (iii) accepted by Lessee for leasing under all provisions of the Lease; and (b) that Lessee is obligated to pay the rentals and all other sums provided for in the Lease with respect to the Equipment listed below:

<u>Description of Equipment</u>

1 Thermo AA w/auto sampler
4 Custom furnaces
2 custom hot plates
CS-230 Carbon and Sulfur Analyzer with auto feeder
1Multiwave 3000 microwave digestion system
1 Mettler xp6 Micro Balance, excluding cabinets and fixtures

2 TBH-550 Grieve truck ovens, 4 trucks, 24 trays, 2 fused disconnect switches
3 hoods, one acid scrubber, one dust scrubber , 4 sample prep hoods
2 jaw crushers, 2 pulverizers, 2 backup grinding sets, 1 crucible mixer, 2 pressure filters (Met Lab) Cress Furnace for cuppelation
Autoclave

*Equipment Location: Pinson Mine, 6750 Getchell Mine Rd, Golconda, NV 89414*

The Acceptance Date for the above Equipment is <u>November 13, 2014</u>.

Lessee:    ATNA Resources, Inc.
Sign:

Title:

**EXHIBIT B**
**Proposed Order (attached)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 15-22848 JGR** |
| | ) | |
| **Atna Resources Inc.,** *et al*. | ) | **Chapter 11** |
| | ) | |
| **Debtors.**[1] | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-22848** |

### ORDER GRANTING MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER REJECTING EQUIPMENT LEASES PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE

**THIS MATTER** comes before the Court on the *Motion of Debtors and Debtors in Possession for Entry of an Order Rejecting Equipment Leases Pursuant to Section 365(a) of the Bankruptcy Code* [Docket No. ___] (the "Motion")[2] filed by the Debtors. The Court, having reviewed the Motion and any responses or objections thereto, hereby

**FINDS** that the Equipment Leases are executory contracts, that rejection of the Equipment Leases is in the best interests of the Debtors' estates, and that the rejection of the Equipment Leases is an exercise of the Debtors' sound business judgment; and

**ORDERS** as follows:

1.     The Motion is GRANTED.

2.     The Equipment Leases listed in Exhibit B to the Motion are REJECTED effective as of December 31, 2015.

3.     The deadline to file a proof of claim to assert any damage claim arising from the rejection of a Lease shall be the later of: (a) the applicable bar date established by this Court's order at Docket No. 162 and (b) 30 calendar days from the date of entry of this Order.

4.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

---

[1] The debtors and debtors in possession and their respective cases numbers subject to this order are: Atna Resources Inc. (15-22848), Canyon Resources Corporation (15-22849), CR Briggs Corporation (15-22850), CR Montana Corporation (15-22851), CR Kendall Corporation (15-22852), Atna Resources Ltd. (15-22853) and Horizon Wyoming Uranium, Inc. (15-22854).

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings assigned in the Motion.

DATED this _____ day of _____, 2016.

BY THE COURT:

_____
U.S. Bankruptcy Judge