**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| In re: | Case No. 15-22848 JGR |
| Atna Resources Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | **Jointly Administered Under
Case No. 15-22848-JGR** |
|  | **Re: Docket Nos. 13, 36, 77 and 92** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL,
(III) GRANTING LIENS, INCLUDING PRIMING LIENS, AND SUPERPRIORITY
CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) GRANTING
RELATED RELIEF**

Upon consideration of the *Motion for Interim and Final Orders: (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing the Use Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 13] (the "DIP Motion"), dated November 18, 2015 (the "Petition Date"), of the debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of the Interim Order (as defined below) and, after notice and a hearing, this final order (this "Final Order"), pursuant to sections 105, 361, 362, 363, 364, 506, 507, and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2081-1, 4001-3 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of

---

[1] The debtors and debtors in possession and their respective case numbers subject to this order are: Atna Resources Inc. (15-22848), Canyon Resources Corporation (15-22849), CR Briggs Corporation (15-22850), CR Montana Corporation (15-22851), CR Kendall Corporation (15-22852), Atna Resources Ltd. (15-22853) and Horizon Wyoming Uranium, Inc. (15-22854).

the United States Bankruptcy Court for the District of Colorado (the "Local Rules"), that, among other things:

i.     authorizes Canyon Resources Corporation (the "Borrower") to obtain, and each of the other Debtors, except for CR Kendall Corporation (collectively, the "Guarantors", and the Borrower and Guarantors being referred to herein collectively as the "Obligors") to unconditionally guaranty, jointly and severally, the Borrower's obligations in respect of, senior secured priming and superpriority post-petition financing in a total amount of $4,000,000 (the "DIP Facility"), provided pursuant to the terms of (x) the *Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 92] (the "Interim Order") and this Final Order, (y) that certain Debtor-In-Possession Credit Agreement, dated as of November 23, 2015 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"), a true and correct copy of which is attached hereto as Exhibit B,[2] by and among the Borrower, the Guarantors and Waterton Precious Metals Fund II Cayman, LP, or such other affiliated entity designated by Waterton Precious Metals Fund II Cayman, LP, as lender under the DIP Credit Agreement (in such capacity, the "DIP Lender"), and (z) any and all other Credit Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents");

ii.    authorizes the use of the proceeds of the DIP Facility to, among other things, make payments, as permitted by the Approved Budget (as defined below), for operating expenses, general and ordinary purposes of the Debtors, and for other restructuring and administrative expenses, including budgeted professional fees, all subject to the conditions set forth in the final DIP Loan Documents and in this Final Order;

iii.   approves the terms of, and authorizes the Obligors to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Obligors to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Final Order;

iv.   grants to the DIP Lender, (x) the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which DIP Liens are senior to and prime any and all other liens and (y) pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all pre-petition and post-petition property of the Obligors' estates, now owned or hereafter acquired and

---

[2] Unless otherwise specified in this Final Order, all capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Credit Agreement.

the proceeds of each of the foregoing, including[3] any Obligor's rights under section 549 of the Bankruptcy Code and the proceeds thereof and the proceeds of Avoidance Actions (as defined below);

v.      authorizes the Obligors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the DIP Lender and the Pre-Petition Lender (as defined below) have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order, this Final Order or otherwise;

vi.     modifies the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

vii.    grants the Pre-Petition Lender (as defined below), as of the Petition Date and in accordance with the relative priorities set forth herein, the Adequate Protection Liens (as defined below) and the Adequate Protection Priority Claims (as defined below);

viii.   waives certain rights of the Debtors to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code; and

ix.     provides for the immediate effectiveness of this Final Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the DIP Motion, the *Supplemental Motion of Debtors and Debtors in Possession for Interim and Final Orders: (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 36], the DIP Credit Agreement, the other DIP Loan Documents, the *Declaration of Rodney D. Gloss in Support of First Day Pleadings*, the *Notice of Filing DIP Financing Credit Agreement and Revised Proposed Interim Order* [Docket No. 77], and the evidence submitted or proffered and the testimony adduced at the hearing before this Court on November 20, 2015 and November 23, 2015 (together, the "Interim

---

[3] As used herein, the words "including" or "include" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

Hearing") and at the hearing before this Court on January 14, 2016 (the "<u>Final Hearing</u>"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), and 4001(d), 6004(c) and 9014 and all applicable Local Rules, due and sufficient notice of the DIP Motion, the Interim Hearing, the entry of the Interim Order and the Final Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); the Interim Hearing having been held on November 20, 2015 and concluded on November 23, 2015; the Final Hearing have been held and concluded on January 14, 2016; this Court having considered all the pleadings, motions and other papers filed in connection therewith; this Court having overruled all unresolved objections to the relief requested in the DIP Motion; this Court having considered the record made by the Debtors at the Interim Hearing and at the Final Hearing; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Obligors' entry into the DIP Credit Agreement and the other DIP Loan Documents is a sound and prudent exercise of the Obligors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

       A.     **<u>Petition Date</u>**.  On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado (this "<u>Court</u>").   The Debtors have continued in the

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

B. **Appointment of Committee**.  On December 14, 2015, the Office of the United States Trustee for the District of Colorado (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

C. **Interim Order**.  Based on the DIP Motion, the Interim Hearing, and all relevant pleadings filed with this Court, this Court approved the Debtors' entry into and performance under the DIP Loan Documents on an interim basis as well as all other requested interim relief and entered the Interim Order on November 23, 2015.

D. **Jurisdiction and Venue**.  This Court has core jurisdiction over these Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

E. **Notice**.  The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Final Hearing and the relief requested in the DIP Motion was provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' consolidated list of top 30 unsecured creditors, (iii) counsel to the Pre-Petition Lender, (iv) counsel to the DIP Lender, (v) all other known lienholders, (vi)

all parties that, as of the filing of the DIP Motion, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and (vii) the other parties identified in the DIP Motion and the certificate of service therefor.  In addition, counsel for the Committee has had ample notice of the DIP Motion, the Interim Order, and the Final Hearing and sufficient opportunity to review the same.  Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rules 4001(b), (c) and (d), and the Local Rules, and no other notice need be provided for entry of this Final Order.

      F.       **Debtors' Stipulations Regarding the Pre-Petition Indebtedness**. Subject only to the rights of parties in interest that are specifically set forth in Paragraph 8 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (collectively, the "Debtors' Stipulations") as follows:

      (i)    *Pre-Petition Indebtedness*.  As of the Petition Date, pursuant to the Pre-Petition Credit Agreement, and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents" as defined in the Pre-Petition Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Pre-Petition Credit Agreement Documents")[5] Debtors Canyon Resources Corporation and Atna Resources Ltd., and each of the other Guarantors (as defined Pre-Petition Credit Agreement) (collectively the "Pre-Petition Obligors") was truly and justly indebted to the Pre-Petition Lender, either as borrower or guarantor, in the aggregate principal amount of $19,080,800, *plus* accrued and unpaid interest and any additional fees, costs and expenses as provided for in the Pre-Petition Credit Agreement Documents, without defense, counterclaim, reduction or offset of any kind.

      (ii)    The first priority liens and security interests granted to the Pre-Petition Lender in all of the Pre-Petition Obligors' assets other than the Non-Core Assets (as defined in the Pre-Petition Credit Agreement) and the Excluded Assets (as defined in the Security Agreement entered into in connection with the Pre-Petition Credit Agreement) (the "Pre-Petition Collateral" and the liens securing the Pre-Petition Collateral, the "Pre-Petition Liens") (a)

---

[5] All obligations of the Pre-Petition Obligors arising under the Pre-Petition Credit Agreement Documents are referred to herein as the "Pre-Petition Indebtedness."  Waterton Precious Metals Fund II Cayman, LP, in its capacity as provider of the Pre-Petition Indebtedness is referred to herein as the "Pre-Petition Lender."

are legal, valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Pre-Petition Lender for fair consideration and reasonably equivalent value, and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)     The obligations under the Pre-Petition Indebtedness constitute legal, valid, and binding obligations of the Pre-Petition Obligors, enforceable in accordance with the terms of the Pre-Petition Credit Agreement Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Pre-Petition Indebtedness exist, (y) no portion of the Pre-Petition Indebtedness or any payments made to the Pre-Petition Lender are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) each of the guarantees provided in the Pre-Petition Credit Agreement Documents shall continue in full force and effect to unconditionally guaranty the Pre-Petition Indebtedness notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Lender to the Debtors pursuant to the terms of this Final Order or the DIP Loan Documents.

G.     <u>Cash Collateral</u>.  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Pre-Petition Lender.

H.     **<u>Findings Regarding the DIP Facility</u>**.

(i)     <u>Need for Post-Petition Financing</u>.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of their businesses, to make payroll, to satisfy other working capital and operational needs, to complete the Debtors' marketing and sale process and to otherwise preserve the value of the Debtors' estates.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful reorganization and/or to otherwise preserve the value of the Debtors' estates.  If immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Final Order and the DIP Loan Documents, the Debtors and

their estates will incur immediate and irreparable harm.

(ii)      No Credit Available on More Favorable Terms.  The Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents and this Final Order.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Lender the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (as defined below), (b) allowing the DIP Lender to provide the loans and other financial accommodations under the DIP Facility on the terms set forth herein and in the DIP Loan Documents, and (c) granting to the Pre-Petition Lender the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Adequate Protection Liens and the Adequate Protection Priority Claims (all of the foregoing described in clauses (a), (b), and (c) above, collectively, the "DIP Protections").

I.      **DIP Financing and Consent of the Pre-Petition Lender**.  The DIP Lender and the Pre-Petition Lender are willing to provide financing to the Obligors and/or consent to the use of Cash Collateral by the Obligors, subject to (i) the entry of this Final Order, and (ii) the terms and conditions of the DIP Loan Documents; provided, however, that the consent of the Pre-Petition Lender is limited to the present DIP Facility and shall not be applicable to any other debtor in possession loan facility even if such debtor in possession loan facility contains economic terms which are substantially similar to the economic terms of the

DIP Facility.

J.          **Adequate Protection**.  The Pre-Petition Lender has agreed to permit the Obligors' use of the Pre-Petition Collateral, including the Cash Collateral, subject to the terms and conditions set forth in this Final Order.  In addition, the DIP Facility contemplated hereby provides for a priming of all liens on the Obligors' assets, including the Pre-Petition Liens on the Pre-Petition Obligors' assets, pursuant to section 364(d) of the Bankruptcy Code, by the DIP Liens granted herein in favor of the DIP Lender.  The Pre-Petition Lender is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to this Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, consistent with the Bankruptcy Code, including section 506(b) thereof, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are reasonable to protect the interests of the Pre-Petition Lender.

K.          **Section 552**.  In light of the subordination of its liens and claims to the DIP Liens, and the imposition of the Carve-Out, the Pre-Petition Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

L.          **Approved Budget**.  Attached hereto as <u>Exhibit A</u> is an Approved Budget (the "<u>Approved Budget</u>").  The Approved Budget is an integral part of this Final Order and has been relied upon by the DIP Lender and the Pre-Petition Lender in consenting to this Final Order, to provide the DIP Facility and to permit the use of the Cash Collateral.

M.        **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)        The terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Final Order, and the fees, expenses and other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(ii)        The DIP Facility was negotiated in good faith and at arms' length among the Obligors, the DIP Lender and the Pre-Petition Lender.

(iii)        Use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender and the Pre-Petition Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  The DIP Liens, DIP Superpriority Claims and other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

N.        **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Final Order, the Debtors' estates, their businesses and properties and their ability to successfully sell their assets or otherwise preserve the value of their estates will be immediately and irreparably harmed.  The Court concludes that immediate entry of this Final Order is therefore in the best interests of the Debtors' estates and creditors and will allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

**NOW, THEREFORE**, based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Lender and the

DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor:

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Final Order shall become effective immediately upon its entry.

2.     **DIP Loan Documents and DIP Protections**.

(a)     <u>Approval of DIP Loan Documents</u>.   The DIP Loan Documents are hereby approved on a final basis.  The Obligors are expressly and immediately authorized on a final basis to perform under the DIP Loan Documents and this Final Order, to incur the DIP Obligations[6] in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Loan Documents.  The Obligors are hereby authorized and directed to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including, without limitation, all professional fees, the fees under the DIP Credit Agreement, (including the

---

[6] For purposes of this Final Order, the term "<u>DIP Obligations</u>" shall mean all amounts and other obligations and liabilities owing by the respective Obligors under the DIP Credit Agreement, the other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement) and to the DIP Lender or the Pre-Petition Lender under this Final Order.

Structuring Fee), and disbursements arising under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect. Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid and binding obligations of the applicable Obligors enforceable against such Debtors in accordance with their terms. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. Each officer of an Obligor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Obligors.

(b)     <u>Authorization to Incur DIP Obligations and Use Cash Collateral</u>. To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Final Order until a Termination Event (as defined below), unless extended by written agreement of the DIP Lender and the Pre-Petition Lender, the Borrower is hereby authorized (x) to use Cash Collateral and (y) to borrow under the DIP Facility; <u>provided</u> that any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget. All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the Guarantors, as further provided in the DIP Loan Documents.

(c)     <u>Perfection in Cash</u>. Subject to the Carve-Out and other provisions of this Final Order, all financial institutions in which the Debtors' deposit accounts are located are authorized

and directed to comply with any request of the DIP Lender to turn over to the DIP Lender all funds therein without offset or deduction of any kind, and the Debtors are authorized and directed to enter into such blocked account agreements with cash dominion with the DIP Lender and such financial institutions as the DIP Lender may require.  Alternatively, the DIP Lender shall be entitled to enjoy the benefit of all control agreements to which the Pre-Petition Lender is a party without the need to enter into new blocked account agreements.

(d)      Approved Budget; Cash Flow Reporting.  The Borrower shall timely furnish the DIP Lender with each Weekly Actuals Report, Updated Budget, Approved Budget Variance Report and each other calculation and report as required by, and in accordance with, Section 10.1 of the DIP Credit Agreement.  The Borrower shall subsequently provide to the Committee a copy of each such Weekly Actuals Report, Updated Budget, Approved Budget Variance Report and each other calculation and report which the Borrower has provided to the Committee.

(e)      Interest, Fees, Costs and Expenses.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  In particular, all interest with respect to the DIP Obligations shall accrue as PIK interest, but shall only be payable, together with all fees (except for the Structuring Fee, which was paid on the Closing Date), costs, indemnities, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Lender) and other charges payable under the terms of the DIP Loan Documents on the Termination Date; provided, however, that the reasonable out-of-pocket legal and other professional fees and expenses of the DIP Lender shall be payable by the Debtors after five (5) business days notice to the Committee.  All such fees, costs,

13

indemnities, expenses and disbursements, whether incurred, paid or required to be paid pre-petition or post-petition and whether or not budgeted in the Approved Budget, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Lender and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents, and shall be non-refundable and not subject to challenge in any respect. All such unpaid fees, costs, expenses, indemnities and disbursements that are payable under the terms of the DIP Loan Documents shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Order. Notwithstanding the foregoing, any and all interest, fees, costs, and expenses incurred by the Pre-Petition Lender, in its capacity as such, or under the Pre-Petition Credit Agreement Documents that are required to be paid hereunder as adequate protection or otherwise are to be paid on the Termination Date.

(f)     Use of DIP Facility and Proceeds of DIP Collateral. The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds solely in accordance with this Final Order and the DIP Loan Documents, and for the specific purposes, and at the specific time periods, set forth in the Approved Budget, subject to variances permitted in the DIP Credit Agreement (and in the case of the costs and expenses of the DIP Lender, in accordance with the DIP Loan Documents and this Final Order without being limited by the Approved Budget). Without limiting the foregoing, the Debtors shall not be permitted to make any payments (from the DIP Collateral, the Loan or otherwise) on account of any pre-petition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except (a) with respect to the Pre-Petition Indebtedness as set

forth in this Final Order; (b) as provided in the "first day orders" and as expressly agreed to by the DIP Lender; or (c) as expressly provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Lender prior to such motion, order, or request for such relief being filed.

(g)     <u>DIP Liens</u>.  As security for the DIP Obligations, effective as of the Petition Date, the following security interests and liens, which shall immediately and without any further action by any Person be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Final Order, are hereby granted on a final basis by each Obligor to the DIP Lender (all such security interests and liens granted to the DIP Lender pursuant to this Final Order and the DIP Loan Documents, the "<u>DIP Liens</u>"), on all of its right, title and interest in, to and under all property and assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of such Obligor, whether owned or consigned by or to, or leased from or to, such Obligor, and regardless of where located, including, without limitation, all Collateral (as defined in Section 7.1 of the DIP Credit Agreement), all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing (provided, however, that the DIP Lender's lien on the proceeds of Commercial Tort Claims shall be capped at sixty percent (60%) of such proceeds, net of costs, with the remaining forty percent (40%) designated and carved out for the sole benefit of the unsecured creditors of the Debtors' estates), in each case wherever located (all of the foregoing collateral collectively referred to as the "<u>DIP Collateral</u>"):

(I)     pursuant to section 364(c)(2) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable, and non-avoidable first

priority lien on all unencumbered DIP Collateral, including sixty percent (60%) of the proceeds (net of costs) of the Obligors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law, except for such claims and causes of action against the Pre-Petition Lender and its Affiliates (collectively, the "Avoidance Actions") with the remaining forty percent (40%) designated and carved out for the sole benefit of the unsecured creditors of the Debtors' estates, whether received by judgment, settlement, or otherwise;

(II)    pursuant to section 364(d)(1) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable and non-avoidable first priority, senior priming lien on all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall, except for the Carve-Out, be senior to the Adequate Protection Liens and (y) shall, except for the Carve-Out, be senior to and prime any and all valid, perfected, enforceable and non-avoidable pre-petition and post-petition liens, tax liens, mechanics' liens, or other non-consensual or consensual liens in existence as of the Petition Date and properly perfected prior to the Petition Date (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens") and shall be subject only to the Carve-Out; provided, however, that the Primed Liens shall not include any valid, perfected, enforceable and non-avoidable liens on the Rigid Haul Truck, the Wheel Loader and the Second Rigid Haul Truck (each as defined in the *Limited Objection to Debtors' Motion for an Order Approving DIP Financing on a Final Basis* [Docket No. 231] (the "Komatsu Objection")) held by Komatsu Financial Limited Partnership solely to the extent such liens were senior to the Pre-Petition Liens prior to the Petition Date (if any, the "Non-Primed Komatsu Liens"); provided, further, however, that for the avoidance of doubt, the DIP Lender shall have a perfected, binding, continuing, enforceable, and non-avoidable lien, pursuant to section 364(c)(3) of the Bankruptcy Code, upon the Rigid Haul Truck, the Wheel Loader and the Second Rigid Haul Truck (each as defined in the Komatsu Objection) that is subject solely to the Non-Primed Komatsu Liens, if any, which DIP Lien shall be junior only to the Non-Primed Komatsu Liens, if any, and the Carve-Out.

(h)    Superpriority Administrative Claim Status.  In addition to the DIP Liens granted herein, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Priority Claims (as defined below)), priority claims

and other unsecured claims, and all other claims against the Obligors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP Superpriority Claims").  The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Obligor on a joint and several basis, and shall be payable from and have recourse to all pre-petition and post-petition property of the Obligors and all proceeds thereof, including the proceeds of Avoidance Actions.  Other than as expressly provided in the DIP Credit Agreement and/or this Final Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Lender arising under the DIP Loan Documents and/or this Final Order.

(i)     Limited Carve-Out from DIP Liens and DIP Superpriority Claims. Notwithstanding anything in this Final Order to the contrary: (i) the DIP Lien and DIP Superpriority Claim shall not apply to up to the first $200,000 in aggregate proceeds of automobiles, vans, trucks, motorcycles, trailers and titled farm vehicles (as such terms are used in question 47 to *Schedule A/B: Assets – Real Property*) on which the Pre-Petition Lender did not

have perfected Pre-Petition Liens, which amount is carved out for the sole benefit of the unsecured creditors of the Debtors' estates; and (ii) if a Professional (as defined below) receives a payment prior to a Termination Event in accordance with the Approved Budget, the Bankruptcy Code or any interim compensation procedures approved by the Bankruptcy Court, and such payment is later subject to disgorgement for any reason, then the DIP Lien and DIP Superpriority Claim shall not attach to such disgorged amount.

(j)     Priority of DIP Liens and DIP Superpriority Claims.  The DIP Liens and the DIP Superpriority Claims: (A) shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, and (C) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the Chapter 11 Cases.

3.     **Adequate Protection for the Pre-Petition Lender**.  In consideration for the use of the Pre-Petition Collateral (including Cash Collateral), the Pre-Petition Lender shall receive the following adequate protection (collectively referred to as the "Adequate Protection"):

(a)     Adequate Protection Liens.  Only to the extent there is an actual diminution in value of the Pre-Petition Lender's interests in the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date, whether or not resulting from the use, sale, or lease

18

by the Debtors of the applicable Pre-Petition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the imposition of the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (a "Diminution in Pre-Petition Collateral Value"), the Pre-Petition Lender is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement security interests in and liens and mortgages upon all of the Pre-Petition Collateral and security interest in and liens and mortgages upon all of the DIP Collateral, including the proceeds of Avoidance Actions, if any, but not the Avoidance Actions themselves (such adequate protection Liens, the "Adequate Protection Liens"), which Adequate Protection Liens on such Pre-Petition Collateral shall junior and subordinate only to the DIP Liens and subject to the Carve-Out.

(b)      Adequate Protection Priority Claims.  Only to the extent of a Diminution in Pre-Petition Collateral Value, the Pre-Petition Lender is hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Adequate Protection Priority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority over other unsecured claims against the Debtors which are Pre-Petition Obligors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 , 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and subject to the Carve-Out, and payable from and having recourse to all pre-petition and post-petition property of the Debtors which are Pre-Petition Obligors and all proceeds thereof (including the proceeds of Avoidance Actions); provided, however, that the

19

Pre-Petition Lender shall not receive or retain any payments, property, or other amounts in respect of the Adequate Protection Priority Claims unless and until all DIP Obligations have been paid in full.  Subject to the relative priorities set forth above, the Adequate Protection Priority Claims against each Debtor which is a Pre-Petition Obligor shall be allowed and enforceable against each such Debtor and its estate on a joint and several basis.

(c)   <u>Priority of Adequate Protection Liens and Adequate Protection Priority Claims</u>. The Adequate Protection Liens and the Adequate Protection Priority Claims (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code, or section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, and (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.  The Adequate Protection Liens shall be junior to the DIP Liens and the Pre-Petition Lender's liens arising under any Pre-Petition Credit Agreement Documents, senior to any other liens, including, without limitation, to any other adequate protection replacement liens, and subject to the Carve-Out.

(d)   <u>Interest and Professional Fees</u>.  Without limiting any rights of the Pre-Petition Lender under section 506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement, for obtaining the Pre-Petition Lender's consent to the entry of this Final Order and the Debtors' consensual use of Cash Collateral as provided herein and as

20

additional adequate protection, (i) the Pre-Petition Lender's reasonable fees, costs, expenses, and charges (including the reasonable fees, costs, and expenses of counsel and financial advisors for the Pre-Petition Lender) to the extent, and at the times, payable under the Pre-Petition Credit Agreement Documents, including any unpaid fees, costs and expenses accrued prior to the Petition Date, and (ii) all of the interest accruing under the Pre-Petition Credit Agreement Documents at the default rate(s) set forth therein, in the case of each of sub-clauses (i) and (ii) above, whether or not budgeted in the Approved Budget, and without further notice, motion, or application to, order of, or hearing before, this Court, shall accrue during these Chapter 11 Cases and shall be deemed to be included in the Pre-Petition Indebtedness; provided, however, that any payment, accrual or accrual of post-petition interest or reimbursement of post-petition fees, costs and expenses under the Pre-Petition Credit Agreement Documents shall be reapplied to reduce the principal amount of the Pre-Petition Indebtedness to the extent this Court determines in a final, non-appealable order that the Pre-Petition Lender is not entitled to such payment, accrual or reimbursement pursuant to section 506(b) of the Bankruptcy Code.  The interest and fees that are the subject of this subsection (d) are to be paid only on the Termination Date (except for the Structuring Fee, which was paid on the Closing Date).

(e)     Right to Seek Additional Adequate Protection.   This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Pre-Petition Lender to seek additional or alternative forms of adequate protection at any time; provided that any such additional or alternative adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under this Final Order and the DIP Loan Documents.

4.     **Small Mine Development LLC and Cashman Equipment Company**.

(a)  Replacement Liens for Small Mine Development LLC and Cashman Equipment Company.  Small Mine Development LLC ("Small Mine") and Cashman Equipment Company ("Cashman") purport to hold valid and perfected mechanic's liens against certain of the Pre-Petition Collateral and/or DIP Collateral.  Nothing contained in this Final Order shall constitute or be deemed to constitute a finding that any such mechanic's liens are valid and enforceable or as to the amount, nature, or priority, of such purported liens (all parties reserving their rights with respect thereto).  As adequate protection of the purported liens of Small Mine and Cashman, whether or not an objection to the entry of this Final Order was filed, Small Mine and Cashman are hereby granted replacement liens, subject in all respects to the Carve-Out, in the same property in which they are found to have an interest pursuant to a final order of this Court (or any other court of competent jurisdiction) not subject to appeal and to the same extent that such mechanic's liens may be determined to exist and only to the extent necessary to protect Small Mine and Cashman from the diminution in value of their purported interests.

(b)  Relative Priority of Small Mine and Cashman Adequate Protection.  The adequate protection liens granted to Small Mine and Cashman shall rank in the same relative priority to the Adequate Protection Liens granted to the Pre-Petition Lender as the mechanics' liens purportedly held by Small Mine and Cashman rank in relation to the Pre-Petition Liens, as such priority is determined by a final order of this Court (or any other court of competent jurisdiction) not subject to appeal.

(c)  The failure to file an adversary proceeding by Small Mine or Cashman within seventy-five (75) days of the Petition Date shall not bar Small Mine or Cashman from later asserting by way of an adversary proceeding or otherwise that it is entitled to priority as a mechanic's lien claimant over the Pre-Petition Liens.

22

5.        **Automatic Post-Petition Lien Perfection.**  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction (including, without limitation, the laws of the States of Nevada (including, without limitation NRS Chapter 107), California (including, without limitation, chapter 6 of the California General Code) and Montana, ((including, without limitation, title 71 of the Montana Code)), or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender or the Pre-Petition Lender to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date.  The applicable Debtors shall execute and deliver to the DIP Lender all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto.  Without limiting the foregoing, the DIP Lender may, in its discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event,

23

the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Final Order.  For the avoidance of doubt, the DIP Lender shall be entitled to enjoy the benefit of all financing statements, deeds of trust, mortgages, or other instruments or documents that may otherwise be required under the law of any jurisdiction to which the Pre-Petition Lender is a party without the need to enter into new financing statements, deeds of trust, mortgages, or other instruments or documents that may otherwise be required under the law of any jurisdiction.

6. **Automatic Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and/or modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender, under the DIP Loan Documents, the DIP Facility, and this Final Order, (ii) authorize the DIP Lender and the Pre-Petition Lender to retain and apply payments made in accordance with the DIP Loan Documents and the Pre-Petition Credit Agreement Documents, (iii) to permit each of the DIP Lender and the Pre-Petition Lender to perform any act authorized under this Final Order and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order and the DIP Loan Documents.

7. **Release of Claims**.  Subject only to the rights of parties in interest that are specifically set forth in Paragraph 8 below, the releases provided in Section 7.13 of the DIP Credit Agreement are expressly incorporated herein by reference and are effective as of the date of entry of this Final Order.

8. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' Stipulations shall be binding upon the Debtors and their estates in all

circumstances.  Nothing in this Final Order or the DIP Loan Documents, including, without limitation, Section 7.13 of the DIP Credit Agreement, shall prejudice whatever rights the Committee, any other official committee(s) or any other party in interest (other than the Debtors) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgages, security interests and liens of the Pre-Petition Lender in and to the Pre-Petition Collateral or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Indebtedness, or (b) to bring suit against the Pre-Petition Lender in connection with or related to the Pre-Petition Indebtedness, or the actions or inactions of the Pre-Petition Lender arising out of or related to the Pre-Petition Indebtedness; provided, however, that, unless any official committee(s) or any other party in interest obtains the requisite standing to commence (for the avoidance of doubt, this Final Order hereby grants the Committee the requisite standing), and commences, a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Pre-Petition Lender in the nature of a setoff, counterclaim or defense to the Pre-Petition Indebtedness (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Lender), by the later of (a) with respect to the Committee, seventy-five (75) calendar days following the appointment of the Committee, or (b) with respect to any other parties in interest with requisite standing other than the Debtors or the Committee, seventy-five (75) calendar days following entry of the Interim Order (collectively, (a) and (b) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as

the "Challenge Period Termination Date"),[7] upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, the Committee, any other official committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and all of the obligations under the Pre-Petition Credit Agreement Documents shall be allowed secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the findings herein shall nonetheless remain binding and preclusive on the Committee, any other official committee and on any other person or entity, except to the extent that such assertions were expressly challenged in such objection or complaint.  In the event of a timely and successful challenge, this Court shall fashion the appropriate remedy with respect to the Pre-Petition Lender after hearing from all parties.

9.      **Carve-Out**.  Subject to the terms and conditions contained in this paragraph, and notwithstanding any other provision in this Final Order to the contrary, each of the DIP Liens, the DIP Superpriority Claims, the Pre-Petition Liens, the Pre-Petition Indebtedness, the Adequate Protection Liens, the Adequate Protection Priority Claims and all other DIP Obligations shall be subject to payment of the Carve-Out in accordance with the terms of this Final Order:

(a)      Carve-Out.  For purposes of this Final Order, "Carve-Out" means the sum of (i) the aggregate amount of any reasonable and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Date by the professionals retained by the Debtors or any professionals retained by the Committee (collectively, the "Professionals") to the extent allowed

---

[7] If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected.

26

by an order of the Bankruptcy Court and in compliance with the Approved Budget, plus (ii) those reasonable fees, costs and expenses incurred by Professionals after the Carve-Out Date and subsequently allowed by order of the Bankruptcy Court and in compliance with the Approved Budget, plus (iii) fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930, plus (iv) fees and expenses of up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; provided that (x) from the date hereof through and including the date that is seventy-five (75) days after the Petition Date (the "Initial Carve-Out Date"), the amounts described in items (i) and (ii) of this paragraph shall not exceed $700,000 in the aggregate (the "Initial Carve-Out Cap"), (y) after the Initial Carve-Out Date, the amounts described in items (i) and (ii) of this paragraph shall not exceed $400,000 in the aggregate (the "Final Carve-Out Cap", together with the Initial Carve-Out Cap, the "Carve-Out Caps") and (z) following the Carve-Out Date any amounts paid to Professionals by any means will reduce the respective Carve-Out Caps on a dollar-for-dollar basis; provided, further that in no event shall more than $50,000 of the Carve-Out be utilized to challenge or prevent the DIP Lender's exercise of any and all rights and remedies available to it under the DIP Credit Agreement or applicable law upon the occurrence of a Termination Event.

(b)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  Neither of the DIP Lender or the Pre-Petition Lender shall be responsible for the direct payment or reimbursement of any fees, costs, expenses or disbursements of any of the Professionals.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Professionals, the Committee, any other official or unofficial committee(s) in these Chapter 11 Cases or any Successor Cases or shall affect the right of the DIP Lender or the Pre-Petition Lender to the allowance and payment of such fees.

27

10.     **Waiver of 506(c) Claims/Marshalling**.  No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Pre-Petition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender or the Pre-Petition Lender, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Pre-Petition Lender.  In no event shall the DIP Lender or the Pre-Petition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral, as applicable.

11.     **After-Acquired Property**.  Except as otherwise expressly provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or a valid, enforceable and unavoidable lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

12.     **Protection of DIP Lender's and the Pre-Petition Lender's Rights**.  Unless the DIP Lender and the Pre-Petition Lender have provided their prior written consent, or all DIP Obligations and obligations under the Pre-Petition Credit Agreement Documents have been paid in full, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any

28

order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Pre-Petition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Pre-Petition Liens, the Adequate Protection Liens, the Adequate Protection Priority Claims and/or the other DIP Protections; (ii) the use of Cash Collateral for any purpose other than to pay amounts set forth in the Approved Budget or otherwise permitted under the DIP Loan Documents, the DIP Obligations and the obligations under the Pre-Petition Credit Agreement Documents, or as otherwise permitted in the DIP Loan Documents and this Final Order, or (iii) any modification of either of the DIP Lender's or the Pre-Petition Lender's rights under this Final Order, the DIP Loan Documents or the Pre-Petition Credit Agreement Documents.

13. **Cash Collection and Borrower's Account**. The proceeds of the DIP Facility, and all collections and proceeds of any DIP Collateral, Pre-Petition Collateral, or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in (i) the Borrower's Account or (ii) in one of the accounts identified and authorized in the Cash Management Order. No funds shall be disbursed from the Borrower's Account or any such other account other than in accordance with the DIP Credit Agreement and the Approved Budget. Upon an Event of Default, no amounts (other than the Carve-Out) shall be disbursed from the Borrower's Account or such other accounts. All amounts in the Borrower's Account and such other accounts shall remain as collateral for the DIP Facility, and shall not be subject to any liens, including in connection with any Adequate

29

Protection Liens.  Upon the direction of the DIP Lender, at any time after the occurrence of a Termination Event, all proceeds in the Borrower's Account or such other accounts shall be remitted to the DIP Lender for application to the DIP Obligations until payment in full, and then to the Pre-Petition Lender for application to the Pre-Petition Indebtedness (except to the extent such proceeds are not Pre-Petition Collateral or proceeds of Pre-Petition Collateral) until payment in full, and the DIP Lender and the Pre-Petition Lender shall be entitled to take all action that is necessary or appropriate to effectuate the foregoing.  Unless otherwise agreed to in writing by the DIP Lender, the Debtors shall maintain no accounts except those identified in the Cash Management Order.  The Debtors and the financial institutions where the bank accounts authorized in the Cash Management Order are maintained are authorized and directed to remit funds in such accounts upon receipt of any direction to that effect from the DIP Lender or, following payment in full of the DIP Obligations, the Pre-Petition Lender.

14. **Disposition of DIP Collateral; Credit Bid**.

(a)      Unless the DIP Obligations and the obligations under the Pre-Petition Indebtedness are paid in full upon the closing of a sale or other disposition of the DIP Collateral or the Pre-Petition Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any portion of the Pre-Petition Collateral (or enter into any binding agreement to do so) without the prior written consent of the DIP Lender and the Pre-Petition Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by either of the DIP Lender or the Pre-Petition Lender, or any order of this Court), except as permitted in the DIP Loan Documents and/or the Pre-Petition Credit Agreement Documents, as applicable, and this Final Order.  Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or

other disposition of any DIP Collateral shall be remitted to the DIP Lender for application to repayment of the DIP Obligations, and then for application to repayment of any remaining Pre-Petition Indebtedness, in each case, in accordance with the terms of this Final Order, the DIP Loan Documents and/ or the Pre-Petition Credit Agreement Documents, as the case may be.

(b)     The DIP Lender (or one or more of its designees or affiliates to which the DIP Obligations have been assigned) shall have the unqualified right to credit bid any amount up to the full amount of any DIP Obligations in any sale of any or all of the DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) section 725 of the Bankruptcy Code.  The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the DIP Collateral that does not include an unqualified right to credit bid any amount up to the full amount of the DIP Obligations would mean that the DIP Lender will not receive the indubitable equivalent of its claims and interests.

(c)     Subject the applicable provisions of the Bankruptcy Code, Paragraphs 4(c) and 8 hereof and the right of any party with requisite standing to seek relief limiting the Pre-Petition Lender's right to credit bid thereunder, the Pre-Petition Lender (or one or more of its designees, affiliates or assignees) shall have the unqualified right to credit bid any amount up to the full amount of any unpaid Pre-Petition Indebtedness in any sale of any or all of the Pre-Petition Collateral (or any DIP Collateral subject to any Adequate Protection Liens) under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) section 725 of the Bankruptcy Code.  The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Pre-Petition Collateral (or any DIP Collateral subject to any Adequate Protection Liens)

31

that does not include an unqualified right to credit bid any amount up to the full amount of any unpaid Pre-Petition Indebtedness would mean that the Pre-Petition Lender will not receive the indubitable equivalent of its claims and interests.

(d)      In the event of the sale of any or all of the DIP Collateral, the DIP Lender shall be given the opportunity to submit a bid as "stalking horse bidder" with a credit bid of any or all (at the DIP Lender's discretion) unpaid amounts under the DIP Facility and any unpaid Pre-Petition Indebtedness serving as the "stalking horse bid", subject to terms and conditions to be mutually agreed by the DIP Lender and Debtors.  The Debtors will consider in good faith any stalking horse bid proposed by the DIP Lender but the Debtors shall not have any commitment to accept such bid and may designate another party to serve as a stalking horse bidder for any and all assets provided such other party submits a bid that provides for the payment in full in cash of any unpaid amounts under the DIP Facility and any unpaid Pre-Petition Indebtedness and otherwise is higher and better than a bid submitted by the DIP Lender.  Any procedures for the sale of any or all of the Debtors' assets (i) shall be in a form as approved by the DIP Lender, which approval shall not be unreasonably withheld, prior to their filing and (ii) shall seek entry of an order of this Court providing that the DIP Lender may credit bid up to the entirety of the amounts due in connection with the DIP Facility and any unpaid Pre-Petition Indebtedness.  Notwithstanding anything in the DIP Credit Agreement to the contrary, the DIP Lender shall provide the Committee with seven (7) Business Days notice prior to declaring an event of default on account of the Debtors filing procedures for the sale of any or all of the Debtors' assets in a form which has not been approved by the DIP Lender.

15.    **Termination; Rights and Remedies Upon Termination Event**.

(a)     The DIP Facility shall terminate the earliest of (i) the Maturity Date; (ii) the acceleration of all or any portion of the DIP Obligations; (iii) fifty-five (55) days after the entry of the Interim Order, unless this Final Order shall have been entered and become effective prior thereto; (iv) the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Lender; (v) the dismissal of any of these Chapter 11 Cases unless otherwise consented to in writing by the DIP Lender; (vi) the effective date of any Debtor's plan of reorganization confirmed in these Chapter 11 Cases that provides for the payment in full in cash of all the DIP Obligations; (vii) the closing of a sale of substantially all the assets of the Debtors, (viii) the filing of a plan of reorganization in these Chapter 11 Cases by any party other than the Debtors without the consent of the DIP Lender; (ix) the closing of a sale of substantially all the DIP Collateral that is consented to by the DIP Lender or that provides for the payment in full in cash on the date of such closing of all the DIP Obligations; and (x) the Debtors seek or propose to sell all or substantially all the assets of the Debtors and such sale does not or cannot reasonably be expected to provide for payment in full of all the DIP Obligations without the consent of the DIP Lender (such date of termination, the "Termination Date").  Furthermore, the occurrence of an "Event of Default" under the DIP Credit Agreement (one event of which is the occurrence of the Termination Date), as set forth therein, or any other material breach, default or other violation by any of the Debtors of the terms and provisions of this Final Order shall constitute a termination event under this Final Order and the DIP Loan Documents (each, a "Termination Event") unless waived in writing by the DIP Lender.  Upon the occurrence of a Termination Event, but subject to the Notice Period required by Section 11.2 of the DIP Credit Agreement, any automatic stay otherwise applicable to the DIP Lender is hereby modified, without requiring prior notice to or authorization of this Court, to the

extent necessary to permit the DIP Lender to exercise any and all rights and remedies available to it under the DIP Credit Agreement and applicable law.

(b)      Upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraph 15(a) hereof, the Pre-Petition Lender shall have relief from the automatic stay to the same extent as the DIP Lender, and without further notice, hearing, motion, order or other action of any kind, to foreclose on, or otherwise enforce and realize on its Pre-Petition Liens and the Adequate Protection Liens or otherwise exercise remedies against the DIP Collateral or Pre-Petition Collateral permitted by this Final Order, the Pre-Petition Credit Agreement Documents and/or applicable non-bankruptcy law; provided, however, that any such foreclosure, enforcement or exercise of remedies by the Pre-Petition Lender shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Lender of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Lender.

(c)      Subject to the provisions of Paragraph 8 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Lender or the Pre-Petition Lender shall be turned over first to the DIP Lender for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until payment in full of all of the DIP Obligations and then to the Pre-Petition Lender for application to the obligations under the Pre-Petition Credit Agreement Documents.

16.      **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Pre-Petition Collateral, or any portion of the Carve-Out may be used by (a) any Debtor, the Committee, any other official committee(s), or trustee or other estate representative appointed in these Chapter 11

Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of the Committee) to prosecute any challenge (including any litigation or other action) in connection with the value of the Pre-Petition Collateral or the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, the Committee, any other official committee(s), or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of the Committee) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender, or to seek any modification to the Interim Order or this Final Order not approved by the DIP Lender and, to the extent such modification would affect the rights of the Pre-Petition Lender, the Pre-Petition Lender; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Lender, the Pre-Petition Lender, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including (A) any challenges raised during the Challenge Period and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the obligations under

35

the Pre-Petition Credit Agreement Documents, or the validity, extent, and priority of the DIP Liens, the Pre-Petition Liens or the Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Pre-Petition Liens, the Adequate Protection Liens, or the other Adequate Protection; (D) any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Lender's or the Pre-Petition Lender's assertion, enforcement, or realization on the Cash Collateral, the DIP Collateral or the Pre-Petition Collateral in accordance with the DIP Loan Documents or the Pre-Petition Credit Agreement Documents, as applicable, or this Final Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender or the Pre-Petition Lender hereunder or under the DIP Loan Documents or the Pre-Petition Credit Agreement Documents, as applicable, or any payments made thereunder or in respect thereof; provided, however, up to $25,000 in the aggregate of the Carve-Out, any DIP Collateral, any Pre-Petition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Committee to investigate (but not to prosecute) the claims and/or liens of the Pre-Petition Lender under the Pre-Petition Credit Agreement Documents (but not the claims and/or Liens of the DIP Lender) so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Pre-Petition Lender) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Lender and the Pre-Petition Lender; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Pre-Petition Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Lender and the Pre-Petition Lender.

17.     **Proofs of Claim**.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the DIP Lender and the Pre-Petition Lender will not be required (but are authorized) to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein or in the Interim Order.

18.     **Preservation of Rights Granted Under this Final Order**.

(a)     <u>No Non-Consensual Modification or Extension of Final Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Final Order (including through any chapter 11 plan of reorganization) without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.  In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or lien, claim, priority or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Lender and the Pre-Petition Lender shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections (including the Adequate Protection) incurred or

granted by the Debtors prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the original provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order), and the DIP Lender and the Pre-Petition Lender shall be entitled to all of the DIP Protections (including the Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Final Order, or the DIP Loan Documents.

(b)     <u>Survival of Final Order</u>.  The provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections (including the Adequate Protection), and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender or the Pre-Petition Lender, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Chapter 11 Case or Successor Case, converting any Chapter 11 Case to a case under chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases or any Successor Case in this Court, or terminating the joint administration of these Chapter 11 Cases or any Successor Case or by any other act or omission.  The terms and provisions of this Final Order, including all of the DIP Protections (including the Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender or the Pre-Petition Lender, respectively, shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such

DIP Protections (including the Adequate Protection), and such other rights, remedies, Liens priorities, privileges, protections and benefits, shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases and after dismissal of any thereof, and shall maintain their respective priorities as provided by this Final Order.  The DIP Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan of reorganization, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19.   **Insurance Policies**.  The DIP Lender and the Pre-Petition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral, and the Debtors shall take such actions as are reasonably requested by the DIP Lender or the Pre-Petition Lender from time to time to evidence or effectuate the foregoing.

20.   **Other Rights and Obligations**.

(a)   Expenses.  As provided in the DIP Loan Documents (and without limiting the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable expenses incurred by the DIP Lender (including the reasonable fees and disbursements of Lender Professionals) in connection with the preparation, execution, delivery, and administration of the DIP Loan Documents, the Interim Order, this Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)   Notice of Professional Fees.  Professionals for the DIP Lender (including professionals engaged by counsel to the DIP Lender) (collectively, the "Lender Professionals")

shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to this Court, U.S. Trustee, any Committee or any other party in interest.

(c)     <u>Binding Effect</u>.  The provisions of this Final Order, including all findings herein, subject to the rights set forth in paragraph 8 hereof, and the DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Case or Successor Case, including the DIP Lender, the Pre-Petition Lender, the Committee, any other appointed committee(s), and the Debtors and their respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors); <u>provided</u>, <u>however</u>, that the DIP Lender and the Pre-Petition Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Chapter 11 Case or Successor Case.

(d)     <u>No Waiver</u>.  The failure of the DIP Lender or the Pre-Petition Lender to seek relief or otherwise exercise their rights and remedies under this Final Order, the Pre-Petition Credit Agreement Documents, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the DIP Lender and the Pre-Petition Lender under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of these Chapter 11 Cases or any

Successor Cases to cases under chapter 7, dismissal of these Chapter 11 Cases or any Successor Cases, or the appointment of a trustee or examiner in these Chapter 11 Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Pre-Petition Lender.

(e)     <u>No Third Party Rights</u>.  Except as explicitly provided for herein or in any DIP Loan Document, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or  direct, indirect, or incidental beneficiary.

(f)     <u>Amendments</u>.  The Debtors and the DIP Lender are authorized and empowered, without further notice and hearing or approval of this Court, to make any non-material modifications to the DIP Loan Documents, in accordance with Section 12.1 of the DIP Credit Agreement.

(g)     <u>Inconsistency</u>.   In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms or conditions of this Final Order and the terms or conditions of any other order entered by this Court in the nature of a "first day order", the provisions of this Final Order shall govern and control.

(h)     <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  Notwithstanding Bankruptcy

Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(i)      <u>Reservation of Rights</u>.  Nothing in this Final Order shall be deemed to constitute the consent of the DIP Lender or the Pre-Petition Lender, and each of the foregoing expressly reserve the right to object, to entry of any order of the Bankruptcy Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to pay in full the DIP Obligations, the Pre-Petition Indebtedness and the Adequate Protection Priority Claims and all of the foregoing are paid in full on the closing date of such sale.

(j)      <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Final Order.

21.      **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated:  January 14, 2016
        Denver, Colorado

_____
HONORABLE JOSEPH G. ROSANIA, JR.
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**Approved Budget**

# **EXHIBIT B**

**DIP Credit Agreement**