**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| ------------------------------------------------- x | | |
| In re: | : | **Case No. 15-22848 JGR** |
| | : | |
| **Atna Resources Inc.,** *et al.*[1] | : | **Chapter 11** |
| | : | |
| | : | **Jointly Administered Under** |
| Debtors. | : | **Case No.  15-22848** |
| | : | |
| ------------------------------------------------- x | | |

---

**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

---

**SQUIRE PATTON BOGGS (US) LLP**

Stephen D. Lerner
221 E. Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201

-and-

Nava Hazan
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

**SQUIRE PATTON BOGGS (US) LLP**

Aaron A. Boschee (Colorado # 38675)
1801 California Street, Suite 4900
Denver, Colorado 80202
Telephone: (303) 830-1776
Facsimile: (302)  896-9239

*Counsel for the Debtors and Debtors in Possession*

Dated:   October [__], 2016

---

[1] The debtors and debtors in possession and their respective case numbers are: Atna Resources Inc. (15-22848); Canyon Resources Corporation (15-22849); CR Briggs Corporation (15-22850); CR Montana Corporation (15-22851); CR Kendall Corporation (15-22852); Atna Resources Ltd. (15-22853); Horizon Wyoming Uranium, Inc. (15-22854).

**TABLE OF CONTENTS**

Page

ARTICLE I     DEFINED TERMS AND RULES OF INTERPRETATION ................................................... 1

    A.    Defined Terms ..................................................................................... 1

    B.    Rules of Interpretation ........................................................................ 9

    C.    Exhibits ............................................................................................ 9

ARTICLE II     ADMINISTRATIVE AND PRIORITY CLAIMS ................................................ 9

    A.    Administrative Claims ........................................................................ 9

    B.    Priority Tax Claims .......................................................................... 10

ARTICLE III     CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .......... 10

    A.    Summary .......................................................................................... 10

    B.    Classification and Treatment of Claims and Equity Interests ...................... 11

    C.    Special Provision Governing Unimpaired Claims .................................... 14

    D.    Non-Consensual Confirmation ........................................................... 14

ARTICLE IV     MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 14

    A.    Settlement with the Committee, the Debtors and Waterton ....................... 14

    B.    The CR Kendall Settlement ............................................................... 14

    C.    Horizon Wyoming Uranium, Inc. Assets ............................................. 15

    D.    Appointment of the Liquidating Trustee and the Liquidating Trust Committee ......................... 15

    E.    The Liquidating Trust ...................................................................... 15

    F.    Rights and Powers of the Liquidating Trustee ...................................... 16

    G.    Fees and Expenses of the Liquidating Trust ......................................... 16

    H.    Semi-Annual Reports to Be Filed by the Liquidating Trust....................... 16

    I.    Directors/Officers/Equity/Assets of the Debtors on the Effective Date......... 17

    J.    Liquidation of the Debtors ................................................................ 17

    K.    Operations of the Debtors Between the Confirmation Date and the Effective Date ................... 17

    L.    Establishment of the Administrative Bar Date........................................ 17

    M.    Term of Injunctions or Stays.............................................................. 18

    N.    Cancellation of Equity Interests .......................................................... 18

ARTICLE V     PROVISIONS GOVERNING DISTRIBUTIONS................................................ 18

    A.    Initial Distribution Date ................................................................... 18

    B.    Disputed Reserves........................................................................... 18

    C.    Quarterly Distributions .................................................................... 19

    D.    Record Date for Distributions ............................................................ 19

    E.    Delivery of Distributions .................................................................. 19

    F.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement ...................... 20

    G.    Time Bar to Cash Payments by Check.................................................. 20

**TABLE OF CONTENTS**
(continued)

Page

| | | | |
|---|---|---|---|
| H. | Limitations on Funding of Disputed Reserves | | 20 |
| I. | Compliance with Tax Requirements | | 20 |
| J. | No Payments of Fractional Dollars | | 20 |
| K. | Interest on Claims | | 21 |
| L. | No Distribution in Excess of Allowed Amount of Claim | | 21 |
| M. | Setoff and Recoupment | | 21 |
| ARTICLE VI | | DISPUTED CLAIMS | 21 |
| A. | No Distribution Pending Allowance | | 21 |
| B. | Resolution of Disputed Claims | | 21 |
| C. | Objection Deadline | | 21 |
| D. | Estimation of Claims | | 22 |
| E. | Disallowance of Claims | | 22 |
| F. | Adjustment to Claims Without Objection | | 22 |
| ARTICLE VII | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| A. | Rejection of Executory Contracts and Unexpired Leases | | 22 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | | 23 |
| C. | Executory Contracts and Unexpired Leases to Be Assumed | | 23 |
| D. | Payments Related to the Assumption of Executory Contracts and Unexpired Leases | | 23 |
| ARTICLE VIII | | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 24 |
| A. | Conditions Precedent to the Effective Date | | 24 |
| ARTICLE IX | | RELEASE, INJUNCTIVE AND RELATED PROVISIONS | 24 |
| A. | Compromise and Settlement | | 24 |
| B. | Releases by the Debtors | | 24 |
| C. | Exculpation | | 25 |
| D. | Releases by Holders of Claims and Interests | | 25 |
| E. | Injunction | | 25 |
| F. | Releases of Liens | | 26 |
| G. | No Substantive Consolidation | | 26 |
| H. | Preservation of Rights of Action | | 26 |
| ARTICLE X | | RETENTION OF JURISDICTION | 27 |
| ARTICLE XI | | MISCELLANEOUS PROVISIONS | 28 |
| A. | Final Fee Applications | | 28 |
| B. | Payment of Statutory Fees | | 28 |
| C. | Modification of Plan | | 29 |

**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| D. | Revocation of Plan | 29 |
| E. | Successors and Assigns | 29 |
| F. | Governing Law | 29 |
| G. | Reservation of Rights | 29 |
| H. | Section 1146 Exemption | 29 |
| I. | Section 1125(e) Good Faith Compliance | 29 |
| J. | Further Assurances | 30 |
| K. | Service of Documents | 30 |
| | To the Liquidating Trustee: | 30 |
| L. | Filing of Additional Documents | 30 |
| M. | No Stay of Confirmation Order | 30 |
| N. | Aid and Recognition | 30 |

010-8234-1378/6/AMERICAS

## TABLE OF EXHIBITS[2]

| | |
|---|---|
| Exhibit I | Liquidating Trust Agreement |
| Exhibit II | Executory Contracts and Unexpired Leases to be Assumed |
| Exhibit III | Retained Causes of Action |

---

[2] All exhibits to this Plan shall be filed in substantially final form with the Bankruptcy Court no later than ten (10) days prior to the deadline to vote to accept or reject the Plan.  The exhibits will be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, (ii) at http://www.pacer.gov, (iii) from the Noticing Agent's website at http://www.upshotservices.com/atna, or (iv) by contacting the Debtors' counsel after the exhibits are filed.  The Debtors reserve the right to modify, amend, supplement, restate or withdraw the exhibits after they are filed.

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the Debtors and Debtors in Possession in the above-captioned and numbered cases hereby respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in Article II hereof.

2.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided herein with respect to Professional Compensation or by a separate order of the Bankruptcy Court), for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930; provided, however, that the U.S. Trustee shall not be required to file Claims for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930 before the Administrative Bar Date; provided, further that all requests for Administrative Tax Claims must be filed and served on the Debtors, the Liquidating Trust or the Liquidating Trustee, as applicable, on or before the later of (a) thirty (30) days following the Effective Date and (b) one hundred twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit; provided, further, that Administrative Claims that arise under Section 503(b)(9) of the Bankruptcy Code shall only be deemed timely filed to the extent such Claims were filed in accordance with the terms of the General Bar Date Order.

3.    "*Administrative Tax Claims*" means Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established.

4.    "*Affiliate*" has the meaning set forth at Section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated and as to which the Debtors or other parties-in-interest have not Filed an objection by the Claims Objection Bar Date; (b) a proof of Claim or Equity Interest that has been filed and as to which the Debtors, the Liquidating Trustee, or other parties-in-interest have not Filed an objection by the Claims Objection Bar Date; (c) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with Debtors of amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (e) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (f) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

6.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

7.     "*Asset Purchase Agreements*" means, collectively, the Waterton Asset Purchase Agreement, the Solitario Asset Purchase Agreement, the WRH Asset Purchase Agreement and the DV Natural Resources Asset Purchase Agreement.

8.     "*Bankruptcy Code*" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

9.     "*Bankruptcy Court*" means the United States District Court for the District of Colorado, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to Section 157 of title 28 of the United States Code and/or pursuant to the automatic reference of all bankruptcy cases pursuant to Rule 84.1 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil, the United States Bankruptcy Court for the District of Colorado.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Colorado, the Local Rules of Practice of the United States District Court for the District of Colorado, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11.    "*Beneficiaries*" means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust Fund under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

12.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed. R. Bankr. P. 9006(a)).

13.    "*Canadian Court*" means the Supreme Court of British Columbia.

14.    "*Canadian Recognition Proceedings*" means those Canadian insolvency proceedings commenced by Atna Resources Inc., as the foreign representative of the Debtors, which are pending in the Canadian Court under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, Case No. S-159677 in the Vancouver Registry.

15.    "*Cash Investment Yield*" means the net yield earned by the Liquidating Trust from the investment of Cash held pending Distribution in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

16.    "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

17.    "*Causes of Action*" means all claims, actions, causes of action, chosen in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and

2

crossclaims of any of the Debtors, the Debtors-in-Possession and/or the Estates (including, without limitation, those actions set forth in the Plan Supplement) that are or may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

18.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which are jointly administered under case number 15-22848 (JGR).

19.     "*Claim*" means a "claim" (as that term is defined in Section 101(5) of the Bankruptcy Code) against a Debtor.

20.     "*Claims Objection Bar Date*" means the bar date for objecting to proofs of claim, which shall be one-hundred eighty (180) days after the Effective Date; provided, however, that the Liquidating Trustee may seek by motion additional extensions of this date from the Bankruptcy Court.

21.     "*Claims Register*" means the official claims registers in the Debtors' Chapter 11 Cases maintained by the Noticing Agent on behalf of the Clerk of the Bankruptcy Court.

22.     "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III pursuant to Section 1122(a) of the Bankruptcy Code.

23.     "*Committee*" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases.

24.     "*Committee Settlement Agreement*" means the Settlement Agreement and Mutual Releases dated May 20, 2016 between the Debtors, the Committee, Waterton and Osgood Mining Company, LLC.

25.     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

26.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

27.     "*Cure Amount Claim*" means a Claim based upon a Debtor's monetary defaults under an executory contract or unexpired lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

28.     "*CR Kendall Settlement Agreement*" means the settlement agreement dated July 27, 2016 between the Montana Department of Environmental Quality for the State of Montana, Atna Resources Ltd., Atna Resources Inc., CR Kendall Corporation and Robert Fye, LLC, in his capacity as trustee for the CR Kendall Custodial and Work Trust established by the CR Kendall Settlement Agreement.

29.     "*Debtors*" or "*Debtors in Possession*" means, collectively, the above-captioned debtors and debtors in possession specifically identified on the cover page to this Plan.

30.     "*De Minimis Assets*" means the Debtors' assets sold pursuant to the Order Granting Debtors' Motion for an Order Approving Procedures to Sell or Transfer Certain De Minimis Assets, Free and Clear of Liens, Claims and Encumbrances, and to Pay Market Rate Commissions in Connection With Such Sales Without Further Court Approval [Docket No. 329] as supplemented by Order dated May 23, 2016 [Docket No. 516].

31.     "*DIP Credit Agreement*" means the credit agreement between Waterton and the Debtors, except CR Kendall Corporation, pursuant to which Waterton provided the Debtors a senior secured priming and superpriority post-petition financing in the total amount of $4 million, as approved by the Final DIP Order (as amended, modified, or supplemented from time to time).

3

32.     "*DIP Facility*" means the Debtors' senior secured priming and superpriority post-petition financing in the total amount of $4.0 million, which the Bankruptcy Court approved pursuant to the Final DIP Order and on account of which all liability of the Debtors was satisfied during the pendency of the Chapter 11 Cases.

33.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on [_], 2016.

34.     "*Disclosure Statement*" means the Disclosure Statement for Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, dated October [__], 2016, prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

35.     "*Disputed Reserve*" means the reserve fund created pursuant to Article V.B.1 of the Plan.

36.     "*Disputed*" means, with respect to any Claim, any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor or the Liquidating Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor or Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

37.     "*Distributions*" means the distributions of Cash and beneficial interests in the Liquidating Trust to be made in accordance with the Plan and/or the Liquidating Trust Agreement.

38.     "*DV Natural Resources*" means DV Natural Resources, LLC.

39.     "*DV Natural Resources Asset Purchase Agreement*" means that certain Asset Purchase Agreement dated May 3, 2016 by and among CR Briggs Corporation and DV Natural Resources, LLC, as the same may be amended, supplemented, or otherwise modified from time to time as permitted therein (including all related agreements, documents and instruments) and all exhibits, schedules and addenda to any of the foregoing.

40.     "*Effective Date*" means the date selected by the Debtors that is a Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A have been satisfied or waived.

41.     "*Entity*" means an "entity" (as that term is defined in Section 101(15) of the Bankruptcy Code).

42.     "*Equity Interest*" means any equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation: (a) any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time; and (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of preferred stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

43.     "*Estate*" means the estate of each Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

44.     "*Exculpated Parties*" means, collectively, the Debtors, the officers and directors of the Debtors that served in such capacity at any time from and after the Petition Date, the Committee and its individual members thereof (solely in their capacity as such), Waterton, the Liquidating Trustee, the Liquidating Trust Committee and its individual members thereof (solely in their capacity as such) and each of their respective Representatives (each of the foregoing in its individual capacity as such).

45.    "*File*" or "*Filed*" means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

46.    "*Final DIP Order*" means the Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, and (V) Granting Related Relief [Docket No. 271].

47.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

48.    "*General Bar Date Order*" means the Order Establishing Bar Date for the Filing of Proofs of Claims Pursuant to Fed R. Bankr. P. 3003(c)(3) [Docket No. 162].

49.    "*General Bar Date*" means February 29, 2016, as established in the General Bar Date Order.

50.    "*General Unsecured Claims*" means Claims against any Debtor that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Intercompany Claims or Equity Interests. For the avoidance of doubt, the Waterton Deficiency Claim, which was waived by Waterton pursuant to the Committee Settlement Agreement, is not a General Unsecured Claim.

51.    "*Governmental Bar Date*" means May 16, 2016, as established in the General Bar Date Order for each and every governmental unit (as such term is defined in 11 U.S.C. § 101(27)).

52.    "*Impaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

53.    "*Initial Distribution Date*" means the date on which the Liquidating Trust shall make its initial Distribution, which shall be a date selected by the Liquidating Trustee.

54.    "*Intercompany Claims*" means Claims held by a Debtor against another Debtor.

55.    "*Liquidating Trust*" means the Entity described in Article IV.B that will succeed to all of the assets and liabilities of the Estates, subject to the terms of Plan, as of the Effective Date.

56.    "*Liquidating Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the Liquidating Trust, substantially in the form to be filed as part of the Plan Supplement.

57.    "*Liquidating Trust Assets*" means all assets of the Debtors as of the Effective Date, including, without limitation, (a) all Cash on hand, (b) all Retained Sale Proceeds, (c) the Net Profits Interest, (d) the Restricted Cash, (e) all rights under (i) the Asset Purchase Agreements and payments owing to the Debtors thereunder, (ii) the Sale Order, and (iii) any other order of the Bankruptcy Court, (f) any claim, right or interest of the Debtors in any refund, rebate, abatement or other recovery for Taxes, (g) all Retained Causes of Action, (h) all proceeds of any of the foregoing and all proceeds of any of the foregoing received by any person or Entity on or after the Effective Date and (i) all of the Debtors' books and records; in each case, solely to the extent that such assets are not included in the assets sold pursuant to the Asset Purchase Agreements, and provided further, that assets of one Debtor shall be deemed held in trust for the sole benefit of the creditors of such Debtor and shall not be used to satisfied Allowed Claims of any other Debtor.

58.    "*Liquidating Trust Committee*" means those individuals appointed in accordance with the Liquidating Trust Agreement with the powers and responsibilities set forth in the Liquidating Trust Agreement.

59. "*Liquidating Trust Expenses*" means the fees and expenses of the Liquidating Trustee and the Liquidating Trust Committee, including, without limitation, professional fees and expenses.

60. "*Liquidating Trust Fund*" means the fund established pursuant to Article IV.B, among other things, to hold the Liquidating Trust Assets and make distributions on account of Claims in accordance with the terms of the Plan.

61. "*Liquidating Trustee*" means the person to be initially appointed by the Committee and subsequently retained by the Liquidating Trust Committee to administer the Liquidating Trust in accordance with the Liquidating Trust Agreement.

62. "*Net Profits Interest*" means that certain 2.5% net profits interest granted pursuant to the Net Profits Interest Agreement dated May 19, 2016 between Great Plains Mining, LLC, as grantor, and CR Montana Corporation, as grantee.

63. "*Noticing Agent*" means UpShot Services LLC.

64. "*Purchasers*" means, collectively, Waterton, DV Natural Resources, Solitario and WRH Nevada.

65. "*Petition Date*" means November 18, 2015, the date on which the Debtors Filed the Chapter 11 Cases.

66. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan.

67. "*Plan*" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

68. "*Pre-Petition Credit Agreement*" means that certain Senior Secured Credit Agreement dated January 31, 2014 between the Debtors, other than CR Kendall Corporation and Horizon Wyoming Uranium, Inc., and Waterton, pursuant to which the Debtors entered into a $22.0 million senior secured, non-revolving credit facility.

69. "*Priority Non-Tax Claims*" means Claims entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7), or 507(a)(9) of the Bankruptcy Code.

70. "*Priority Tax Claims*" means Claims of governmental units of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

71. "*Pro Rata*" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

72. "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with Sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

73. "*Professional Compensation*" means the fees and expenses of Professionals (including, without limitation: (a) success fees allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction, and (b) fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under Sections 328, 330(a), 331 or 503(b)(2-5) of the Bankruptcy Code.

74.     "*Quarterly Distribution Date*" means the first Business Day after the end of each quarterly calendar period (*i.e.*, March 31, June 30, September 30 and December 31 of each calendar year).

75.     "*Ratable Proportion*" means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

76.     "*Record Date*" means the record date for determining the entitlement of holders of Claims to receive Distributions under the Plan on account of Allowed Claims.  The Record Date shall be the date on which the Disclosure Statement Order is entered.

77.     "*Releasee*s" means, collectively, the Debtors, officers and directors of the Debtors that served in such capacity at any time from and after the Petition Date, the Committee and its individual members thereof (solely in their capacity as such), Waterton and each of their respective Representatives.

78.     "*Releasing Parties*" means, collectively, holders of Claims voting to accept the Plan.

79.     "*Representatives*" means, with regard to any Entity, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

80.     "*Restricted Cash*" means Cash currently held in trust in connection with the surety bonds issued for the benefit of the Debtors, except with respect to the surety bonds assigned and assumed as part of the Sale.

81.     "*Retained Causes of Action*" mean all Causes of Action, other than: (i) the Transferred Causes of Action, and (ii) those Causes of Action that are released, compromised and/or settled pursuant to Article IX hereof.

82.     "*Retained Sale Proceeds*" mean (i) any net proceeds from the sale of *De Minimis* Assets held by the Debtors as of the date of the Committee Settlement Agreement and the proceeds of the sale of *De Minimis* Assets after the date of the Committee Settlement Agreement, in an aggregate amount not to exceed $200,000; (ii) any proceeds of Avoidance Actions, Commercial Tort Claims (as defined in the DIP Credit Agreement, by reference to the Uniform Commercial Code as in effect from time to time in the State of New York), claims against officers and directors of the Debtors, and errors and omissions claims held by any of the Debtors; (iii) any net proceeds from the sale of the Wolf polymetallic prospect located in the Pelly Mountains of southeastern Yukon, Canada and the Ecstall polymentallic prospect located in the Skeena Mining District of British Columbia, Canada; (iv) any net proceeds from the sale of Horizon Wyoming Uranium, Inc.'s assets; (v) any net proceeds from the sale of the CR Montana Corporation' mineral rights royalty to Solitario; and (vi) any net proceeds from the sale of the CR Montana Corporation's mineral rights to W.R.H. Nevada.

83.     "*Sale*" means the sale of substantially all of the Debtors' assets to the Purchasers pursuant to the Asset Purchase Agreements and the Sale Order.

84.     "*Sale Order*" means the Order (I) Approving the Sale of Certain Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief [Docket No. 497], which approved the Sale, as supplemented by the Supplemental Sale Order Approving Consensual Modification to Terms of Solitario Transaction [Docket No. 523].

85.     "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code on December 16, 2015, and as may be further amended.

86.     "*Secured Claim*" means a Claim that is secured by a lien on property in which an Estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as

7

applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.  For the avoidance of doubt, the Waterton Secured Claim was a Secured Claim and was satisfied in full as a result of the Sale.  The holder of the Waterton Secured Claim will not receive any Distribution under the Plan.

87.     "*Solitario*" means Solitario Exploration & Royalty Corp.

88.     "*Solitario Asset Purchase Agreement*" means the Asset Purchase Agreement dated May 3, 2016 by and among Canyon Resources Corporation and Solitario Exploration & Royalty Corp., as the same may be amended, supplemented, or otherwise modified from time to time as permitted therein (including all related agreements, documents and instruments) and all exhibits, schedules and addenda to any of the foregoing.

89.     "*Taxes*" means (a) any taxes and assessments imposed by any Governmental Body, including net income, gross income, profits, gross receipts, license, employment, stamp, occupation, premium, alternative or add-on minimum, ad valorem, real property, personal property, transfer, real property transfer, value added, sales, use, environmental (including taxes under Code Section 59A), customs, duties, capital stock, franchise, excise, withholding, social security (or similar), unemployment, disability, payroll, fuel, excess profits, windfall profit, severance, estimated or other tax, including any interest, penalty or addition thereto, whether disputed or not, and any expenses incurred in connection with the determination, settlement or litigation of the Tax liability, (b) any obligations under any agreements or arrangements with respect to Taxes described in clause (a) above, and (c) any transferee liability in respect of Taxes described in clauses (a) and (b) above or payable by reason of assumption, transferee liability, operation of Law, Treasury Regulation Section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under Law) or otherwise.

90.     "*Transferred Causes of Action*" means all Causes of Action held by the Debtors and/or their Estates as of the closing of the Sale that were transferred to the Purchasers pursuant to the applicable Asset Purchase Agreements and the Sale Order.

91.     "*U.S. Trustee*" means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the District of Colorado.

92.     "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

93.     "*Waterton*" means Waterton Precious Metals Fund II Cayman, LP.

94.     "*Waterton Asset Purchase Agreement*" means the Asset Purchase Agreement dated May 5, 2016 by and among Atna Resources, Inc., CR Montana Corporation, Canyon Resources Corporation and Osgood Mining Company, LLC, as the same may be amended, supplemented, or otherwise modified from time to time as permitted therein (including all related agreements, documents and instruments) and all exhibits, schedules and addenda to any of the foregoing.

95.     "*Waterton Deficiency Claim*" means the general unsecured claim of Waterton, which Waterton agreed to waive pursuant to the Committee Settlement Agreement.

96.     "*Waterton Secured Claims*" means (i) the claim of Waterton in respect to the DIP Facility in the principal amount of $4,000,000 and (ii) the claim of Waterton in respect to the Pre-Petition Credit Agreement in the principal amount of $19,080,800, plus accrued and unpaid interest and any additional fees, costs and expenses, which claims were used, in part, by Waterton as a credit bid to purchase some of the Debtors assets as per the Sale Order.

97.     "*WRH Nevada*" means W.R.H. Nevada Properties, LLC.

98.     "*WRH Nevada Asset Purchase Agreement*" means the Asset Purchase Agreement dated May 3, 2016 by and among CR Montana Corporation, W.R.H. Nevada Properties, LLC and W.R. Henderson Construction, Inc., as guarantor, as the same may be amended, supplemented, or otherwise modified from time to time as

8

permitted therein (including all related agreements, documents and instruments) and all exhibits, schedules and addenda to any of the foregoing.

B.     *Rules of Interpretation*

1.     For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     Notwithstanding anything herein, to the contrary or otherwise, in the event there are any inconsistencies between the terms and conditions of: (i) (a) this Plan and/or any order confirming this Plan, and (b) the Sale Order, the terms and conditions of the Sale Order shall control, or (ii)(x) this Plan and/or any order confirming this Plan, and (y) the Asset Purchase Agreements, the terms and conditions of the Asset Purchase Agreements shall control.

3.     The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

4.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.     *Exhibits*

The Plan Supplement shall be filed in substantially final form with the Clerk of the Bankruptcy Court not later than ten (10) days prior to the deadline to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Copies will also be available free of charge on the Debtors' case website at http://www.upshotservices.com/atna.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors by a written request sent to the following address:

> Squire Patton Boggs (US) LLP
> 1801 California Street, Suite 4900
> Denver, Colorado 80202
> Attn: Aaron Boschee, Esq.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

A.     Administrative Claims

Subject to the provisions of Sections 328, 330(a) and 331 of the Bankruptcy Code, the Debtors or the Liquidating Trust shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then

due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that the U.S. Trustee shall not be required to file Claims for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930 before the Administrative Bar Date; provided, further, that Administrative Claims that arise under Section 503(b)(9) of the Bankruptcy Code shall only be deemed timely filed to the extent such Claims were filed in accordance with the terms of the General Bar Date Order; provided, further that all requests for Administrative Tax Claims must be filed and served on the Debtors, the Liquidating Trust or the Liquidating Trustee, as applicable, on or before the later of (a) thirty (30) days following the Effective Date and (b) one hundred twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Administrative Tax Claim that is not filed and properly served by the applicable bar date shall not be treated as a creditor for purposes of voting or distribution. Any interested party desiring to object to an Administrative Tax Claim must file and serve its objection on counsel to the Liquidating Trust and the relevant taxing authority on or before the later of (i) the Claims Objection Bar Date (as the same may be extended) or (ii) ninety (90) days after the taxing authority files and serves its Administrative Tax Claim.

      1.      Professional Compensation and Reimbursement Claims

The Bankruptcy Court shall fix in the Confirmation Order a date for filing of, and a date to hear and determine, all applications for final allowances of compensation or reimbursement of expenses under Sections 328, 330(a) and 331 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.

      2.      Intercompany Administrative Claims

On or before the Effective Date, all postpetition amounts owing by a Debtor to another Debtor, if any, shall be set-off against each other and the net payable amount, if any, shall be paid by the liable Debtor to the applicable Debtor in full as an Allowed Administrative Claim from the available assets of the liable Debtor before any general unsecured creditors of the liable Debtor receive any distribution under the Plan.  In the event no assets are available to pay such Administrative Claims, the unpaid portion of the Administrative Claim will be deemed waived and forgiven.

B.      *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim against a Debtor agrees to a different treatment, the Debtors or the Liquidating Trustee shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      *Summary*

      1.      Except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in a particular Debtor are placed in Classes. In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article II.

      2.      The following table classifies Claims against and Equity Interests in each Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent

that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.     Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Waterton Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims Against Atna Resources Ltd. | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims Against Canyon Resources Corporation | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims Against CR Briggs Corporation | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims Against CR Montana Corporation | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims Against CR Kendall Corporation | Impaired | Entitled to Vote |
| 9 | General Unsecured Claims Against Atna Resources Inc. | Impaired | Entitled to Vote |
| 10 | Equity Interests | Impaired | Deemed to Reject |

B.     *Classification and Treatment of Claims and Equity Interests*

1.     Priority Non-Tax Claims (Class 1)

(a)     *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)     *Treatment*:  Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Liquidating Trust, on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, the Liquidating Trust shall pay to each holder of an Allowed Priority Non-Tax Claim, in Cash, the full amount of such Allowed Priority Non-Tax Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Non-Tax Claim.

(c)     *Voting*:  Class 1 is Unimpaired.  Holders of Priority Non-Tax Claims are conclusively deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.

2.     Waterton Secured Claims (Class 2)

(a)     *Classification*:  Class 2 consists of the Waterton Secured Claims.

(b)     *Treatment*:  Waterton shall neither receive nor retain any property or Distributions under the Plan.  The Waterton Secured Claims were paid in full pursuant to the Sale and the Committee Settlement Agreement.

(c)     *Voting*:  Class 2 is Unimpaired.  Waterton is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

3.     Secured Claims (Class 3)

(a)     *Classification*:  Class 3 consists of the Secured Claims against the respective Debtors.

11

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Secured Claim agrees to a less favorable treatment, each holder of an Allowed Secured Claim shall receive (i) receipt of the collateral securing any such Allowed Secured Claim on the Effective Date or as soon thereafter as reasonably practicable; or (ii) such other treatment that renders an Allowed Secured Claim Unimpaired on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim. Any deficiency claim of a holder of an Allowed Class 3 Claim, if any, will be a General Unsecured Claim against the applicable Debtor's estate.

(c)    *Voting*:  Class 3 is Unimpaired.  Holders of Secured Claims are conclusively deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.

4.    General Unsecured Claims Against Atna Resources Ltd. (Class 4)

(a)    *Classification*:  Class 4 consists of General Unsecured Claims Against Atna Resources Ltd.

(b)    *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the of the assets of Atna Resources Ltd. that were transferred into the Liquidating Trust Fund after the payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against Atna Resources Ltd. The General Unsecured Claims of other Debtors against Atna Resources Ltd. will not receive any Distribution.

(c)    *Voting*:  Class 4 is Impaired, and holders of General Unsecured Claims Against Atna Resources Ltd. are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

5.    General Unsecured Claims Against Canyon Resources Corporation (Class 5)

(a)    *Classification*:  Class 5 consists of General Unsecured Claims Against Canyon Resources Corporation.

(b)    *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the assets of Canyon Resources Corporation that were transferred into the Liquidating Trust Fund after the payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against Canyon Resources Corporation. The General Unsecured Claims of other Debtors against Canyon Resources Corporation will not receive any Distribution.

(c)    *Voting*:  Class 5 is Impaired, and holders of General Unsecured Claims Against Canyon Resources Corporation are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

6.    General Unsecured Claims Against CR Briggs Corporation (Class 6)

(a)    *Classification*:  Class 6 consists of General Unsecured Claims Against CR Briggs Corporation.

(b)    *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the assets of CR Briggs Corporation that were transferred into the Liquidating Trust Fund after the

payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against CR Briggs Corporation.  The General Unsecured Claims of other Debtors against CR Briggs Corporation will not receive any Distribution.

(c)     *Voting*:  Class 6 is Impaired, and holders of General Unsecured Claims Against CR Briggs Corporation are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

7.     General Unsecured Claims Against CR Montana Corporation (Class 7)

(a)     *Classification*:  Class 7 consists of General Unsecured Claims Against CR Montana Corporation.

(b)     *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the assets of CR Montana Corporation that were transferred into the Liquidating Trust Fund after the payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against CR Montana Corporation.  The General Unsecured Claims of other Debtors against CR Montana Corporation will not receive any Distribution.

(c)     *Voting*:  Class 7 is Impaired, and holders of General Unsecured Claims Against CR Montana Corporation are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

8.     General Unsecured Claims Against CR Kendall Corporation (Class 8)

(a)     *Classification*:  Class 8 consists of General Unsecured Claims Against CR Kendall Corporation.

(b)     *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the assets of CR Kendall Corporation that were transferred into the Liquidating Trust Fund after the payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against CR Kendall Corporation. The General Unsecured Claims of other Debtors against CR Kendell Corporation will not receive any Distribution.

(c)     *Voting*:  Class 8 is Impaired, and holders of General Unsecured Claims Against CR Kendall Corporation are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

9.     General Unsecured Claims Against Atna Resources Inc. (Class 9)

(a)     *Classification*:  Class 9 consists of General Unsecured Claims Against Atna Resources Inc.

(b)     *Treatment*:  On or as soon as practicable after the Initial Distribution Date or any subsequent distribution date, the Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim in this Class, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the assets of Atna Resources Inc. that were transferred into the Liquidating Trust Fund after the payment in full of all Administrative Claims, Priority Claims, Priority Tax Claims and the funding of the Disputed Reserve for General Unsecured Claims against Atna Resources Inc.  The General Unsecured Claims of other Debtors against Atna Resources Inc. will not receive any Distribution.

(c)      *Voting*:  Class 9 is Impaired, and holders of General Unsecured Claims Against Atna Resources Inc. are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

10.      Equity Interests (Class 10)

(a)      *Classification*:  Class 10 consists of Equity Interests.

(b)      *Treatment*:  Holders of Equity Interests shall neither receive nor retain any property under the Plan.

(c)      *Voting*:  Class 10 is Impaired, and holders of Equity Interests conclusively are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Liquidating Trust's right in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Non-Consensual Confirmation*

The Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  To the extent that any Class votes to reject the Plan, the Debtors further reserve the right to modify the Plan in accordance with Article XI.C.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Settlement with the Committee, the Debtors and Waterton*

Following good faith negotiations, the Debtors, Waterton and the Committee entered into the Committee Settlement Agreement pursuant to which, among other things, (i) the Net Profits Interest was granted to CR Montana Corporation to be held in trust for the benefit of the holders of General Unsecured Claims, (ii) Waterton agreed not to assert a lien on the Retained Sale Proceeds, which proceeds are to be held in trust by the Debtors for the benefit of the holders of General Unsecured Claims (other than Waterton), (iii) Waterton waived its right to recover or exercise any rights in its capacity as a holder of a General Unsecured Claim (including the Waterton Deficiency Claim), (iv) Waterton agreed to withdraw various claims filed against the Debtors' Estates, and (v) Waterton, the Committee and the Debtors provided mutual releases as set forth therein.

Among other things, the Committee Settlement Agreement resolves significant disputes, including, among other things, disputes with Waterton regarding the assertion of various claims and causes of action against Waterton on behalf of the Debtors' Estates with respect to the DIP Facility and the Final DIP Order and the Pre-petition Credit Agreement Documents (as defined in the Final DIP Order).  As such, the Committee Settlement Agreement provides significant value to the Debtors' Estates, favorably resolves and avoids potential significant litigation, and enables the prompt and efficient wind-down of the Debtors' Estates.  The Bankruptcy Court approved the Committee Settlement Agreement in the Sale Order.

B.      *The CR Kendall Settlement*

On July 14, 2016, the Debtors filed a Motion for an Emergency Order Approving Consent Decree and Settlement Agreement Establishing a Custodial and Work Trust for CR Kendall Mine Closure Pursuant To Fed. R. Bankr. P. 9019.  Following good faith negotiations, (i) the Montana Department of Environmental Quality for the State of Montana, (ii) Atna Resources Ltd., Atna Resources Inc., CR Kendall Corporation, and (iii) Robert Fye,

14

LLC, in his capacity as trustee of the CR Kendall Custodial and Work Trust entered into the CR Kendall Settlement Agreement dated August 15, 2016. The trust established by the CR Kendall Settlement (i) shall receive the full amount of funds in the state-managed escrow account with the Montana Department of Environmental Quality for the State of Montana as of the date of transfer, which is in the amount of $2,346,829.42 as of June 10, 2016, (ii) shall use these funds to perform the work required by the Record of Decision for CR Kendall Mine, Amendment 007 to Operating Permit No. 00122, Fergus County, Montana for final mine closure, (iii) shall use these funds to pay the trustee costs, and to pay other administrative costs until closure is completed. According to the CR Kendall Settlement, the claims of the Montana Department of Environmental Quality for the State of Montana against the Debtors will be paid the cash in the escrow account as of the date of transfer, in the amount of $2,346,829.42 as of June 10, 2016.

Among other things, the foregoing settlement resolves significant disputes, including, among other things, disputes with respect to the closing of the CR Kendall mine. As such, this settlement provides significant value to the Debtors' Estates, favorably resolves and avoids potential significant litigation, and enables the prompt and efficient wind-down of the Debtors' Estates. The Bankruptcy Court approved the Kendall Settlement Agreement on July 27, 2016.

C.    *Horizon Wyoming Uranium, Inc. Assets*

Horizon Wyoming Uranium, Inc. does not have any creditors. All assets of Horizon Wyoming Uranium, Inc. will be deemed assets of Canyon Resources Corporation, Horizon Wyoming Uranium, Inc.'s direct parent, for purpose of the Plan and will be distributed accordingly.

D.    *Appointment of the Liquidating Trustee and the Liquidating Trust Committee*

On or prior to the Confirmation Date, the Committee shall appoint the Liquidating Trustee. Additionally, on or prior to the Confirmation Date, the Committee shall appoint the three (3) member Liquidating Trust Committee. The Liquidating Trustee shall serve at the direction of the Liquidating Trust Committee and in accordance with the Liquidating Trust Agreement and the Plan, provided, however, that the Liquidating Trust Committee may not direct the Liquidating Trustee or the members of the Liquidating Trust Committee to act inconsistently with their duties under the Liquidating Trust Agreement and the Plan. The Liquidating Trust Committee may terminate the Liquidating Trustee at any time in accordance with the provisions of the Liquidating Trust Agreement.

E.    *The Liquidating Trust*

1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, inter alia, (a) administering the Liquidating Trust Fund, (b) resolving all Disputed Claims, (c) pursuing the Retained Causes of Action, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d).

2.    Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Fund shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Fund to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Fund will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Fund, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the

15

Liquidating Trust Fund, and the Debtors will have no further interest in or with respect to the Liquidating Trust Fund.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations, the receipt by the Liquidation Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidation Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, (i) the Liquidating Trustee shall make a good faith valuation of the Liquidation Trust Assets, and (ii) the Liquidating Trustee shall establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust, the Beneficiaries and the Liquidating Trust Committee) for all federal income tax purposes.  The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

3.      Taxation of the Liquidating Trust

Within a reasonable period of time after the end of each taxable year or other relevant period, the Liquidating Trust will allocate the taxable income, gain, loss, deduction or credit arising from the Liquidating Trust to each individual or entity that was a Beneficiary during the taxable year or other relevant period, and shall notify each such Beneficiary via a separate written statement of such Beneficiary's share of taxable income, gain, loss, deduction or credit arising from the Liquidating Trust for such taxable year or other relevant period.  The written statement sent to each Beneficiary shall instruct such Beneficiary to report all such tax items arising from the Liquidating Trust on its own tax returns, and shall inform such Beneficiary that the Beneficiary shall be required to pay any tax resulting from such Liquidating Trust tax items being allocated to such Beneficiary.

F.      *Rights and Powers of the Liquidating Trustee*

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust, including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the assets transferred to the Liquidating Trust Fund on of the Effective Date; (3) prosecute, settle, abandon or compromise any Retained Causes of Action; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and (7) employ and compensate professionals and other agents, provided, however, that any such compensation shall be made only out of the Liquidating Trust Fund, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

G.      *Fees and Expenses of the Liquidating Trust*

Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trust Expenses, including the fees and expenses of professionals retained by the Liquidating Trustee, on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.  The Liquidating Trustee shall be compensated as agreed to by the Committee and the Liquidating Trustee and such agreement will be documented and executed by the Committee and the Liquidating Trustee.

H.      *Semi-Annual Reports to Be Filed by the Liquidating Trust*

The Liquidating Trust shall File semi-annual reports with the Bankruptcy Court regarding the liquidation or other administration of property comprising the Liquidating Trust Fund, the Distributions made by it and other matters required to be included in such report in accordance with the Liquidating Trust Agreement.  In addition, the

16

Liquidating Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

I.      *Directors/Officers/Equity/Assets of the Debtors on the Effective Date*

        1.      On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause.

        2.      On the Effective Date, all the then Equity Interests in the Debtors (including all instruments evidencing such Equity Interests) shall be cancelled and extinguished without further action under any applicable agreement, law, regulation or rule.

J.      *Liquidation of the Debtors*

        1.      All of the Debtors shall be deemed to have been liquidated as of the Effective Date, and all Equity Interests in any Debtor shall automatically be cancelled and extinguished as of the Effective Date without the need for any further action by the Bankruptcy Court or any Entity.

        2.      Notwithstanding the foregoing, as soon as practicable after the Effective Date, the Liquidating Trustee shall: (a) file certificates of dissolution or such similar document, together with all other necessary corporate documents, to effect the dissolution of each of the Debtors under the applicable laws of its state of incorporation or domicile; and (b) complete and file final federal, state and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. Following such actions and upon the filing by or on behalf of the Debtors of a certification to that effect with the Bankruptcy Court, the Debtors shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each of the Debtors or payments, including, without limitation, the payment of any franchise or similar taxes to the state or commonwealth of incorporation or organization of such Entity, to be made in connection therewith. The filing by each Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of each such Debtor.

        3.      On the Effective Date, each Debtor shall assign, transfer and distribute to the Liquidating Trust the Liquidating Trust Assets, including all of the Debtors' books and records. For purposes of this Article, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.  All books and records shall be preserved in an orderly fashion and in their native format.

K.      *Operations of the Debtors Between the Confirmation Date and the Effective Date*

        The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

L.      *Establishment of the Administrative Bar Date*

        1.      The Plan establishes the Administrative Bar Date, which was approved by the Bankruptcy Court pursuant to the Confirmation Order.

        2.      Except as otherwise provided in Article IV.I.4 hereof, on or before 4:00 p.m., prevailing Mountain Time, on the Administrative Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of Administrative Claim (a) by mailing, hand delivering or delivering by courier service such

request for payment of Administrative Claim to the Clerk of the Bankruptcy Court at 721 19th Street, Denver, Colorado 80202 or (b) by Filing such request with the Bankruptcy Court.

3.     The request for payment of an Administrative Claim will be timely Filed only if it is actually received by the Bankruptcy Court by 4:00 p.m., prevailing Mountain Time, on the Administrative Bar Date.

4.     Notwithstanding anything in this Article IV.I.2 of the Plan, Professionals shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Bar Date for Professional Compensation as such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules and the Confirmation Order.

M.     *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

N.     *Cancellation of Equity Interests*

1.     On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Equity Interests shall be deemed automatically cancelled and shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Liquidating Trust shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan.

B.     *Disputed Reserves*

1.     Establishment of Disputed Reserves

On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, the Liquidating Trust shall establish a separate Disputed Reserve for Disputed Claims, each of which Disputed Reserves shall be administered by the Liquidating Trust. The Liquidating Trust shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article VI.D hereof) with respect to each Disputed Claim.

2.     Maintenance of Disputed Reserves

The Liquidating Trust shall hold property in the Disputed Reserves in trust for the benefit of the holders of Claims ultimately determined to be Allowed. Each Disputed Reserve shall be closed and extinguished by the Liquidating Trust when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Reserve, all Cash (including any Cash Investment Yield) or other property held in that Disputed Reserve shall revest in and become the property of the Liquidating Trust. All funds or other property that vest or revest in the Liquidating Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the Liquidating Trust as and to the extent

18

set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Claims.

C.      *Quarterly Distributions*

Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trust in a Disputed Reserve pursuant to Article V.B and Distributed (in full, in the case of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims; and up to its Ratable Proportion with respect to the Claims in Classes 4 through 9) on the first Quarterly Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with this Article V.C.

D.      *Record Date for Distributions*

Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Liquidating Trust shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trust shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Liquidating Trust as of the Record Date.

E.      *Delivery of Distributions*

        1.      General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Trust at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Debtors have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trust may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Liquidating Trust deems appropriate, but no Distribution to any such holder shall be made unless and until the Liquidating Trust has determined the then-current address of such holder, at which time the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the Liquidating Trust shall be returned to, and held in trust by, the Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth below in Article V.E.3.  The Liquidating Trust shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

        2.      Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions would be $50 or less in the aggregate at the time of such Distribution, no such Distribution will be made to that holder unless a request therefor is made in writing to the Liquidating Trustee no later than twenty (20) days after the Effective Date.

        3.      Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from

such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of the applicable period, the claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vests or revests in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

F.       *Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement*

Cash payments made pursuant to the Plan or the Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trust or by wire transfer from a domestic bank, at the option of the Liquidating Trust.

G.       *Time Bar to Cash Payments by Check*

Checks issued by the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.I. shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof.  After that date, all claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.3.

H.       *Limitations on Funding of Disputed Reserves*

Except as expressly set forth in the Plan, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Reserves.

I.       *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  No Distribution shall be made to or on behalf of a holder of an Allowed Claim pursuant to the Plan unless and until such holder has provided the Liquidating Trust with any information that applicable law requires the Liquidating Trust to obtain in connection with making Distributions, including completed IRS Form W9.  The Liquidating Trust may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.E.1.

J.       *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

K.      *Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

L.      *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.      *Setoff and Recoupment*

The Liquidating Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the Liquidating Trust may have against the holder of such Claim except Transferred Causes of Action, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE VI

## DISPUTED CLAIMS

A.      *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or distribution on account of any undisputed portion of a Claim. Nothing herein shall preclude the Liquidating Trustee from making Distributions on account of the undisputed portions of Disputed Claims.

B.      *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee and the Liquidating Trust Committee shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, subject to the approval of the Liquidation Trust Committee in accordance with the terms of the Liquidation Trust Agreement, the Liquidation Trustee elects to withdraw any such objection or the Liquidating Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

C.      *Objection Deadline*

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim not later than nine (9) months after the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

D.      *Estimation of Claims*

At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

E.      *Disallowance of Claims*

Except as otherwise agreed, any and all proofs of Claim Filed after the General Bar Date or the Governmental Bar Date, as applicable, shall not be treated as creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2) and pursuant to the General Bar Date Order, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.  Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that such Cause of Action is a Retained Cause of Action, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.

F.      *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Noticing Agent at the direction of the Debtors or the Liquidating Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE GENERAL BAR DATE ORDER, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except for the executory contracts and unexpired leases listed on Exhibit II, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court, including, but not limited to, the Sale Order, or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the

22

Bankruptcy Code.  Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

C.      *Executory Contracts and Unexpired Leases to Be Assumed*

1.      Assumption Generally

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume each of the respective executory contracts and unexpired leases, if any, listed on Exhibit II; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to, amend Exhibit II to: (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant hereto; or (b) add any executory contract or unexpired lease to Exhibit II, thus providing for its assumption pursuant to this Article VII.C.  The Debtors shall provide notice of any amendments to Exhibit III to the parties to the executory contracts or unexpired leases affected thereby and to the parties on the then-applicable service list in the Bankruptcy Cases.  Nothing herein shall constitute an admission by a Debtor that any contract or lease is an executory contract or unexpired lease or that a Debtor has any liability thereunder.

2.      Assumptions of Executory Contracts and Unexpired Leases

Each executory contract or unexpired lease assumed under this Article VII.0 shall include any modifications, amendments, supplements or restatements to such contract or lease.

3.      Assignments Related to Post-Effective Date Transactions

As of the Effective Date, any executory contract or unexpired lease assumed under this Article VII.0 shall be deemed assigned to the Liquidating Trust, pursuant to section 365 of the Bankruptcy Code.

D.      *Payments Related to the Assumption of Executory Contracts and Unexpired Leases*

The Cure Amount Claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code: (1) by payment of the Cure Amount Claim in Cash on or after the Effective Date; or (2) on such other terms as are agreed to by the parties to such executory contract or unexpired lease.  Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest.  If there is an unresolved dispute regarding: (1) the amount of any Cure Amount Claim; (2) the ability of the Liquidating Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy

23

Code shall be made following the resolution of such dispute by the parties or the entry of a Final Order resolving the dispute and approving the assumption.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Confirmation Order has become a Final Order.

2.      The Confirmation Order shall be in full force and effect.

3.      Notwithstanding the foregoing, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE IX

## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.      *Compromise and Settlement*

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

B.      <u>**Releases by the Debtors**</u>

1.      <u>**Releases by the Debtors**</u>.  **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation: (a) the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; and (b) the services of the Debtors' officers and directors in facilitating the expeditious implementation of the sales of substantially all of the Debtors' assets, each of the Debtors hereby provides a full release, waiver and discharge to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtors, including, without limitation, those that any of the Debtors or the Liquidating Trust would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Chapter 11 Cases or the Plan.**

24

2.      **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or the Liquidating Trustee.**

C.      *Exculpation*

**Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all Claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, Liquidating Trust Agreement, DIP Facility, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Sale or the liquidation of the Debtors; provided, however, that the foregoing provisions of this Article IX.0 shall have no effect on the liability of any Exculpated Party that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above-referenced documents.**

D.      *Releases by Holders of Claims and Interests*

**Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties (i.e., holders of Claims voting to accept the Plan) shall be deemed to have forever released, waived and discharged all causes of action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtors, the Chapter 11 Cases or the Plan against the Releasees.**

E.      *Injunction*

1.      **Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors; provided, however, upon confirmation of the Plan, the occurrence of the Effective Date, and Distributions hereunder, Claimants may not seek payment or recourse against or otherwise be entitled to any Distribution from the Liquidating Trust Assets except as expressly provided in this Plan and the Liquidating Trust Agreement.**

2.      **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:**

(a)      **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors' Estates, the Liquidating Trust, their successors and assigns, and any of their assets and properties;**

(b)      **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor's Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;**

25

(c)     creating, perfecting or enforcing any encumbrance of any kind against any Debtor's Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(d)     asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor's Estate, the Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or

(e)     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

3.     **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, their Estates, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

F.     *Releases of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Liquidating Trustee.

G.     *No Substantive Consolidation*

Nothing in the Plan is intended or shall be deemed to be a substantive consolidation of the Debtors' separate Estates.  Each of the Debtors' Estates shall continue to be separate from one another.  No assets belonging to one Debtor's Estate shall be joined or otherwise consolidated with the assets belonging to any of the other Debtors' Estates and no liabilities of one Debtor's Estate shall be joined or otherwise consolidated with the liabilities of any of the other Debtors' Estates.  However, nothing herein is intended or shall be deemed to be a waiver of any right of the Debtors, the Liquidating Trustee, or any other party in interest to seek substantive consolidation through a separate motion with notice and opportunity to be heard.

H.     *Preservation of Rights of Action*

1.     Vesting of Causes of Action

(a)     Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust.

(b)     Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Retained Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(c)     Retained Causes of Action and any recoveries therefrom shall remain the sole property of the Liquidating Trust (for the sole benefit of the holders of General Unsecured Claims), as the case may be, and holders of Claims shall have no right to any such recovery.

2.        Preservation of All Retained Causes of Action Not Expressly Settled or Released

(a)        Unless a Retained Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such Retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee (including, without limitation, Retained Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Retained Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order). In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that any such obligation, transfer or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent or unliquidated.

### ARTICLE X

### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.        grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.        resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.0 adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.        ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

010-8234-1378/6/AMERICAS

5.        decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

6.        decide or resolve all Avoidance Actions to be brought by the Liquidating Trustee;

7.        enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

8.        resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.        issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

10.        enforce Article IX.A, Article IX.B, Article IX.C and Article IX.D;

11.        enforce the Injunction set forth in Article IX.E;

12.        resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.        enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.        resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

15.        enter an order and/or the decree contemplated in Fed. R. Bank. P. 3022 concluding the Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

A.     *Final Fee Applications*

The deadline for submission by Professionals of applications for Bankruptcy Court approval of Professional Compensation shall be forty-five (45) days after the Effective Date. The fees and expenses of the professionals retained by the Debtors in the Canadian Recognition Proceedings are subject to the fee application process in the Canadian Court.

B.     *Payment of Statutory Fees*

All fees payable pursuant to Section 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Chapter 11 Cases on the earlier of when due or the Effective Date, or as soon thereafter as practicable by the Liquidating Trust.

C.     *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

D.     *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

E.     *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

F.     *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to the principles of conflict of laws thereof.

G.     *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

H.     *Section 1146 Exemption*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

I.     *Section 1125(e) Good Faith Compliance*

The Debtors and each of their respective Representatives, shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

J.     *Further Assurances*

The Debtors, Liquidating Trustee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

K.     *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtors:

> Atna Resources Inc.
> P.O. Box 26115
> Lakewood, Colorado 80226
> Attn: James Hasketh
>
> *with a copy to:*
>
> Squire Patton Boggs (US) LLP
> 221 E. Fourth Street, Suite 2900
> Cincinnati, Ohio 45202
> Telephone: (513) 361-1200
> Facsimile: (513) 361-1201
> Attn.: Stephen D. Lerner, Esq.

To the Liquidating Trustee:

> Kenneth J. Buechler
> Buechler & Garber LLC
> 999 18th Street, Suite 1230S
> Denver, Colorado 80202
> Telephone: (720) 381-0045
> Facsimile: (720) 381-0382

L.     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

M.     *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed. R. Bankr. P. 3020(e) and 7062.

N.     *Aid and Recognition*

The Debtors or Liquidating Trustee, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of Canada, including the Canadian Court presiding over the Canadian Recognition Proceedings, or any other nation or state.

010-8234-1378/6/AMERICAS

Dated:  October [__], 2016

**Atna Resources Inc.**
**(for itself and on behalf of its debtor affiliates)**


/s/ James Hesketh                              
By: James Hesketh
Its:  President and Chief Executive Officer

31