**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>ATNA RESOURCES INC., ET AL.,<br>Debtor. | Bankruptcy Case No. 15-22848-JGR<br>Jointly Administered Under<br>Case No. 15-22848-JGR<br>Chapter 11 |

## ORDER DENYING MOTION TO ADMINISTRATIVELY CLOSE CASES

In this case, a liquidating trustee, whose sole existence flows from the debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, seeks to avoid payment of post-confirmation statutory fees to the United States Trustee ("UST") through administrative closure.

Debtors[1] filed for Chapter 11 in November 2015, and moved to consolidate their cases. One Unsecured Creditors Committee ("the "Committee") was appointed for all the Debtors. After approximately one year of negotiation, the Debtors and the Committee agreed upon an Amended Joint Plan of Liquidation (the "Plan"), which was confirmed by Order entered on November 29, 2016 (the "Confirmation Order").   The Plan created the Atna Liquidating Trust ("Trust")[2] and Kenneth Buechler was selected as Liquidating Trustee ("LT").

On the effective date of the Plan, all assets and claims of the Debtors were transferred to the Trust, the Debtors were deemed liquidated, and all equity interests in any Debtor were automatically canceled and extinguished.  After receiving an EIN number for the Trust in December 2016, the LT opened two bank accounts.  All funds collected by the Trust are deposited into the accounts.

---

[1] The Debtors include: Atna Resources Inc. (15-22848); Canyon Resources Corporation (15-22849); CR Briggs Corporation (15-22850); CR Montana Corporation (15-22851); CR Kendall Corporation (15-22852); Atna Resources Ltd. (15-22853); and Horizon Wyoming Uranium, Inc. (15-22854).

[2] The Trust is a standalone liquidating grantor trust entity created under the Plan and in accordance with United States Treasury Regulation Article 301.7701-4(d).

Beginning in March 2017, the LT initiated 24 adversary proceedings for recovery of avoidance claims against third parties, and anticipates filing additional adversary proceedings in the near future.  The LT also moved for several Rule 2004 exams and asserted various claims objections.  Through these proceedings, the LT has collected $454,013.20 in cash, and has settlement agreements in place totaling $540,174.52.[3]

Shortly after initiating the adversary proceedings, the LT moved to administratively close the Debtors' cases.  The  LT sought administrative closure, rather than closing the cases under L.B.R. 3022-1, stating it was not possible to file a final report due to the open adversary proceedings.[4]  The LT also sought administrative closure to stop the accrual of quarterly fees due the UST under 28 U.S.C. § 1930(a)(6).

The  UST objected, arguing the LT was attempting to circumvent the fee system mandated by Congress.  The UST also cited provisions of the Plan and the Liquidating Trust Agreement requiring payment of the fees by the Liquidating Trust.

The Court set the matter for hearing and received briefing from both sides.  Before the hearing, the parties filed joint stipulated facts and exhibits, leaving the Court to determine this issue as a matter of law.

### Discussion

At the outset, the Court notes a discrepancy regarding payment of statutory fees between the language of the Plan[5] and the Confirmation Order.[6]

The Plan provides:

Article XI.B.: "Payment of Statutory Fees: All fees payable pursuant to Section 1930 of Title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Chapter 11 Cases on the earlier of when due or the Effective Date, or as soon thereafter as practicable *by the Liquidating Trust*." (emphasis added).

The Confirmation Order provides:

Paragraph 30, p. 39. Payment of U.S. Trustee Fees.
*The Debtors* shall pay all fees payable pursuant to 28 U.S.C. § 1930(a) as set forth in Article XI.B of the Plan. (emphasis added).

---

[3] Status report, Docket #833, filed June 30, 2017.

[4] Local Bankruptcy Form 3022-1.1 calls for a final report stating, among other things, that all adversary proceedings have been finally resolved.

[5] Ex. 1, docket #674.

[6] Ex. 2, docket #740.

At the hearing, counsel for the LT, noting this discrepancy, argued the terms of the Confirmation Order governed, because paragraph 40 of the Confirmation Order provided: "if there is determined to be any inconsistency" between the Plan and Order, the "provisions of the Order shall govern."   Thus, the LT contended, the Debtors were responsible for paying the UST fees.

The Court finds this argument unpersuasive.  Counsel for the Debtors and the Committee[7] participated in drafting both the Plan and proposed Confirmation Order, stating in the Plan that the Liquidating Trust would pay the UST fees, but in the Confirmation Order that the Debtors would pay them.  Then, according to the terms of both the Plan and the Confirmation Order, the Debtors were dissolved.  To now argue the Debtors, and not the Trust, are responsible for payment, when the Debtors no longer exist, is circular, and not helpful to the Court.  Additionally, as the UST notes, the terms of the Liquidating Trust Agreement (the "Trust Agreement") provided that the LT would pay the UST fees.

The Trust Agreement provides:

The Liquidating Trust Committee will "undertake all administrative functions remaining in the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases" and "[p]ay all lawful expenses, debts, charges, taxes and liabilities of the Liquidating Trust."

Liquidating Trust Agreement, Section 2.2(i) and Section 2.2(r).[8]

The Court therefore rejects the argument that the Debtors, and not the Trust, are obligated to pay UST fees under the terms of the Confirmation Order.

In a similar vein, the LT asserts the UST should be bound to the terms of the Confirmation Order under principles of collateral estoppel or res judicata, citing *D&K Prop. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 259 (7th Cir. 1997)("once an order is entered confirming a plan, it is a final binding order accorded res judicata as to all issues and claims arising thereunder").  The LT contends, "by failing to object, the UST is bound by the res judicata effect of the confirmed plan."[9]

---

[7] Counsel for the Committee now serves as counsel for the LT.

[8] Ex. 3. The Trust Agreement provides that if there is an inconsistency with the Plan, the terms of the Plan control.  Sec. 12.7.

[9] Docket #834, p. 3.  From the surrounding context, the Court assumes the LT meant to state here that the UST is bound by the effect of the Confirmation Order, not the Plan.

3

Again, the Court disagrees with the LT.  The UST did not object to confirmation because both the Trust Agreement and the Plan required the Trust to pay the UST fees.  It is not the UST's responsibility to note that the proposed Confirmation Order, either inadvertently or intentionally, sidestepped these provisions by allocating that duty to the Debtors, which would soon be dissolved.

The Court now addresses the LT's other arguments.

    *1.   Plain language of 28 U.S.C. § 1930(a).*

The LT contends the plain language of the statute in question requires the party who commenced the case to pay the UST fees.

28 U.S.C. § 1930(a) states, in relevant part:

> The parties commencing a case under title 11 shall pay the clerk of the district court or the clerk of the bankruptcy court… the following fees:

> (a)(1)(6): In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee for deposit in the Treasury… until the case is converted or dismissed.[10]

According to the LT, the Trust is not required to pay the fees because it did not commence the case and was not in existence until the effective date of the Plan.  Further, the argument goes, the Trust is not a representative of Debtors, but rather is a representative of the now liquidated bankruptcy estate.

This precise argument was rejected in the case of *In re CSC Indus., Inc.*, 226 B.R. 402 (Bankr. N.D. Ohio 1998).  In that case, neither the plan nor confirmation order addressed the payment of UST fees.  A liquidating trust was appointed as a disbursing agent under the plan.  The liquidating trustee argued that since the liquidating trust was not the commencing party, it was not responsible for payment of post-confirmation quarterly fees.  The court held:

> The Liquidation Trustee also asserts, under a strict reading of 28 U.S.C. § 1930(a)(6), that the party which commences a case is the one responsible for payment of post-confirmation quarterly fees and pursuing a claim for such fees can be enforced only directly against the debtor, not the confirmed plan. The Court disagrees and concludes that the Liquidation Trust is responsible for payment of post-confirmation fees.

*Id.* at 405.

---

[10] The Tenth Circuit has interpreted this section to apply until a case is converted, dismissed, or closed. *United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.),* 150 F.3d 1233, 1237 (10th Cir. 1998).

Similarly, the case of *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr. N.D. Ohio 1997) involved the liquidation of a debtor upon confirmation and the appointment of a liquidating trustee. The liquidating trustee argued it was not responsible for post-confirmation UST fees because it was not the entity commencing the case.  The court disagreed, holding:

> The Trust is a separate legal structural entity from the Debtor. However, the Trust was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors. These duties of the Trustee are express, as is the duty of the Trustee "to pay all costs and expenses of administering the Trust and the Plan." Congress has clearly stated that all confirmed chapter 11 debtors are obligated to pay the Quarterly Fees. Because the Trust has assumed the liabilities of the Debtor and Plan it is reasonable, in this case, that the Trust would be held responsible for the Quarterly Fees.

*Id.* at 683-84.

This Court, finding these authorities persuasive and directly on point, determines the statutory language of 28 U.S.C. § 1930(a) does not limit the responsibility for paying UST fees to only the party commencing the case.

Alternatively, even if the statutory language were read otherwise, the Court agrees with the UST's argument that the Liquidating Trust has "stepped into the shoes" of the Debtors.  For support, the UST cites to *In re Hudson Oil Co., Inc.*, 200 B.R. 52 (Bankr. D. Kan. 1996), *rev'd on other grounds,* 210 B.R. 380, 382-84 (D. Kan. 1997).  In that case, the bankruptcy court reviewed the provisions of the agreement establishing the trust, and determined the trust was a liquidating and disbursing agent for the debtors, which would have to pay the fees if they applied to the debtors.  The Court held "[i]f the debtors are liable for the new quarterly fees, the trust will be too." *Id.* at 53. This Court finds that reasoning compelling.

In this case, it is clear from numerous sections of the Plan that the Trust is the successor in interest to the Debtors.  For instance, the Plan requires that the "obligations of any Entity . . . shall be binding on . . . any . . . successor."[11]  The statutory obligation to pay fees under 28 U.S.C. § 1930(a)(6) was not excepted from this provision. Therefore, even without an express provision requiring the Trust to pay the statutory fee, the Trust would nevertheless be liable for the fees.

---

[11] Ex. 1, at 34.

5

### 2.    *Purpose of statutory fee obligation.*

Next, the LT argues "the UST's Objection is fueled by the need to fund the UST program through the mandated quarterly fees. The concept of a pay as you go system for the UST program cannot extend to situations where the UST has no role to play."  The LT notes that post confirmation, the UST no longer provides any supervisory or other administrative function in these cases.

The UST responds, "Congress developed the quarterly fee requirement for the benefit of taxpayers so that the U.S. Trustee Program would be substantially self-funded by the users of the bankruptcy system at no cost to the taxpayer," citing H.R. REP. No. 99-764, at 25 (1986).[12]

Additionally, the UST notes the Tenth Circuit has held "post-confirmation liability for UST fees is an administrative expense attendant to an open case . . . and such fees are no different from taxes arising post confirmation, or any similar post-confirmation expenses not specified in the plan." *United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.),* 150 F.3d 1233, 1238 (10th Cir. 1998) (holding as "meritless" the argument that the plan must be amended to allow the UST to enforce the statutory fee obligation).

Further, the UST observes there is no nexus between the level of oversight the UST provides in a particular case, or even at a particular stage of a case, and the fee.  As the UST notes, "when § 1930(a)(6) was amended in 1996 to require fees to be paid on post-confirmation disbursements, no language was added tying the obligation to the amount of effort expended by the UST in a given case," *citing In re Jamko*, 240 F.3d 1312, 1316 n. 6 (11th Cir. 2001).

This Court is bound by Tenth Circuit precedent recognizing that the obligation under 28 U.S.C. § 1930(a)(6) exists "in each case" while the case remains open. *In re CF & I*, at 1233. The Court agrees with the UST that the fee calculation is based exclusively on the level of disbursements, and is not a professional fee for services rendered by the UST in the cases. Moreover, this Court cannot disregard the clear intent of Congress. *See In re Campesinos Unidos*, *Inc.*, 219 B.R. 886, 890 (Bankr. S. D. Cal. 1998) ("If the Congress knowingly chooses to impose on Chapter 11 reorganized debtors such an onerous burden, that is the Congress' prerogative. The courts do not make policy.").

### 3.    *Other courts have allowed administrative closure to prevent payment of fees.*

The LT has cited several cases allowing administrative case closure to avoid paying UST fees.  For instance, in the case of *In Re Johnson*, 402 B.R. 851, 856 (Bankr. N. D. Ind 2009), an individual chapter 11 debtor moved to close his bankruptcy case, prior to the completion of plan payments and receipt of a discharge, in order to eliminate his ongoing obligation for payment of quarterly fees to the UST.  That court allowed the individual debtor to close his case prior to

---

[12] Reprinted in 1986 U.S.C.C.A.N. 5227, 5238; see also H.R. REP. No. 99-764, at 22 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5235 ("The U.S.Trustee Program should not have to be self-funding. It provides a great service to our country's bankruptcy system. However, in this time of budget deficit concerns, self-funding becomes a necessity.").

completion of plan payments, noting in particular the differences between an individual and a corporate chapter 11 case.  In an individual case, post confirmation, a debtor still needs to complete plan payments and will not receive a discharge until all plan payments are made.  *See id.* at 856.

Likewise, *In re Gould,* an unpublished decision attached to the LT's reply brief, was an individual chapter 11 case where the Connecticut bankruptcy court allowed administrative case closure and the entry of a final decree prior to all plan payments being made.  The court reasoned that the estate was fully administered and should be closed "even though payments or other activities involving the debtor and its creditors might continue."

The LT also argues the administrative closing of chapter 11 cases has occurred in this district, citing an order administratively closing the case of *In re Walck*,  Case No. 11-37706-MER, an individual chapter 11 case.  There, the case was administratively closed subject to reopening upon completion of plan payments to grant discharge.

In response to these arguments, the UST asserted that it is not necessarily opposed to case closure, with a subsequent reopening to enter discharge, in the case of individual chapter 11 cases, citing Walter W. Theus, Jr., *Individual Chapter 11s: Case Closing Reconsidered*, 29 ABI Journal No. 1, at 63-64 (Feb. 2010).  The UST opined, however, that even individual cases should not be closed post-confirmation unless the debtor is able to demonstrate the case has been fully administered.  For instance, in the *Walck* case, no adversary proceedings were pending at the time of administrative closure.

Because this is not an individual Chapter 11 case, the Court need not make any determination as to whether closure is appropriate in such cases.  The Court notes, however, that closing an individual chapter 11 case, subject to reopening to enter discharge, is based on a very different rationale than the situation presented here.  In this case, the LT has filed 24 adversary proceedings, and while some have settled, many of these actions are still pending, with imminent scheduled hearings.  Moreover, allowing administrative closure in this situation would allow the LT to operate free of any bankruptcy reporting requirements or payment of post-confirmation fees, while collecting funds for the Trust.   The Court declines the LT's invitation to treat this case like an individual Chapter 11 case.[13]

> 4.   *This Court can use 11 U.S.C. § 105 to administratively close the case.*

The LT contends this Court "has the inherent power under 11 U.S.C. § 105 and consistent with 11 U.S.C. § 350(a), to administratively close these seven cases."  In support the LT cites *In re Swiss Chalet*, 485 B.R. 47 (Bankr. D. Puerto Rico 2012), for the proposition that a court has discretion to administratively close a case.

---

[13] The LT cites *In re Greektown*, *LLC* (unpublished order entered June 3, 2015 in the Michigan bankruptcy court) where a corporate debtor moved for administrative closure of several jointly administered cases.  That court decided to close some cases and leave others open, and the reasoning for its decision is unclear. This Court does not find the decision persuasive.

The UST responds, first, that a bankruptcy court cannot use 11 U.S.C. § 105 to usurp other sections of the bankruptcy code, citing *Law v. Siegel*, 134 S. Ct. 1188, 1197 (2014) (holding a court may never employ 11 U.S.C. § 105(a) to contravene the express provisions of the Code). Second, the UST observes the LT is conflating administrative case closure with the issuance of a final decree under Fed. R. Bankr. P. 3022.  That rule provides:

> After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

Although the phrase "fully administered" is not defined by the Bankruptcy Code or Rules, a factor to consider is whether all motions, contested matters, and adversary proceedings have been finally resolved. *In re Swiss Chalet* at 51 (citing Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 350.02 (16th ed. 2012)) .

Contrary to the LT's assertion, the *Swiss Chalet* case actually supports the UST's position.  In that case, a corporate chapter 11 debtor filed an application for issuance of a final decree, seeking to save debtor the expense of paying quarterly fees to the UST.  The court denied the application, holding:

> [11 U.S.C.] Section 350(a) of the Bankruptcy Code directs the court to close a case after an estate is fully administered and the Court has discharged the trustee.  Likewise, Fed. R. Bankr.P. 3022 instructs the court to issue a final decree closing a case on its own motion or on motion of a party in interest once the case has been fully administered. . . . An estate cannot be fully administered while there are outstanding motions, contested matters, or adversary proceedings pending before the court.

Additionally, the court noted, "pending adversary proceedings and other contested matters, as well as the imminence of scheduled hearings on these matters, are not "ministerial functions."  *Swiss Chalet,* 485 B.R. at 52.

In several of the cases cited by the LT, a final decree was sought and the court agreed to close the cases, despite the pendency of adversary proceedings.  *See  In re Indian Creek Ltd. P'ship*, 205 B.R. 609 (Bankr. D. Ariz. 1997), *In re JMP-Newcor Int'l*, 225 B.R. 462 (Bankr. D. Ill. 1998); *McClelland v. Grubb & Ellis Consulting Serv.,* 377 B.R. 446 (Bankr. S.D. N.Y. 2007). However, here, the LT is not seeking a final decree, but is attempting to circumvent the requirements of Rule 3022 and 11 U.S.C. § 350  through the vehicle of "administrative closure."

The LT also relies on *In Re Union Home and Indus., Inc.*, 375 B.R. 912, 918 (10th Cir. BAP 2007) for the premise that "[t]he continuation of an adversary proceedings . . . is insufficient by itself to keep a case from being considered 'fully administered.'" The Court finds the *Union Home* case distinguishable from this case. In *Union Home,* the BAP's  holding focused on the issue of whether future fee applications of estate professionals alone could prevent a case from being "fully administered." The BAP affirmed the bankruptcy court's denial of entry of the final decree on one ground: the failure of the estate's professionals to submit fee applications. *Id. at*

8

919.  As the BAP noted in *Union Home*: "Bankruptcy courts are charged with reviewing each request for entry of a final decree "on a case-by-case basis and analyz[ing] the factors set forth in Rule 3022, along with any other relevant factors, in determining whether an estate has been fully administered."  *Id.* at 917.

In the instant case, a multitude of complaints were filed, Rule 2004 exams have been sought,  and a number of issues, including claims objections, remain to be determined at imminently scheduled hearings.  Additionally, as in the *Union Home* case, future fee applications will be filed.  Thus, even though, in portions of its briefing, the LT argues these cases are essentially "fully administered," the cases it cites, and the facts here, do not support that contention.

If the LT sought a final decree, and the Court were to determine the cases have been fully administered, fees accruing pursuant to 28 U.S.C. § 1930(a)(6) would then cease. The LT, however, has not followed Federal Bankruptcy Rules nor Local Bankruptcy Rules to obtain a Final Decree and case closure, and cannot use  11 U.S.C. § 105 to bypass those requirements and circumvent its obligations to pay UST fees under 28 U.S.C. § 1930(a)(6).

   5.   *This Court can waive the UST fees under28 U.S.C. § 1930(f)(3).*

As a final argument, the LT contends "the express language of 28 U.S.C. §1930(3) [sic] provides for the waiver of any of the fees imposed by that section and states in part '… (3) this subsection does not restrict the district court or the bankruptcy court from waiving, in accordance with Judicial Conference Policy, fees proscribed under this section for other debtors and creditors.'"  The LT goes on to assert, "[w]hile there are no Judicial Conference Policy guidelines on waiver of UST Quarterly fees, the absence of such guidelines is not an indication that no such authority exists. As with all such decisions, they are made on a case by case basis and considering the policy behind the imposition of the fee proscribed, in this case the UST Quarterly fee."  The LT cites no case law to support this argument.

In response, the UST notes that in the *CF & I Fabricators* case, the Tenth Circuit expressly found "Congress has directed the fees be collected 'notwithstanding any other provision of law.'" 150 F.3d at 1240.  Further, the UST observed, 28 U.S.C. § 1930(f)(3) "is not a grant to waive fees, but rather a statement that the subsection does not restrict the waiving of fees under other sections that do grant authority to waive fees."  The Court agrees with the UST and rejects the LT's waiver argument.

## Conclusion

For all the foregoing reasons, the Court finds that the LT, whose sole existence flows from the Debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, must pay the UST Fees as required by 28 U.S.C. § 1930(a)(6).

9

**ACCORDINGLY, IT IS HEREBY ORDERED** that the LT's Motion to Administratively Close Chapter 11 Cases (docket #803) is DENIED.  A separate judgment shall enter.

DATED:  November 1, 2017                    BY THE COURT:

_____
Honorable Joseph G. Rosania, Jr.
United States Bankruptcy Judge

10